UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

LOCAL 3621, EMS OFFICERS UNION, DC-37,
AFSCME, AFL-CIO, Individually and on behalf of
its members, Renae Mascol, and Luis Rodriguez, on
behalf of themselves and all other similarly-situated
individuals,

Plaintiffs,

     -against-

**CLASS ACTION**
**COMPLAINT AND**
**JURY TRIAL DEMAND**

CITY OF NEW YORK, NEW YORK CITY
FIRE DEPARTMENT, and DEPARTMENT OF
CITYWIDE ADMINISTRATIVE SERVICES,
John and Jane Does ##1-20, the identity
of such persons being unknown to Plaintiffs but
intended to describe those persons responsible for
the promotional policies of the City of New York,

Defendants.

------------------------------------------------------------------x

Plaintiffs, by their attorneys, The Kurland Group, 160 Broadway, East Building,

11th Floor, New York, NY 10038, complaining of the Defendants, allege:

**NATURE OF ACTION**

1.     Plaintiffs Local 3621, EMS Officers Union, DC-37, AFSCMW, AFL-

CIO (hereinafter "Local 3621"), Individually and on behalf of its members, Renae Mascol

and Luis Rodriguez, on behalf of themselves and on behalf of all other similarly-situated

individuals, (hereinafter collectively the "Named Plaintiffs" or "Plaintiffs") bring this

action against Defendants City of New York (hereinafter "City"), New York City Fire

Department (hereinafter "FDNY"), and Department of Citywide Administrative Services

(hereinafter "DCAS," and collectively "Defendants") to secure monetary, injunctive and

1

declaratory relief for violations of Title VII of the Civil Rights Act of 1964, New York State Human Rights Law, New York City Human Rights Law, and other related statutes.

2.     The Emergency Medical Services Bureau of the FDNY ("EMS") is the most diverse emergency workforce in New York City, consisting of a higher percentage of women and non-white employees than any other emergency service. This diverse group of predominantly non-white employees of uniformed service members is put through a unique and subjective promotional process for nearly all officer promotions. This process is markedly different than the promotional process for the predominantly white and male 'Fire' side of the FDNY, along with other uniformed civil servants in the City of New York.

3.     Plaintiffs assert that the result of Defendants' actions, namely, their use of a subjective promotional process for EMS applicants where more objective processes exist (for example Civil Service Examinations, or other methods to test the constitutional mandate of merit and fitness such as those used for other uniformed service promotions) has resulted in disparate and discriminatory promotional practices. These practices have adversely affected the employment and promotional opportunities of members who belong to protected classes despite having the requisite skills, training, and expertise.

4.     Applicants for promotion above the rank of Lieutenant in EMS have and continue to be disparately treated and/or impacted based on impermissible considerations, including but not limited to their race, sex, gender, disability and/or military status in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq.*, the New York State Human Rights Law (hereinafter "NYS HRL"), New York Executive Law §§290, *et seq.*, the New York City Human Rights Law (hereinafter "NYC

HRL"), Administrative Code of the City of New York §§8-101, *et seq.* By this action, Plaintiff-officers, on behalf of themselves and all others similarly situated, seek damages and equitable relief with respect to damages suffered due to Defendants' past use of their discriminatory promotional practices. Plaintiffs also seek injunctive and declaratory relief with respect to Defendants' past, present, and future planned continued use of these practices despite Defendants' knowledge of the discriminatory impact these policies have on the promotional and employment opportunities of applicants belonging to protected classes.

## JURISDICTION

5.      This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 42 U.S.C. § 2000., 28 U.S.C. § 1331, 42 U.S.C. § 206, 42 U.S.C. §§ 12101, 29 U.S.C. §§2601, 42 U.S.C. § 1981, 42 U.S.C. § 1983.

6.      This Court may exercise supplemental jurisdiction over Plaintiffs' remaining state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)(2), as Defendants reside in this district and the events giving rise to Plaintiffs' claims occurred in this district.

## PLAINTIFFS

8.      Plaintiff Local 3621 represents approximately 535 members of the EMS holding the ranks of Lieutenant and Captain.   Local 3621 is an affiliate of DC-37, AFSCME, AFL-CIO with offices at 125 Barclay Street, Suite 743, New York, NY 10007.

9.      Plaintiff Renae Mascol ("Plaintiff Mascol" or "Lieutenant Mascol") has been working in the EMS Bureau for twenty-five (25) years, and as a Lieutenant since

3

2010. Lieutenant Mascol has been employed by Defendants at all times relevant to this action.

10.     Plaintiff Luis Rodriguez ("Plaintiff Rodriguez" or "Lieutenant Rodriguez") has been working in the EMS Bureau for twenty (20) years, and as a Lieutenant since 2010. Lieutenant Rodriguez has been employed by Defendants at all times relevant to this action.

## DEFENDANTS

11.     Defendant City of New York ("City") is a municipality duly incorporated under the laws of the State of New York and maintains its principle place of business at 260 Broadway, New York, New York 10007. Defendant City has at all times relevant to this action been an employer within the definition of Title VII. Defendant City is a "person" for purposes of 42 U.S.C. § 1983. Defendant City is authorized under the laws of the State of New York and City of New York to maintain a fire department, the New York City Fire Department ("FDNY"), which is a department, agency, bureau and/or subdivision of the City. FDNY is authorized under the laws of the State of New York and City of New York to house emergency medical services within FDNY and maintains the bureau of Emergency Medical Services ("EMS") for this purpose. Plaintiffs are and at all times relevant to this action have been employed by FDNY.

12.     Defendant New York City Fire Department is an agency of the City which employs the City's firefighters and the members of the EMS. FDNY maintains its principle place of business at 9 Metro Tech Center, Brooklyn, NY 11201.

13.     Defendant Department of Citywide Administrative Services is an agency of the City of New York and is responsible for the administration of Civil Service

Examinations and the promotion and placement of City employees, including but not limited to employees working in EMS. DCAS maintains its principle place of business at 1 Centre Street, New York, New York 10007.

## PROCEDURAL BACKGROUND

14.     On June 27, 2016, Local 3621 filed a timely Charge of Discrimination individually and on behalf of its members and similarly-situated individuals with the Equal Employment Opportunity Commission ("EEOC"), alleging violations by their employer, Defendants herein, of federal, state, and local law, including but not limited to Title VII, the New York State Human Rights Law, New York City Human Rights Law, ADA, FMLA, §1981, and §1983. The EEOC Charge is attached hereto at **Exhibit A** and incorporated herein by reference.

15.     On March 28, 2018, upon Plaintiff's request, the EEOC issued Plaintiffs a Notice of Right to Sue to enable them to proceed with litigation of their claims (**Exhibit B**). All conditions precedent to the initiation of this action have been fulfilled, and the instant Complaint is timely.

## FACTUAL BACKGROUND

16.     While the workforce of the City of New York overall is predominantly female and non-white, the emergency services, namely the FDNY and New York City Police Department ("NYPD"), are fields that have historically been white and male dominated.

17.     By contract, EMS is the City's most diverse emergency workforce, and has been populated by more women and people of color than the other emergency

workforces in the City.

18.     On March 17, 1996, then-Mayor Rudolph Guiliani merged the Emergency Medical Service of the NYC Health and Hospitals Corporation into the FDNY, creating the Bureau of EMS within the FDNY.[1] This merger had the stated goals of increasing the efficiency of emergency services in New York City and recognized the critical role EMS workers serve as first responders.

19.     There are approximately 4,300 uniformed EMS personnel in the FDNY, of which an estimated 535 individuals hold the position of Lieutenant or Captain. Upon information and belief, approximately 23.7% of these Lieutenants in EMS are female, and approximately 18.4% of the Captains in EMS are female. Approximately 44.6% of these Lieutenants in EMS are non-white, and that number drops by almost 10% to 35.5% for Captains in EMS who are non-white.

20.     Conversely, there are only 58 women on the entire Fire-side of the FDNY, which has a workforce that is approximately 99.5% male[2], and approximately 86% non-white.[3]

21.     In the course of the EEOC's investigation of Plaintiffs' claims, Plaintiffs submitted the results of a statistical analysis of data regarding the members of EMS, which

---

[1] From carriages to fleet of 400 ambulances, new York's EMS has come a long way since 1870s, *New York Daily News*, April 26, 2015, *available at* http://www.nydailynews.com/new-york/new-york-ems-long-1870s-article-1.2196826 (last visited May 21, 2018).

[2] FDNY welcomes three women to its ranks—and they passed training, fair and square, *New York Daily News*, May 3, 2016, *available online at* http://www.nydailynews.com/new-york/fdny-welcomes-women-ranks-article-1.2623738 (last visited May 21, 2018).

[3] Five Female Firefighters set to join the ranks of the FDNY, the biggest group since 1982, *New York Daily News*, Nov. 1, 2016, *available online at* http://www.nydailynews.com/new-york/female-firefighters-set-join-ranks-fdny-article-1.2854389 (last visited May 21, 2018); New York City Women, Firefighters of Color Continue Decades-Long Battle to Integrate the FDNY, *In These Times*, August 31, 2015, *available online at* http://inthesetimes.com/working/entry/18355/fdny-diversity-de-blasio-vulcan-society-lawsuit (last visited May 21, 2018).

Plaintiffs assert further establishes their claims that Defendants have engaged in discriminatory promotional practices, and which shows both gender disparity and a 'bleaching' of the ranks, and that there is a statistically significant[4] higher percentage of white males in the ranks of EMS for which there are no objective promotional criteria, such as Civil Service Examinations (i.e. Captain, Deputy Chief and above) versus the ranks for which there are (i.e. EMT, Paramedic, and Lieutenant) (*See*, **Exhibit C**, Griffin Statistical Analysis).

22.     The City of New York utilizes and prioritizes a Civil Service System for the hiring and promotion of its civil servants, as it is required.  This System and the processes it employs are "in place to help ensure that the hiring process is competitive and fair."[5]

23.     Indeed, the City's civil service structure is derived from the New York Constitution's mandate that employment decisions for civil servants are to be based on the merit and fitness of candidates. The bedrock of this system is the Civil Service Examination which is used to measure "a potential candidate's merit and fitness for a particular title."[6] As applied to promotional decisions, the New York Constitution requires that they too be made ". . . according to merit and fitness to be ascertained, as far as practicable, by examination. . ." Matter of Shafer v. Regan, 171 A.D.2d 311, 313, 576 N.Y.S.2d 381 (1991), aff'd, 80 N.Y.2d 1006, 592 N.Y.S.2d 656, 607 N.E.2d 803 (1992); see also, N.Y.

---

[4] That this difference is statistically significant means it can be dismissed as random or unrelated to race and gender.
[5] The Civil Service System, *available online at* http://www.nyc.gov/html/dcas/html/work/civilservice_1.shtml (last visited May 21, 2018).
[6] *Id.*

Const. Art. V, §6.[7]

24.     While Plaintiff believes that civil service examinations are practicable for EMS officer promotions above the rank of Lieutenant as a matter of state law, and therefore required, this is not at issue before the Court in this action.  Rather Defendants' affirmative decision to abandon objective promotional criteria, even those constitutionally mandated such as New York's civil service requirements and specifically civil service examinations, in favor of subjective promotional processes left to the discretion of mostly white and male decisionmakers, is further evidence of Defendants' discriminatory actions.

25.     Any applicant for an EMS officer promotion above the rank of Lieutenant is ostensibly evaluated on, among other things, their ability to satisfy the Tasks and Standards of each officer position. **Exhibit D** Tasks and Standards. Upon information and belief, many of these tasks and standards are objectively testable; Defendants' decision to instead test these qualifications through subjective methods is knowingly designed to lack transparency and allow for the promotion of lesser qualified white and male applicants in violation of Plaintiffs' and class member's statutory rights.

26.     Further, upon information and belief, the interview questions used to determine promotions are not standardized and do not reasonably relate to the tasks and standards for the ranks of Captain, Deputy Chief, and above and therefore cannot

---

[7] State law has defined impracticability as applicable in two limited circumstances: "(1) because of the confidential character of the position, or (2) because the nature of the duties involved is such that a competitive examination is an insufficient method 'to fully and fairly determine the merit and fitness of the contemplated employee.'" Shafer, 171 A.D.2d at 313, quoting Condell, 151 A.D.2d at 93–94. Even where "the position requirements involve a combination of testable and untestable skills," the Court of Appeals "appears to favor a competitive examination for the skills which are capable of objective testing combined with a method of considering those qualities which are not." Condell, 151 A.D.2d at 93–94; see Wood v. Irving, 85 N.Y.2d 238, 249, 647 N.E.2d 1332, 1339 (1995) ("[W]hen qualifications are subject, even in part, to objective assessment, those objectively testable qualities must be evaluated by competitive examination."); Shafer, 171 A.D.2d at 313.

accurately measure those most fit or qualified for promotion.

27.     Most, if not all, emergency workforces regularly utilize these Civil Service Exams for most of their promotions. Most notably, the Fire-side of the FDNY maintains their entire officer promotional structure through Civil Service Exams for each of its five (5) officer promotional opportunities. Despite the stated promise of Fire-side and EMS as "one Department," FDNY applies an entirely different promotional process in the EMS, where a Civil Service Exam is utilized for only one (1) promotional opportunity, from Paramedic to Lieutenant.

28.     Before the merger into FDNY, when EMS was part of HHC, HHC implemented an in-house examination to determine which Lieutenants would be promoted to Captain. The use of an in-house examination is one method of maintaining objectivity in promotional processes where a Civil Service Exam is not practicable. However, when EMS was merged into the FDNY, this exam was discontinued without explanation or cause. The discontinuation of an in-house promotional examination is especially suspect given the fact that Civil Service Exams were being utilized, and continue to be utilized on the Fire-side of the FDNY for the same promotion from Fire Lieutenant to Fire Captain.

29.     Indeed, the Fire-side of the FDNY uses Civil Service Exams for three (3) additional promotions beyond the rank of Captain.

30.     Despite the FDNY's use and maintenance of a Civil Service Exam promotional structure before the merger, and the Fire-side's continued use of this promotional policy, Defendants drastically departed from these policies as applied to the EMS Bureau.

31.     Currently, once a member of the EMS reaches the rank of Lieutenant,

the remainder of their promotions will be determined based on a discretionary application and interview process. Conversely, on the Fire-side, Civil Service Exams are utilized for the promotions to (1) Lieutenant, (2) Captain, (3) Battalion Chief, (4) Deputy Chief, and (5) Fire Marshall. This promotional structure is the same for most, if not all, of the promotions in the emergency workforces in the City, except in the EMS.

## FACTUAL ALLEGATIONS

32.     Based on years of experience of its members regarding promotions, Local 3621 asserts that the current promotional process allows for too much discretion and subjectivity in promotional decisions. This process has permitted an environment in which overt or unconscious discrimination has flourished and resulted in women and non-white members being underpromoted. By allowing for so much discretion that a supervisor may in essence promote whomever they wish, and/or by basing promotional decisions on solely subjective criteria, such as the interview questions and supervisor evaluations currently employed, Defendants have allowed the consideration of impermissible factors to affect promotions within EMS.

33.     Plaintiffs allege that allowing undue subjectivity in the promotional process is inapposite to the Civil Service System, which was set up for the express purpose of, *inter alia*, protecting against discrimination in promotions. The City regularly employs and prioritizes the Civil Service System, especially in other emergency workforces, in order to ensure fairness and transparency, and yet the City has opposed the use of Civil Service Exams within the EMS.

34.     This noticeable absence of an objective testing process to determine those best qualified for almost all positions in the EMS, has created a discriminatory

environment in the EMS, which adversely impacts not only the female and non-white members, but also other protected members and the EMS overall.

35.     Defendants' failure to utilize within the EMS the very mechanisms it typically employs in other emergency workforces to ensure fair and level promotions not only adversely impacts the members of Local 3621, but also raises questions regarding the entire promotional process and ultimately undermines and devalues the critical work of the EMS.

36.     The current promotional process from Lieutenant to Captain in the EMS is highly subjective. Plaintiffs assert the procedure itself, which includes only the submission of application packets and subsequent interviews, is merely a pretext, used to allow mostly white and male supervisors to exert excessive discretion in ultimately being able to select who they want to promote, not based on merit but on impermissible factors. Separate and in addition to this intentional discretion, the absence of standardized, valid or reliable promotional criteria, allows and amplifies implicit bias. All of this work to create the reality in the EMS that currently exists which is that promotions are not based on the applicants' skills, training, and experience and too often allows decisions to be made based on impermissible considerations.

37.     In fact, Defendants have no standard scoring rubric for these interviews and therefore each interviewer may have a different understanding of what each score represents. For the same answer, one interviewer may give an applicant a "2," and another may give an applicant a "6."

38.     These interview questions themselves raise questions about the legitimacy and reliability of an interview process to determine the most meritorious

applicant. Upon information and belief, interview questions are vague and unrelated to measuring the critical tasks of the position at issue. For example, upon information and belief, one interview question for the position of Deputy Chief has been "What is the greatest challenge you think you will face as an EMS Deputy Chief?" The answer to this question objectively offers no insight into the candidates' qualifications to become a Deputy Chief. Instead, it is highly susceptible to influence by stereotypes and unconscious bias and does nothing to root out the discriminatory effects it has on applicants.

39.     Further, Defendants often change the criteria for promotion without providing any justification for doing so. By way of example, during the promotional process for promotion to Captain in 2017, Defendants lowered the threshold applicants were required to meet in order to qualify for promotion to Captain, from requiring an annual evaluation of "Very Good" down to "Good."

40.     Lastly, the numerical scoring process allegedly used during the promotional interviews does not control for inherent biases that affect the interviewers' perception of the applicants. This heightened vulnerability of subjective promotional processes to explicit or implicit bias has been acknowledged and well-established as one basis by which an inference of pretext can be raised.

41.     Upon information and belief, Defendants have freely admitted that they engage in a subjective promotional process and that implicit bias exists in their promotional process. Yet Defendants have failed to remedy and/or take the necessary steps to avoid this subjectivity and implicit bias despite knowing about it. In fact, despite the fact that a subjective promotional practice is antithetical to the merit-based principles of civil service and the heightened need for uniformity and merit selection in paramilitary organizations

such as the FDNY, Defendants continue to utilize such a discretionary practice.

42.     Upon information and belief, in some instances, the Lieutenants who will be promoted to Captain in a given promotional period have been identified before the "official" decision is even "made." This reality further evidences that the process is pretextual.

43.     Plaintiffs assert that Defendants' promotional policies, practices, customs, procedures, and criteria, which are not standardized or tied to merit-based performance, have created an environment that has allowed discrimination to flourish, and where applicants are disparately treated and/or impacted based on impermissible considerations, including but not limited to their sex, gender, race, disability and/or military status.

44.     Further, upon information and belief, Local 3621 members who have risked their lives and been injured in the line of duty, have had their membership in protected classes used as a basis for further pretext to exclude them from promotions.  For example, rather than treat these individuals fairly and equally, or allow for reasonable accommodations due to on-the-job injuries and/or disabilities, members have been penalized for taking LODI leave or other medical leave.

45.     Plaintiffs assert that often times the Lieutenants who are promoted to Captain are less qualified than the Lieutenants who are not promoted, and when those Lieutenants who are not promoted are given a reason, it often involves an impermissible consideration, such as having a disability, taking time off for a LODI injury, taking leave pursuant to the FMLA, and/or taking time off related to military training and service.

46.     Upon information and belief, even applicants who were required to take

leave pursuant to FMLA for issues related to their service on and around September 11, 2001 have been penalized and denied a promotion for which they were qualified because of their leave.

47.     Plaintiffs have found that there continue to be problems associated with the announcement of promotional opportunities, which are supposed to reach all eligible employees, but rarely do.  This has allowed for further subjectivity in the promotional process when the applicant pool is already hand-picked by their superiors.

48.     Further, Plaintiffs have observed discrepancies in the annual evaluation process, in which members of the EMS are either not receiving their evaluations at all or their evaluations are being affected by impermissible and discriminatory considerations or biases.  Because these evaluations weigh heavily in the EMS' discretionary promotional process, these discrepancies in evaluations have resulted in further discriminatory results in promotions.

49.     Local 3621 members have raised these issues with the FDNY Equal Employment Opportunity (EEO) Office, and while the EEO Office has at times substantiated their complaints, upon information and belief, nothing or not enough has been done to respond to and/or correct these problems and they have been allowed to continue.

50.     The City is aware of these concerns, and has even litigated these issues multiple times before, including but not limited to the cases of Good, et al. v. City of New York, et al., Case No. 05-CV-06006 (JSR), in the U.S. District Court of the Southern District of New York and Monroe, et al. v. City of the New York, Case No. 113822/2006, in the Supreme Court of the State of New York, New York County.

51.     Plaintiffs in both the Good matter and the Monroe matter identified

many of the same problems with the subjective promotional process in the EMS, including but not limited to discrepancies with annual evaluations, failures to properly announce promotional opportunities, and the disparate impact the EMS policies and procedures have on women and people of color. This pattern underscores and long and chronic problem with discriminatory promotional practices, which Defendants are aware of, yet have not remedied.

52.     Despite the fact that the City ultimately entered into settlement agreements in both the Good matter and the Monroe matter, these settlements have not solved this endemic problem and the policies and practices of the EMS have continued to adversely impact protected members and the EMS overall and therefore Local 3621 must take action.

As a result of the foregoing, members of the EMS have been subjected to a pattern and/or practice of discrimination in the terms, conditions, benefits and privileges of their employment by the Respondents named herein, based upon their sex, gender, race, and/or disability.

## REPRESENTATIVE PLAINTIFFS

### Renae Mascol

53.     Representative Plaintiff Lieutenant Renae Mascol, is an African-American woman, who has served in EMS for twenty-five (25) years and as an EMS Lieutenant since 2010 after she earned the second-highest score on the Civil Service Examination to become Lieutenant. In this role, she supervises approximately 70-80 people and has received outstanding annual evaluations every year in this position. Lieutenant

15

Mascol is praised by her peers and supervisors both for her mentorship of EMS members and for her dedication to excellence in patient care.

54.      Lieutenant Mascol has applied for the promotion to Captain at least four (4) times since 2014, when she became eligible for promotion. After each of her four (4) interviews, she has been told that her performance was excellent.  However, she has never been promoted to Captain, despite being told by the Chiefs in her interview that she "nailed it."

55.      Lieutenant Mascol is a highly-skilled medic who has over 100 pre-hospital saves since 1994, and received both a Survivor's Medal for Outstanding Bravery at the World Trade Center Collapse as well as a Response Award for her work during Hurricane Sandy.

56.      Lieutenant Mascol is also an exemplary officer who received the Outstanding Supervisor Award from Ozone Park Kiwanis and was chosen as one of the three supervisors from EMS to attend a 2-week leadership training in 2014. These illustrious training positions are reserved only for those officers determined by the Department to be future leaders of the department.

57.      As only one of three individuals nominated to participate in this training, Lieutenant Mascol was nominated and chosen to attend based on the Department's determination that Lieutenant Mascol's performance, skill, and potential merited her nomination. Since this training, she has been asked by multiple chiefs to apply for the promotion to Captain, and yet she has never been promoted.

58.      Of the three officers chosen, Lieutenant Mascol was the only woman and only person of color; the two other individuals in this training class were white males.

One of these white males retired and the other was promoted soon after training to Deputy Chief—the very promotion Lieutenant Mascol was denied.

59.        FDNY has touted Lieutenant Mascol as the face of the next generation of EMS leaders through public accolades, including profiling Lieutenant Mascol on its website and awarding her merit-based education scholarships. Yet contrary to their public displays of recognition, they continually deny Lieutenant Mascol a rightful promotion. Despite this public recognition of Mascol's value to the Department, Ms. Mascol was denied a promotion a mere two-weeks after attending this training while her fellow white male trainee was selected for promotion.

### *Luis Rodriguez*

60.        Representative Plaintiff Lieutenant Luis Rodriguez is a Puerto-Rican man who has served as an EMS Lieutenant since 2010 and as a member of EMS since 1998.

61.        Lt. Rodriguez has applied for a promotion to captain at least three (3) times since 2015. Despite Lt. Rodriguez's qualifications for the position, he has never been promoted to Captain.

62.        Lt. Rodriguez is a highly skilled Lieutenant with a wide breadth of experience and expertise in his field. Lt. Rodriguez has a bachelor's degree as well as a master's degree in public administration with a concentration on healthcare systems. Throughout his twenty (20) years of service, Lt. Rodriguez has worked in operations, various field commands, logistics, and administration. He is currently stationed at the FDNY training academy in the special projects division.

63.        Lt. Rodriguez also enjoys a nearly immaculate disciplinary record, and

has received one disciplinary warning in his over twenty (20) years of service. Lt. Rodriguez has also been commended by his supervising officers for his excellent performance as a Lieutenant as evidenced by his "very good" performance evaluations. Commanding officers have especially noted Lt. Rodriguez's excellence in administration functions and have sought to use his expertise in this regard to mentor other Lieutenants. For example, Lt. Rodriguez's 2013 evaluation notes that his then-Captain "relied upon Lieutenant Rodriguez as the Station 4 BLS mentoring officer and he performs the task extremely well. I consider Luis an asset to the Station and know that he will exceed all expectations with further officer development.

64.    Lt. Rodriguez has suffered several injuries in the line of duty that have forced him to take Line of Duty Injury ("LODI") medical leave.

65.    Upon information and belief, Lt. Rodriguez was told by commanding officers that his need to take LODI would negatively impact his promotional opportunities, despite LODI being an impermissible basis to deny an otherwise qualified applicant a promotion.

66.    Further, upon information and belief, many white LODI recipients are promoted.

### FRCP RULE 23 CLASS ACTION ALLEGATIONS

67.    Plaintiffs bring this action pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure (FRCP) on behalf of themselves and all others similarly situated.

68.    For purposes of the class claims brought and properly maintained under Rule 23(b)(2), the proposed class is defined as: "All members in the titles of Supervising

Emergency Medical Service Specialist ("SEMSS") I and II who have applied and been denied promotions to the positions of Captain, Deputy Chief, Division Commander, Deputy Assistant Chief, or Assistant Chief from 1998 to 2017, including members who: 1) sought a reasonable accommodation based on disability; 2) held a reasonable accommodation based on disability; 3) availed themselves of leave time under the Family Medical Leave Act."

69.     For purposes of the class claims brought and properly maintained under Rule 23(b)(3) ("Damages Class"), the proposed class is defined as: "all non-white members and all female members in the titles of Supervising Emergency Medical Service Specialist ("SEMSS") I and II who have applied and been denied promotions to the positions of Captain or Deputy Chief from 1998 through 2017."

70.     Plaintiffs have standing to seek the relief sought as stated herein, as all Class Representatives are members of the Class they seek to represent and have been harmed by Defendants' unlawful practices and policies. The Class Representatives seek to secure relief applicable to themselves and the similarly situated Class members; such relief is properly sought in a class action as much of the necessary relief addresses systemic issues of discriminatory promotional policies that have harmed all Class members and all those who will become Class members.

71.     Numerosity is satisfied pursuant to FRCP 23(a)(1), as the Class is so numerous that joinder is impracticable. The estimated Class size is no less than 2,000. Defendants have the ability and control to ascertain an exact class size.

72.     Plaintiffs and the Class they represent have been subject to the same unlawful policies and practices of Defendant, which include the following discriminatory

practices: a) failing to promote non-white and/or female members at the same rate and on the same terms as similarly situated white and/or male members; b) relying on subjective promotional processes and criteria that permit and encourage the incorporation of racial and gender-based bias by Defendants' largely white and male supervisory officers tasked with making promotional decisions or otherwise result in discriminatory promotional practices; c) relying on impermissible considerations such as participation in protected activities and protected characteristics of applicants (i.e. status as pregnant, status as disabled) in making promotional decisions. All of these consequences result in qualified non-white and female applicants facing discriminatory barriers to equal employment opportunities and career advancement.

73.    During the time in question, Defendants were fully aware of the discriminatory effects of their unlawful promotional policies complained of herein. Defendants have thus intentionally discriminated by Plaintiffs and the Class they present by continuing to maintain a promotional policy that denies promotional opportunities to qualified female and non-white applicants in favor of equally or less qualified male and white applicants.

74.    Due to Defendants' conduct described and alleged herein, Defendants violated federal, state, and local laws knowingly, negligently, and/or without a good faith basis, causing pecuniary and emotional damages to Plaintiffs and the Class they represent, the full extent of which are not yet known.

75.    Defendants are liable to Plaintiffs and the Class they represent for these violations for monetary damages, including back pay, front pay, and compensatory damages, as well as equitable relief, including injunctive and affirmative relief. All relief

sought is applicable to the Class as a whole.

76. Certification of the Class's claims as a class action is the most efficient and economic means of resolving the questions of law and fact common to Plaintiffs' claims and Class claims. Failure to proceed as a class action would result in an impracticable number of individual suits seeking to resolve the same claims with the same evidence. Proceeding on an individual basis would further pose an unnecessary risk of inconsistent adjudications. Additionally, individual Class members face a high threat of being financially unable or unwilling out of fear of retaliation to seek vindication of their statutory rights through individual claims. The interests enumerated in FRCP 23(b)(1).

77. The Named Plaintiffs, both of whom are employed as EMS officers, raise claims typical of the claims of the classes that they seek to represent. Class Representatives pursue the same factual and legal theories as the class they seek to represent, and seek similar relief.

78. Defendants have been and continue to be engaged in a pattern and practice of promotional processes that lead to the discriminatory promotions to ranks above Lieutenant being given to white and male applicants over their more-qualified female and non-white counterparts. Defendant's acts and omissions have harmed and affected the Class Representatives and the Class members in substantially the same or similar ways.

79. Defendants have failed to redress or seek to mitigate the known unlawful consequences of these policies and practices. Class Representatives and Class members have been harmed by these failures in substantially the same or similar ways.

80. Class Representatives and the Class they represent all seek the relief described herein.

21

81.        Plaintiffs' claims raise questions of law that are common to the Class including:

a.   Appropriate standards to establish objective promotional practices to remedy disparate promotional opportunities and to comply with state and local law requirements for civil service;

b.   Whether Defendants have engaged in unlawful, systemic discrimination on the basis of race and gender through its policies, practices, and procedures in its promotional practices;

c.   Whether Defendants failed to mitigate or cure a known problem of discriminatory promotions within EMS officer titles;

d.   Whether Defendants are liable for past and continued violations of Title VII and/or other related statutes. Plaintiffs' claims raise common questions of fact including:

e.   Whether Defendants' system, policies, and practices of selecting promotional applicants above the rank of Lieutenant is subject to appropriate standards;

f.   Whether Defendants' system of discretionary promotions within EMS officer ranks lacks transparency and equal opportunity;

22

g. Whether Defendants' promotional policies and practices within the EMS officer titles has led to female and/or non-white applicants being denied promotional opportunities in favor of their less-qualified than their male and/or white counterparts;

h. Whether Defendants intentionally, knowingly, or willfully and/or negligently and recklessly denied promotional opportunities to female and non-white applicants in favor of their less-qualified male and white counterparts.

82. Plaintiffs seek relief common to the class, namely, monetary relief, including back pay, front pay, and compensatory damages, as well as equitable relief, including injunctive and affirmative relief.

83. Plaintiffs will fairly and adequately represent and protect the interests of the classes. The interests of the Class Representatives are coextensive with the interests of the members of the proposed Class. Class Representatives seek to remedy Defendants' discriminatory practices, policies, and procedures so as to ensure merit-based promotional practices, remedy past differential treatment, and secure equitable prospective relief so that female and non-white applicants within EMS will no longer face disparate treatment when seeking promotional opportunities.

84. Class Representatives are all willing and able to represent the interests

of the proposed Class fairly and vigorously, as each of them would in pursuing their individual claims. Each Class Representative is prepared to assist in the instant litigation and make informed decisions based on the interests of the proposed Class.

85.     Plaintiffs' lawyers are experienced in the litigation of civil rights matters and will vigorously prosecute this action on behalf of the class. Plaintiffs' counsel has sufficient experience and resources to litigate a class action of this size. Further, as Plaintiffs' counsel has represented Plaintiffs and the Class in all related litigation from 2015 through present, Plaintiffs' counsel is intimately familiar with the procedural and factual history of the instant matter, the factual and statistical information underlying Plaintiffs' claims, and is best positioned to litigate this class action. The experience, knowledge, and resources of Plaintiffs' counsel, together with the assistance of the Class Representatives and resources of Plaintiff Local 3621 satisfies the adequacy requirements of FRCP 23(a)(4).

86.     Defendants have acted on grounds generally applicable to the class and appropriate injunctive and declaratory relief would apply to and benefit the class as a whole.

## FRCP 23(b)(2) AND 23(B)(3) CLASS ALLEGATIONS

## AND AS FOR THE FIRST CAUSE OF ACTION AGAINST DEFENDANTS
## FOR VIOLATIONS OF
## TITLE VII

87.     Plaintiffs repeat and reiterate each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

88.     Defendant City of New York at all relevant times has been Plaintiffs'

employer as defined by Title VII.

89.     Defendants have discriminated against Plaintiffs on the basis of race, sex and/or gender by treating Plaintiffs differently and less favorably when making promotional decisions than their lesser qualified male and white counterparts in violation of Title VII.

90.     Defendants' policies and practices have caused a disparate impact on Plaintiffs with respect to their promotional opportunities and therefore the terms and conditions of their employment.

91.     Defendants knowingly and willfully promote female and/or non-white applicants for positions above Lieutenant at lower rates than lesser qualified male and/or white candidates.

92.     Defendants' conduct has been deliberate, willful, reckless, and conducted with a callous disregard for Plaintiffs' rights, entitling Plaintiffs to punitive damages.

93.     Defendants' discriminatory promotional and employment practices are ongoing and continuous, entitling Plaintiffs to the application of the continuing violations doctrine to all violations alleged herein.

94.     As a direct result of the actions and inactions of Defendants, Plaintiffs have suffered injuries and damages and continue to suffer such injuries, including but not limited to loss of wages, salaries and benefits, as well as reputational and emotional damages, including but not limited to emotional and physical distress and mental anguish.

## AND AS FOR THE SECOND CAUSE OF ACTION AGAINST DEFENDANTS
## FOR VIOLATIONS OF
## NEW YORK STATE HUMAN RIGHTS LAW

95.     Plaintiffs repeat and reiterate each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

96.     Defendants knowingly and willfully promote non-white and/or female promotional applicants at lower rates than lesser qualified white and/or male candidates.

97.     Defendants' policy and practice of employing a subjective promotional process despite the mandate of state and local civil service law and despite knowledge of objective promotional practices available to mitigate the discriminatory impact of subjective promotional processes has a disparate impact on non-white and/or female promotional applicants.

98.     Further, Defendants' policy and practice of employing a subjective promotional process despite the mandate of state and local civil service law and despite knowledge of objective promotional practices available to mitigate the discriminatory impact of subjective promotional processes constitutes disparate treatment of non-white and/or female promotional applicants.

99.     Defendants' policy and practice of employing a subjective promotional process despite the mandate of state and local civil service law and despite knowledge of objective promotional practices available to mitigate the discriminatory impact of subjective promotional processes has a further disparate impact on all members of the EMS Bureau and FDNY as a whole.

100.     Plaintiffs are members of protected classes, qualified for the promotions

they have applied and have been rejected for in favor of lesser qualified candidates because of their race, sex and/or gender. Upon information and belief, the promotional practices complained of herein take into consideration additional impermissible characteristics including but not limited to disability and pregnancy.

101.     The acts, practices, and policies of Defendants, as set forth above, constitute ongoing discrimination against the individual plaintiffs and plaintiff class in violation of the New York State Human Rights Law, New York Executive Law §§290, *et seq.*

102.     As a direct result of the actions of Defendants, Plaintiffs and the class they represent have suffered injuries and damages and continue to suffer such injuries, including but not limited to loss of wages, salaries and benefits.

## AND AS FOR THE THIRD CAUSE OF ACTION AGAINST DEFENDANTS FOR VIOLATIONS OF NEW YORK CITY HUMAN RIGHTS LAW

103.     Plaintiffs repeat and reiterate each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

104.     Defendants knowingly and willfully employ a subjective promotional process despite the mandate of state and local civil service law and despite knowledge of objective promotional practices available to mitigate the discriminatory impact of subjective promotional processes.

105.     Further, Defendants knowingly and willfully employ a subjective promotional process despite the mandate of state and local civil service law, despite knowledge of objective promotional practices available to mitigate the discriminatory impact of subjective promotional processes, and despite actual and/or constructive

knowledge of the disparate impact of these promotional practices on non-white and/or female applicants.

106.     Defendants have further knowingly and willfully employ a subjective promotional process despite the mandate of state and local civil service law and despite knowledge of objective promotional practices available to mitigate the discriminatory impact of subjective promotional processes, which has had a disparate impact on non-white and/or female applicants.

107.     Defendants' policy and practice of employing a subjective promotional process despite the mandate of state and local civil service law and despite knowledge of objective promotional practices available to mitigate the discriminatory impact of subjective promotional processes has a disparate impact on non-white and/or female promotional applicants.

108.     Further, Defendants' policy and practice of employing a subjective promotional process despite the mandate of state and local civil service law and despite knowledge of objective promotional practices available to mitigate the discriminatory impact of subjective promotional processes constitutes disparate treatment of non-white and/or female promotional applicants.

109.     Defendants' policy and practice of employing a subjective promotional process despite the mandate of state and local civil service law and despite knowledge of objective promotional practices available to mitigate the discriminatory impact of subjective promotional processes has a further disparate impact on all members of the EMS Bureau and the FDNY as a whole. EMS, as a majority of-color and large percentage female

Bureau, is demoralized, devalued, and incentivized to leave the Bureau for lack of employment opportunities.

110.     Plaintiffs are members of protected classes, qualified for the promotions that they applied and were denied for in favor of lesser qualified male and/or white applicants because of their race, sex and/or gender. Upon information and belief, these subjective promotional practices also allow for additional impermissible considerations including but not limited to disability and pregnancy to influence promotional decisions.

111.     The acts, practices, and policies of Defendants, as set forth above, constitute ongoing discrimination against the individual plaintiffs and plaintiff class in violation of the New York State Human Rights Law, New York Executive Law §§290, *et seq.*

112.     As a direct result of the actions of Defendants, Plaintiffs and the class they represent have suffered injuries and damages and continue to suffer such injuries, including but not limited to loss of wages, salaries and benefits.

### AND AS FOR THE FOURTH CAUSE OF ACTION AGAINST DEFENDANTS FOR VIOLATIONS OF 42 U.S.C. §1981

113.     Plaintiffs repeat and reiterate each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

114.     By the acts, practices, and policies described above, Defendants have deprived the individual plaintiffs and plaintiff class of their statutory civil rights secured through NYS HRL and NYC HRL based on their race in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1981, *et seq.*

115.     Plaintiffs and the majority of the Class they seek to represent are non-white women, and therefore members of racial minorities.

116.     The EMS Bureau has a higher percentage of non-white members than the average for City employees and the highest percentage of non-white members in the emergency workforce, including the FDNY and NYPD.

117.     Defendants establish the policies by which Plaintiffs apply and are selected for promotions, and Defendants at all relevant times maintain exclusive control over these policies. Defendants knew that their policies had the effect of unlawful discriminatory promotional selections between non-white and higher qualified applicants and their white but lesser qualified counterparts, and that this result constituted unlawful conduct on the basis of race. Defendants nonetheless failed to remedy these policies, and instead intentionally maintained the policies, which led to the intentional perpetuation of racial discrimination in employment opportunities in violation of state and local law. Defendants knew that their actions constituted unlawful conduct on the basis of race and/or showed reckless disregard for Plaintiffs' statutorily protected rights.

118.     This discriminatory treatment concerned the terms and conditions of Plaintiffs' contractual employment with Defendants, the full enjoyment of which is secured by 42 U.S.C. § 1981(b).

119.     As a direct result of the actions of Defendants, Plaintiffs and the class they represent have suffered injuries and damages and continue to suffer such injuries, including but not limited to loss of wages, salaries and benefits.

## AND AS FOR THE FIFTH CAUSE OF ACTION AGAINST DEFENDANTS FOR VIOLATIONS OF 42 U.S.C. §1983

120.     Plaintiffs repeat and reiterate each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

121.     By the policies and customs described above, Defendants have deprived the individual plaintiffs and plaintiff class of their statutory civil rights secured by Title VII and related statutes based on their race, sex, and/or gender in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983, *et seq.*

122.     Defendants establish the policies by which Plaintiffs are compensated, and Defendants at all relevant times maintain control over these policies.  Defendants knew that their policies had either the intention or effect of unlawful discriminatory promotion selections between qualified female applicants and their less qualified male counterparts, and that this result constituted unlawful conduct on the basis of gender. Defendants intentionally failed to redress these statutory violations and/or showed reckless disregard for Plaintiffs' statutorily protected rights.

123.     Defendants were the only entities capable of remedying the unlawful effects of their policies and customs, and yet failed to do so despite ample knowledge and opportunity.

124.     As a direct result of the actions of Defendants, Plaintiffs and the class they represent have suffered injuries and damages and continue to suffer such injuries, including but not limited to loss of wages, salaries and benefits.

## DEMAND FOR JURY

125.    Plaintiffs demand trial by jury on all issues so triable.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grants the following relief:

A.  Certify this action as a class action pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and certify the Named Plaintiffs as class representatives;

B.  As to the Rule 23(b)(2) class, enter a class-wide judgment declaring the acts and promotional practices of Defendants are in violation of the laws of the United States, State of New York, and City of New York;

C.  Issue a permanent injunction enjoining Defendants from further violating Title VII, New York State Human Rights Law, New York City Human Rights Law, §1981, and §1983, requiring Defendants to abolish their discriminatory promotional practices, and requiring Defendants to:

    1.  Take such affirmative action as is necessary to ensure that the effects of their unlawful promotional practices are eliminated;

    2.  Require Defendants to implement a policy upon consultation with appropriate experts whereby all promotions within EMS are based on a quantifiable determination of merit;

    3.  Direct Defendants to appoint an agreed upon independent monitor to review the City's policies and practices and to initiate and enforce remedial steps to cure discriminatory promotional practices and to further investigate

32

enforcement of any orders of this Court with regards to equitable and curative relief and to report on its findings;

D. As to the Rule 23(b)(3) class, award Plaintiffs back pay and front pay together with all other benefits to which Plaintiffs are entitled, with prejudgment interest;

E. Award Plaintiffs compensatory and punitive damages due to Defendants' willful and intentional acts directed at Plaintiffs;

F. Award Plaintiffs reasonable attorneys' fees, expenses and costs of this proceeding;

G. Such other and further relief as this Court deems just and proper.

Date:   May 21, 2018
        New York, NY

Yetta G. Kurland, Esq. (YK-1251)
THE KURLAND GROUP
*Attorneys for Plaintiffs*
160 Broadway, East Building, 11th Floor
New York, New York 10038
(212) 253-6911 (t)
(212) 614-2532 (f)
kurland@kurlandgroup.com

33