UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOCAL 3621, EMS OFFICERS UNION, DC-37, AFSCME, AFL-CIO, et al.,

                              Plaintiffs,

    against

THE CITY OF NEW YORK, et al.,

                              Defendants.

CIVIL ACTION NO.: 18 Civ. 4476 (LJL) (SLC)

**MEMORANDUM OPINION & ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I.    INTRODUCTION

Plaintiffs, a union and two employees of the New York City Fire Department ("FDNY") bring this putative class action against the City of New York (the "City"), the FDNY, the Department of Citywide Administrative Services ("DCAS"), and several John and Jane Does, alleging that employees in the FDNY's Emergency Medical Services Bureau ("EMS") who seek promotions above the rank of lieutenant are subject to disparate treatment and disparate impact based on impermissible considerations. Plaintiffs assert claims under 42 U.S.C. §§ 1981 and 1983, and the New York State and New York City Human Rights Laws. (ECF Nos. 1 ¶¶ 1,4; 26 at 2–3).

In the many months following an unsuccessful mediation, the parties have been engaged in discovery that has led to multiple disputes, letter-motions, and conferences with the Court, the most recent of which occurred on March 5, 2020. The parties ask the Court now to resolve two issues: (1) the scope of information Defendants must produce concerning other discrimination complaints; and (2) whether merits discovery in this matter should be bifurcated and held in abeyance until after class certification. (ECF Nos. 72, 77).

Having heard the arguments of the parties across three conferences, reviewed the transcripts of prior proceedings before The Honorable Paul G. Gardephe[1] and The Honorable Henry B. Pitman, and reviewed the full record in this action, and for the reasons set forth below the Court ORDERS that (1) Defendants must produce, for the time period 2012 to the present, all formal internal and administrative complaints—whether or not they were subsequently substantiated—as well as all jury verdicts and settlements resulting from claims of discrimination based on race, gender, or disability and claims of retaliation from the use of Family Medical Leave Act ("FMLA") or other medical leave in the EMS promotional process, and (2) limited merits discovery shall continue pending briefing and a ruling on Plaintiffs' anticipated motion for class certification, as explained more fully below.

## II. BACKGROUND

### A. Factual Background

The following factual summary is taken from Plaintiffs' Complaint, as summarized by Judge Gardephe during an October 4, 2018 conference (the "October 2018 Conference"). (ECF Nos. 1, 26). The Court accepts the alleged facts as true for purposes of resolving the present discovery disputes.

The EMS was created in 1996 and later became a subdivision of the FDNY. (ECF No. 26 at 4). DCAS is a City agency that administers civil service examinations and oversees promotion and placement of City employees, including EMS employees. (Id.) Plaintiff Local 3621 EMS Officers Union DC-37 AFSCME AFL-CIO (the "Union") represents 535 EMS employees. (Id.)

---

[1] The action has now been reassigned to The Honorable Lewis J. Liman.

Plaintiff Renae Mascol is an African-American woman who has been employed by EMS for about 25 years and has served since 2010 as a lieutenant. Mascol received a "very high score" on the civil service exam, and as a lieutenant, has received "outstanding" annual reviews every year. (Id.) Since 2014, Mascol has applied for promotion to captain on four occasions but has not yet been promoted. (Id.) Plaintiff Luis Rodriguez is a Puerto-Rican man who has been employed by EMS since 1998 and has served as a lieutenant since 2010. (Id.) In the line of duty at EMS, he has suffered several injuries necessitating that he take medical leave. (Id. at 4–5). Rodriguez alleges that his commanding officers have told him that his taking leave would negatively impact his chance of a promotion at EMS. (Id. at 5). Despite having received "very good" performance evaluations, Rodriguez's three applications for promotion since 2015 have been unsuccessful. (Id.)

To determine promotions from paramedic to lieutenant, EMS uses objective criteria in the form of a civil service examination. (Id.; ECF No. 1 ¶¶ 21, 27). To determine promotions for ranks above lieutenant, EMS uses a discretionary process that "includes only the submission of application packets and subsequent interviews." (Id. ¶ 36; ECF No. 26 at 5). Plaintiffs allege that EMS' current procedure for ranks above lieutenant differs from the in-house examination procedure EMS used before it merged into FDNY and from the procedures used in FDNY and other City agencies, which use the civil service examination. (ECF Nos. 1 ¶¶ 29–31; 26 at 5).

Plaintiffs allege that women and persons of color represent 23.7 and 44.6 percent, respectively, of the total number of EMS lieutenants, but only 18.4 percent and 33.5 percent, respectively, of the total number of EMS captains. (ECF No. 1 ¶ 19). According to Plaintiffs' statistical analysis of data regarding EMS personnel, Plaintiffs observe a "gender disparity and a

3

'bleaching' of the ranks," as well as a "statistically significant higher percentage of white males in the ranks of EMS for which there are no objective promotional criteria," that is, captain, deputy chief, and above. (ECF No. 26 at 6 (quoting ECF No. 1 ¶ 21)).

Plaintiffs allege that EMS' procedure for promotions above the rank of lieutenant operates as a pretext by which mostly white and male supervisors exert excessive discretion in making promotional decisions that are based not on merit but on impermissible factors. (ECF No. 1 ¶ 36). In addition to intentional discrimination, Plaintiffs allege that the absence of objective promotional criteria opens the door to implicit bias. (Id.) More specifically, Plaintiffs assert that EMS does not, but should, have a standard scoring rubric, improved dissemination of promotional opportunities, and a more uniform evaluation process. (Id. ¶¶ 37, 47–48). As a result of the inadequacies in EMS' promotional structure, Plaintiffs allege that "often times the Lieutenants who are promoted to Captain are less qualified than the Lieutenants who are not promoted," and that "impermissible considerations," such as disability, FMLA leave, and military leave, caused some lieutenants not to be promoted. (Id. ¶ 45).

Plaintiffs seek to represent an injunctive class under Federal Rule of Civil Procedure 23(b)(2) of individuals "in the titles of Supervising Emergency Medical Service Specialist ("SEMSS") I and II who have applied and been denied promotions to the positions of Captain, Deputy Chief, Division Commander, Deputy Assistant Chief, or Assistant Chief from 1998 to 2017." (Id. ¶ 68). Plaintiffs also seek to represent a damages class under Rule 23(b)(3) of "all non-white members and all female members in the titles of Supervising Emergency Medical Service Specialists ("SEMSS") I and II who have applied and been denied promotions to the positions of Captain or Deputy Chief from 1998 through 2017." (Id. ¶ 69).

4

**B.     Procedural Background**

On May 21, 2018, Plaintiffs commenced this action with the filing of the Complaint. (ECF No. 1). On October 4, 2018, Judge Gardephe held an initial conference during which he informed the parties of the grounds on which he was likely to deny any motion to dismiss Defendants might file. In particular, he noted that, while some of Plaintiffs' claims appeared to be time-barred, Plaintiffs "will likely be permitted to 'us[e] prior acts as background evidence in support of [their] timely claim[s].'" (ECF No. 26 at 15–16 (quoting McLeod v. Gen. Vision Servs., Inc., No. 13 Civ. 6824 (VSB), 2018 WL 3745662, at *5 (S.D.N.Y. Aug. 6, 2018)).

Following the conference, Defendants elected not to move to dismiss and instead answered the Complaint. (ECF No. 24). The matter was automatically referred to the Court's Alternative Dispute Resolution Program, during which the parties were to engage in "targeted, core discovery." (ECF No. 25). Disputes arose concerning the scope of this discovery (ECF Nos. 31–32), which Judge Gardephe referred to Judge Pitman. (ECF No. 33).

On March 11, 2019, following a telephone conference and exchange of letters, Judge Pitman held a lengthy hearing in which he addressed and resolved many of the parties' disputes concerning the discovery that was to be exchanged for mediation purposes. (ECF Nos. 34–37). Judge Pitman held a further telephone conference to resolve the parties' disagreements concerning the protective order applicable to this action. (ECF No. 55). At Defendants' request, the mediation referral was adjourned until class certification was decided. (ECF Nos. 62; 75 at 3). Defendants also asked Judge Gardephe to issue a revised case management plan that bifurcated class certification discovery and merits discovery. (ECF Nos. 44; 75 at 3). Plaintiffs opposed bifurcation. (ECF No. 45)

Following Judge Pitman's retirement, Judge Gardephe referred this matter to the undersigned for general pretrial supervision, including all discovery disputes. (ECF Nos. 61; 75 at 4). On December 19, 2019, Judge Gardephe held an in-person conference during which he heard argument from the parties concerning bifurcation of discovery and referred that issue to this Court for resolution. (ECF No. 75).

On December 20, 2019, this Court issued an order scheduling a discovery conference and ordering the parties to submit a joint proposed schedule for the remainder of discovery as well as a status report regarding outstanding discovery. (ECF No. 63). On January 13, 2020, the Court conducted a telephone conference, following which it issued an order setting a further conference and directing the parties each to submit a statement concerning two categories of remaining discovery: (1) discovery requests made to the opposing party to which no response has been submitted or to which the response is deficient; and (2) any discovery requests made by the opposing party to which the party has objected. (ECF No. 68). Following the parties' submissions (ECF Nos. 69–70), on January 29, 2020, the Court held yet another conference to address the scope and timing of discovery, after which the parties made their final submissions regarding outstanding discovery disputes. (ECF Nos. 72, 77). On March 5, 2020, the Court conducted a telephone conference during which it heard argument from the parties on the two issues addressed in this Order, that is, Plaintiffs' request for production of similar discrimination complaints and Defendants' request for bifurcation. (ECF No. 78).

## III. DISCUSSION

### A. Plaintiffs' Request for Other Complaints of Discrimination

The one remaining disputed area of class certification discovery concerns Plaintiffs' request for "all complaints received by Defendants, whether through formal or informal means, in the years 1996 through 2019 regarding discrimination in promotional practices in the FDNY." (ECF No. 77 at 1). In response to this request, Defendants have agreed to produce "all formal internal and administrative <u>substantiated</u> complaints and/or jury verdicts, as well as any settlements, resulting from claims of race, gender, and disability discrimination in the EMS promotional process, and claims of retaliation from the use of [FMLA] leave when considering candidates for EMS promotion for the time period of 2012 to present." (ECF No. 72 at 1).

From the parties' submissions, this request gives rise to two disputes for the Court's resolution: (1) whether Defendants' limitation of its production to only "substantiated" complaints is permissible, and (2) for what time period must Defendants conduct a reasonable search and production.

#### 1. "Substantiated" vs. "Unsubstantiated"

First, the Court finds that Defendants' limitation of its production to only "substantiated," that is, proven, complaints, is not appropriate. Defendants do not point to any case law in which a court has limited production of similarly-situated discrimination complaints to only those that have been substantiated. To the contrary, the courts that have addressed similar document requests have imposed no such limitation. For example, in <u>Chen-Oster v. Goldman, Sachs & Co.</u>, the court required defendants to produce "any internal complaints regarding compensation, promotion, or performance review where a female employee who is a member of the putative

7

class drew a comparison between herself or another putative class member and one or more of her male colleagues." 293 F.R.D. 557, 564 (S.D.N.Y. 2013). The court explained that this comparison was sufficiently narrow that the resulting search "could reasonably lead to admissible evidence of value to the plaintiffs, and are thus discoverable." Id. The court drew no distinction between complaints that had been proven or validated, and those that had not.

The court in Melendez v. Greiner reached a similar conclusion, holding that "to the extent other inmates' grievances or complaints allege conduct similar to that alleged in the Complaint, and were similarly directed against any of the named defendants, the documents sought may well yield information relevant to the [plaintiff's] claims, and such documents are therefore discoverable." No. 01 Civ. 07888 (SAS) (DF), 2003 WL 22434101, at *3 (S.D.N.Y. Oct. 23, 2003). The court in fact rejected the suggestion that the scope be limited to substantiated complaints, explaining that "the fact that any prior grievances against the defendants may not have led to official disciplinary action, or that charges were dismissed, would not in and of itself preclude discovery of this type of material." Id. at *4; see Unger v. Cohen, 125 F.R.D. 67, 70 (S.D.N.Y. 1989) ("complaints that were abandoned or conciliated may not be admissible at trial, but that does not make them undiscoverable").

To the extent that Defendants resist this discovery on grounds of burden, they must show the nature and extent of the burden. Melendez, 2003 WL 22434101, at *4. Defendants have not made any specific showing of how search and production of the requested documents would be burdensome. See Caines v. City of New York, No. 01 Civ. 7229 (RCC) (DFE), 2003 WL 151993, at *2 n.1 (S.D.N.Y. Jan. 21, 2003) (holding that Defendant's conclusory assertion of burdensomeness was "entitled to no weight whatsoever.") Defendants do not detail the overall volume of the

documents to be searched, where they are located, or in what form. Furthermore, with the date range limitation the Court imposes below, the burden on Defendants will necessarily be minimized.

### 2. Date range

Plaintiffs seek complaints dating back to 1996, the time period of discrimination they allege in their Complaint (ECF No. 77 at 1), while Defendants seek to limit the time period of search and production to 2012 to present. (ECF No. 72 at 1). The Court finds that Defendants' proposed limitation is reasonable. First, as the Court understands from its conferences with the parties, Defendants have located and begun to search documents from 2012 forward. Second, the Court has previously imposed a date limitation of 2012 to the present as reasonably calculated to minimize the burden on Defendants. (ECF No. 71). Third, Mascol alleges that she first applied for promotion to Captain in 2014, and Rodriguez in 2015, and therefore, Defendants' proposal includes the time period specifically relevant to both, plus an additional two years.

Accordingly, the Court finds that limiting the time period for this request to 2012 to the present is proportionate to the important issues at stake in this action balanced against the potential burden to the Defendants. See Fed. R. Civ. P. 26(b)(1) (listing factors for determination of relevance and proportionality in discovery).

### B. Bifurcation of Discovery

### 1. Legal standard

On "a showing of good cause[,] a district court has considerable discretion to stay discovery pursuant to Federal Rule of Civil Procedure 26(c)." Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc., No. 09 Civ. 5874 (RPP), 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009);

accord Roper v. City of New York, No. 15 Civ. 8899 (PAE) (GWG), 2017 WL 462270, at *1 (S.D.N.Y. Jan. 25, 2017). "Federal Rule of Civil Procedure 26(d) also allows the Court to control the sequence and timing of discovery, particularly where resolution of a preliminary matter may decide the entire case." Roper, 2017 WL 462270, at *1; see Thrower v. Pozzi, No. 99 Civ. 5871 (GBD), 2002 WL91612, at *7 (S.D.N.Y. Jan. 24, 2002); Ass'n Fe Y Allegria v. Rep. of Ecuador, No. 98 Civ. 8650 (BSJ), 1999 WL 147716, at *1 (S.D.N.Y. Mar. 16, 1999). In determining whether to grant a stay of discovery, the Court "must look to the particular circumstances and posture of each case." Alford v. City of New York, No. 11 Civ. 6222 (ERK) (MDG), 2012 WL 947498, at *1 (E.D.N.Y. Mar. 20, 2012). As the moving party, Defendants bear the burden of demonstrating good cause under Rule 26(c). See Roper, 2017 WL 462270, at *1.

Also relevant to the question of bifurcation is Federal Rule of Civil Procedure 42(b), which permits a district court, "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, [to] order a separate trial of any claim . . . ." Fed. R. Civ. P. 42(b). The Second Circuit has recognized that Rule 42(b):

> affords a trial court the discretion to order separate trials where such an order will further convenience, avoid prejudice, or promote efficiency. Therefore, bifurcation may be appropriate where, for example, the litigation of the first issue might eliminate the need to litigate the second issue, or where one party will be prejudiced by evidence presented against another party.

Amato v. City of Saratoga Springs, 170 F.3d 311, 316 (2d Cir. 1999) (internal citations omitted).

Finally, it is well-settled that "[a] district court has broad latitude to determine the scope of discovery and to manage the discovery process." See EM Ltd. v. Rep. of Argentina, 695 F.3d 201, 207 (2d Cir. 2012).

### 2. Analysis

Defendants ask the Court to bifurcate class discovery from merits discovery, to permit briefing and resolution of Plaintiffs' anticipated motion for class certification. (ECF Nos. 44 at 4; 75 at 5). Defendants' primary argument in support of bifurcation is that class certification briefing will clarify the definition of the class, if any, and thereby narrow the scope of the remaining merits discovery that needs to be conducted. (ECF No. 75 at 5). Defendants point to Plaintiffs' proposed class definition, which include classes for injunctive as well as damages relief, assert claims over a nearly 20-year period, and raise issues of discrimination on grounds of race, gender, disability, medical leave, and military status. (ECF No. 44 at 2). In addition, in opposition to class certification, Defendants plan to argue that named Plaintiffs Mascol and Rodriguez are not appropriate class representatives because, inter alia, they are not similarly situated to other members of the proposed classes. (ECF No. 75 at 6–7). As an example of the extensive merits discovery Plaintiffs seek should a class be certified, Defendants point to supplemental discovery requests Plaintiffs served on February 11, 2020, which include 22 interrogatories (with sub-parts) and 36 document requests. (ECF No. 77-1).

Plaintiffs oppose bifurcation on the ground that it would be duplicative and cause undue delay. (ECF Nos. 45; 75 at 5–6). Plaintiffs maintain that the class representatives' claims will involve the same theories, discovery, and underlying facts as are at issue for the class as a whole. (ECF No. 75 at 6). In Plaintiffs' view, bifurcating discovery will result in duplicative, rather than more efficient, discovery. (Id.)

The Court finds that Defendants have not met their burden of showing good cause to bifurcate merits discovery altogether, but the Court will exercise its discretion to narrow the

scope of merits discovery that will proceed during the pendency of the motion for class certification.  See Rinaldi v. SCA La Goutte, D'Or, No. 16 Civ. 1901 (VSB) (SDA), 2018 WL 722415, at *2–3 (S.D.N.Y. Jan. 31, 2018) (exercising discretion to limit discovery that was overbroad, burdensome, not relevant, or disproportional).  First, from having supervised discovery in this action for several months, the Court observes that the parties are nearly finished with discovery related to class certification.  As the parties acknowledged during the March 5, 2020 conference, Defendants are in the process of completing production on three remaining categories of documents and expect to complete production by the end of this month.[2]  At this time, Defendants are not seeking any additional documents from Plaintiffs.  (See ECF No. 72 at 2).  Therefore, the parties should proceed with briefing the motion for class certification.

Second, although the class certification decision will be determinative as to the scope of further discovery, at least some merits discovery will proceed whether or not class certification is granted.  If class certification is granted, the parties will have certainty as to both the temporal and subject matter scope of merits discovery.  If class certification is denied, and the class representatives proceed only on their individual claims, merits discovery will occur, although it will necessarily be narrower.

The circumstances of this case are differ from federal civil rights actions involving claims of municipal liability under Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978), in which the courts in this Circuit favor bifurcating and staying discovery on municipal liability claims until a plaintiff succeeds in establishing first an underlying constitutional

---

[2] The three remaining categories are: (1) updated demographic information (which Defendants expect to produce imminently); (2) promotional materials regarding ranks above Captain; and (3) additional promotional materials for 2012 and 2013.

violation.  See, e.g., Aquino v. City of New York, No. 16 Civ. 1577 (GHW), 2017 WL 2223921, at *2 (S.D.N.Y. May 19, 2017); Roper, 2017 WL 462270, at *2; Brown v. City of New York, No. 13 Civ. 6912 (TPG), 2016 WL 616396, at *2 (S.D.N.Y. Feb. 16, 2016).  Here, class certification will not determine the merits of Mascol and Rodriguez's claims, only whether they are adequate representatives to purse claims on behalf of the class.  See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 204 (2d Cir. 2008) (cautioning that "class certification motion [should] not become a pretext for a partial trial of the merits"); Kaplan v. S.A.C. Capital Advisors, L.P., 146 F. Supp. 3d 588, 589 (S.D.N.Y. 2015) (declining to resolve at class certification stage merits issue that involved disputed question of fact); Nestle Waters N. Am., Inc. v. City of New York, No. 15 Civ. 05189 (ALC), 2016 WL 3080722, at *5 (S.D.N.Y. May 25, 2016) ("class certification is a procedural question, distinct from the merits of a case").  Accordingly, the Court finds that it is not appropriate to bifurcate and stay merits discovery pending briefing and resolution of Plaintiffs' anticipated motion for class certification.

The Court does, however, credit Defendants' argument that the number of open issues raised by class certification, including in particular the length of the class period and whether the class will include discrimination claims based on race, gender, disability, FMLA or other medical leave, military service, or some or all of the above, warrant the exercise of caution in the nature and scope of merits discovery that is permitted while the class certification motion is pending.  In a further exercise of discretion over the scope and process for discovery, the Court places two limits on merits discovery while the class certification motion is pending.  First, consistent with the Court's ruling above, merits discovery will be limited to the period 2012 to the present. Second, merits discovery will be limited to information relevant to the discrimination Mascol and

13

Rodriguez allege with respect to themselves, that is, discrimination based on race, gender, and medical leave. The Court finds that these temporary limitations adequately balance the search for information relevant to Plaintiffs' claims in a manner that is proportional to the current needs of the case while minimizing the burden on Defendants. See <u>Walker v. H&M Henner & Mauritz, L.P.</u>, 16 Civ. 3818 (JLC), 2016 WL 4742334, at *2 (S.D.N.Y. Sept. 12, 2016) (precluding discovery that was not "proportional to the needs of the case").

## IV. **CONCLUSION**

For the reasons set forth above, the Court ORDERS as follows:

(1) Defendants must produce all formal internal and administrative complaints, substantiated or unsubstantiated, and/or jury verdicts, as well as any settlements, resulting from claims of race, gender, and disability discrimination in the EMS promotional process, and claims of retaliation from the use of FMLA or other medical leave when considering candidates for EMS promotion for the time period of 2012 to present;

(2) Defendants' request to bifurcate class certification discovery from merits discovery is DENIED;

(3) Merits discovery (a) directed to Plaintiffs' race, gender, and medical leave discrimination claims, and (b) limited to the time period 2012 to the present, will proceed pending briefing and resolution of Plaintiffs' motion for class certification;

(4) The parties must complete class certification discovery by March 29, 2020; and,

(5) By Monday March 16, the parties must submit for Judge Liman's approval a joint proposed scheduling order including a briefing schedule for class certification and remaining case management deadlines in accordance with Judge Liman's Individual Practices.

Dated: New York, New York
March 11, 2020

SO ORDERED

_____
SARAH L. CAVE
United States Magistrate Judge

14