UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOCAL 3621, EMS OFFICERS UNION, DC-37, AFSCME, AFL-CIO, <u>et al</u>., <br><br> Plaintiffs, <br><br> against <br><br> THE CITY OF NEW YORK, <u>et al</u>., <br><br> Defendants. | CIVIL ACTION NO.: 18 Civ. 4476 (LJL) (SLC) <br><br> <u>DISCOVERY ORDER</u> |

**SARAH L. CAVE,** United States Magistrate Judge.

## I.   INTRODUCTION

Plaintiffs, a union (Local 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO ("Local 3621")) and two employees of the New York City Fire Department ("FDNY") bring this putative class action against the City of New York (the "City"), the FDNY, the Department of Citywide Administrative Services ("DCAS"), and several John and Jane Does (collectively, "Defendants"), alleging that employees in the FDNY's Emergency Medical Services Bureau ("EMS") who seek promotions above the rank of lieutenant are subject to disparate treatment and disparate impact based on impermissible considerations.  Plaintiffs assert claims under 42 U.S.C. §§ 1981 and 1983, and the New York State and New York City Human Rights Laws.  (ECF Nos. 1 ¶¶ 1, 4; 26 at 2–3).

Among the numerous disputes concerning class certification discovery in this case, now before the Court are not one, but two motions to compel filed by Plaintiffs demanding that Defendants reproduce demographic data from January 1, 2012 to the present (the "Demographic

Data").[1]  (ECF Nos. 192, 245).  Defendants respond that the Demographic Data they have produced to date is sufficient for purposes of class certification discovery and object to Plaintiffs' demand to "reproduce, merge or reorganize data that has already been produced."  (ECF No. 256; see also ECF No. 204).

## II.   DISCUSSION

The factual background and detailed description of the history of the parties' numerous class certification disputes, as well as the legal standards applicable to discovery, are set forth in the Court's prior orders and incorporated by reference.  (See, e.g., ECF Nos. 197, 199, 206, 228, 240, 246, 257, 259).

On January 27, 2020, Defendants produced a spreadsheet containing demographic information for five EMS title codes for the period January 1, 2013 to April 9, 2019 (the "January 27 Production").  (ECF No. 256 at 1).  Following complaints by Plaintiffs that the January 27 Production was incomplete as discussed during a conference with the parties, on January 30, 2020, the Court ordered Defendants to produce demographic information beginning January 1, 2012 to the present.  (ECF No. 7 at 2).  On March 13, 2020, Defendants produced a second spreadsheet, updated to include data for January 1, 2012 to December 31, 2019 (the "March 13 Production").  (ECF No. 256 at 2).  Over the ensuing months, Plaintiffs continued to have complaints about the nature and completeness of the January 27 Production and the March 13 Production, which were the subject of numerous letters filed with the Court and conferences

---

[1] See ECF No. 70 at 3 (Plaintiffs' demand for demographic information requested "information for each EMS employee active at any time from 2012-present: Employee name; ID#; gender; race; salary; dates of hire, rehire, termination (if applicable); rank or title when first observed; all changes in rank or title with date of change; annual performance evaluation rating for each year; date acquired EMT-B or EMT-Paramedic certification).

between the parties.  (See ECF Nos. 124, 132, 142).  On September 9, 2020, Defendants produced a third spreadsheet for the same five EMS codes as the January 27 and March 13 Productions, with the addition of individuals who had ceased employment with FDNY between January 1, 2012 and December 31, 2019 (the "September 9 Production").  (ECF No. 256 at 2).  DCAS compiled and produced the Demographic Data in the January 27, March 13, and September 9 Productions from the City Human Resource Management System ("CHRMS") and Citywide Equal Employment Database System ("CEEDS").  (ECF No. 256 at 2).

Following further concerns by Plaintiffs about the completeness of the Demographic Data, informed in part by depositions of Defendants' witnesses (see ECF No. 192), on November 18, 2020, Defendants produced demographic information sourced from the FDNY's Human Resources Information System ("HRIS"), consisting of (i) a spreadsheet of promotional histories of current EMS employees for the five EMS codes for 2012 to present; (ii) a spreadsheet of promotional histories of ceased EMS employees for the five EMS codes for 2012 to the present; (iii) a spreadsheet containing demographic historical snapshots of current EMS employees for the five EMS codes from 2013 to present; and (iv) a spreadsheet containing demographic historical snapshots of ceased EMS employees for the five EMS codes for 2013 to present ((i)–(iv), the "HRIS Data").  (ECF No. 256 at 2–3).  Also on November 18, 2020, Defendants produced payroll information from FDNY's Personnel Management System ("PMS") consisting of (i) a spreadsheet containing the changes in base salary of current EMS employees for the five EMS codes from 2012 to present; (ii) a spreadsheet containing the changes in the base salary of ceased EMS employees for the five EMS codes from 2012 to present; (iii) a spreadsheet containing the total salary earned by current EMS employees for the five EMS codes from 2012 to present; and (iv) a

spreadsheet containing the total salary earned by ceased EMS employees for the five EMS codes for 2012 to present ((i)–(iv), the "PMS Data").  (Id. at 3–4).  Finally, Defendants produced from CityTime, the City's time-keeping system, leave history, consisting of (i) a separate spreadsheet for each year from 2012 to present for current EMS employees for the five EMS codes; and (ii) a separate spreadsheet for each year from 2012 to present for ceased EMS employees for the five EMS codes ((i) and (ii), the "CityTime Data") (the HRIS Data, the PMS Data, and the CityTime Data, together, the "November 18 Production").  (Id. at 2–4).

Following the November 18 Production, Plaintiffs pointed out gaps in the information in that production (see ECF No. 231), which the Court then discussed with the parties during a conference on November 23, 2020 (the "November 23 Conference").  (ECF No. 240).  On December 3, 2020, Defendants produced to Plaintiffs data corrected in accordance with the Court's instructions during the November 23 Conference.  (ECF No. 256 at 4).

Between December 4 and December 7, 2020, the parties continued to meet and confer regarding the Demographic Data Defendants had produced to date, and Defendants represented to Plaintiffs that FDNY's Bureau of Technology Development and Systems ("BTDS") had confirmed that all of the information Plaintiffs had requested had been produced, with the caveat that "FDNY did not start keeping snapshots of historical demographic data until the beginning of 2013, and it would be difficult, if not impossible to recreate this data."  (ECF No. 256 at 4–5).  Accordingly, Defendants represent that they have produced all of the data that Plaintiffs requested and that Defendants represented in their October 30, 2020 letter to the Court they intended to produce.  (ECF Nos. 204, 256 at 5).

Plaintiffs dispute Defendants' assertion that all of the requested Demographic Data has been produced, pointing to the December 11, 2020 deposition of Defendants' Rule 30(b)(6) witness, Kamaldeep Deol ("Deol").  (ECF No. 263 at 2).  Specifically, Plaintiffs refer to four open questions about the Demographic Data discussed during Deol's deposition:

    (1) Codes on the spreadsheets for which Defendants have not provided a legend or description (the "Spreadsheet Codes");

    (2) 235 employees who are included in the promotional history spreadsheet but not in the snapshots (the "235 Employees");

    (3) 750 employees included in the annual snapshot spreadsheet but not in the promotional history spreadsheet (the "750 Employees"); and

    (4) Duplicate entries in the spreadsheets containing data for ceased employees (the "Ceased Duplicates").

(the Spreadsheet Codes, the 235 Employees, the 750 Employees, and the Ceased Duplicates, together, the "Data Questions") (ECF No. 263 at 2).  Plaintiffs also refer to the deposition of Aurora Perez, who described the process of submitting a "Service Request" to "NYCAPS Central" for demographic data reports.  (ECF No. 263 at 3).  Plaintiffs argue that Deol's and Perez's testimony are a basis for requiring Defendants to search for and produce additional data "in the immediate."  (ECF No. 263 at 3).

The Court declines to order Defendants to search for and produce Demographic Data from yet another database, in yet another format, compiled by perhaps yet another individual, particularly given that Defendants have already made four productions of Demographic Data. That the Demographic Data is not organized in precisely the format that Plaintiffs would desire is not a basis for imposing an additional burden on Defendants or an additional delay in this case. See In re Payment Card Interchange Fee & Merch. Disc., No. 05 Md. 1720 (JG) (JO), 2007 WL

121426, at *4 (E.D.N.Y. Jan. 12, 2007) (declining to require party to re-produce data in a form requested by opposing party on the basis of burden).  Accordingly, the Court finds that Defendants have shown "good cause" as to why they should not be required to make a further production of Demographic Data at this time.  Winfield v. City of New York, No. 15 Civ. 05236 (LTS) (KHP), 2018 WL 840085, at *3 (S.D.N.Y. Feb. 12, 2018) ("In order to justify withholding relevant information, the party resisting discovery must show 'good cause,' the standard for issuance of a protective order under Rule 26(c).").  Even if Plaintiffs are correct that relevant Demographic Data exists in another location or format, the Court finds that it is appropriate to limit discovery because Plaintiffs' request is "unreasonably cumulative or duplicative," and has been "obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C).

The Court does find, however, that the Data Questions raised during Deol's deposition are valid questions that Defendants should be able to answer without substantial burden. Accordingly, the Court orders that Defendants must make inquiries about the Data Questions, meet-and-confer with Plaintiffs to provide answers to these questions, and provide a Rule 30(b)(6) witness who must be prepared to testify with knowledge on behalf of Defendants about the Data Questions during a deposition of no more than two (2) hours in length.  The witness who testifies regarding the Data Questions should not be questioned about and will have no obligation to testify as a Rule 30(b)(6) witness on any topics other than the Data Questions.

### III.    **CONCLUSION**

For the reasons set forth above, the Court ORDERS as follows:

1.  Plaintiffs' Motions to Compel the Demographic Data are DENIED to the extent they
    seek the production of the Demographic Data in another form; but are GRANTED as
    to the Data Questions.

2.  Defendants must make inquiries about the Data Questions and provide a Rule
    30(b)(6) witness to testify regarding the Data Questions for no longer than two (2)
    hours.

3.  The parties are directed to meet and confer regarding the Data Questions and the
    scheduling of the Rule 30(b)(6) witness therefor.

The Clerk of Court is respectfully directed to close the Motions at ECF Nos. 192 and 245.

Dated:        New York, New York
              December 15, 2020                          SO ORDERED

                                                         _____
                                                         SARAH L. CAVE
                                                         United States Magistrate Judge