UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
LOCAL 3621, EMS OFFICERS UNION, DC-37, :
AFSCME, AFL-CIO, et al., :
:
                Plaintiffs, :    18-cv-4476 (LJL)
:
      -v- :    OPINION AND ORDER
:
THE CITY OF NEW YORK, et al., :
:
                Defendants. :
                                      X
------------------------------------------------------------------------
LEWIS J. LIMAN, United States District Judge:

    Plaintiffs Local 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO, Renae Mascol, and Luis Rodriguez (collectively, "Plaintiffs") move for an Order directing the City of New York, the FDNY, the Department of Citywide Administrative Services ("DCAS"), and several John and Jane Does (collectively, "Defendants"), to pay Plaintiffs' attorneys' fees totaling $148,971.73 and expenses and costs of $10,807.39 associated with the four motions for which the Court has awarded Plaintiffs fees and costs. *See* Dkt. No. 426.

## BACKGROUND

    Plaintiffs bring this putative class action against Defendants alleging that employees in the FDNY's Emergency Medical Services Bureau ("EMS") who seek promotions above the rank of lieutenant are subject to disparate treatment and disparate impact based on impermissible considerations in violation of 42 U.S.C §§ 1981 and 1983, and the New York State and New York City Human Rights Laws. Dkt. No. 1. The factual background of this case is set out in detail in Magistrate Judge Cave's March 11, 2020 Memorandum Opinion & Order which resolved various discovery disputes and is incorporated herein by reference. *Local 3621, EMS*

*Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*, 2020 WL 1166047, at *1 (S.D.N.Y. Mar. 11, 2020).

This instant motion arises out of this Court's Order on July 2021 ("July 2021 Order"), which approved the March 31, 2021 Report and Recommendation of Magistrate Judge Cave ("R&R").  Dkt. No. 422.  Judge Cave's R&R stemmed from Plaintiffs' motion for sanctions in the form of an adverse inference ("Motion for Sanctions") due to Defendants' "failure to produce outstanding demographic data along with the legend" in the course of class certification discovery.  Dkt. No. 373.  The Motion for Sanctions was brought under Federal Rule of Civil Procedure 37(b)(2), which provides for sanctions for failure to comply with a court order and requires the court to order the disobedient party to "pay the reasonable expenses, including attorney's fees, caused by the failure."  Fed. R. Civ. P. 37(b)(2).

The following is a brief summary of the background leading up to Plaintiffs' Motion for Sanctions, the subject of Judge Cave's R&R.[1]

As part of class certification discovery, Plaintiffs sought demographic data ("Demographic Data") from Defendants, which, in a December 15, 2020 order, Magistrate Judge Cave[2] defined as various pieces of information for each EMS employee active at any time from 2012 to the present including employee name, ID number, gender, race, salary, and more.  Dkt. No. 267 at 2 n.1.  Plaintiffs first requested the Demographic Data on December 21, 2018.  Dkt. No. 192.  On January 30, 2020, the Court ordered the Defendants to produce the requested information along with a legend for the abbreviations used to categorize the information.  Dkt. No. 71.  Plaintiffs made a second request for the proper Demographic Data on June 17, 2020.

---

[1] For a more detailed background, *see* Dkt. No. 373.
[2] For the duration of the Background section, "the court" refers to Magistrate Judge Cave's court.

2

Dkt. No. 136. After a conference on July 7, 2020 and another on July 30, 2020 regarding interpreting the spreadsheet and setting up a conversation with a representative of the agency that compiled the demographic data, Plaintiffs represented to the Court that the representative confirmed that the City had not produced all of the requested Demographic Data.

On September 8, 2020, Plaintiffs filed a motion for sanctions, Dkt. No. 164, and Magistrate Judge Cave held conferences on September 21, 2020 and October 5, 2020, allowing Plaintiffs to file a letter-motion to compel ("Oct. 2020 Motion to Compel") outlining the Demographic Data that Defendants had not yet produced. Dkt. No. 191. On October 5, 2020, the court issued an order holding Plaintiffs' motion for sanctions in abeyance pending the next conference. *Id.* The court held two more conferences on October 19, 2020 and October 27, 2020. At the latter conference, the court ordered Defendants to provide more data. Dkt. No. 199. The court held yet another conference on November 2, 2020 regarding the Demographic Data, and again on November 18, 2020 and November 23, 2020, resulting in the court ordering Defendants to provide a legend for the data. Dkt. No. 240.

Plaintiffs filed a second motion to compel Defendants to produce the Demographic Data on December 2, 2020 ("Dec. 2020 Motion to Compel"), Dkt. No. 245, and the court ordered Defendants to produce a Rule 30(b)(6) witness regarding the Demographic Data, Dkt. No. 246. Plaintiffs deposed the 30(b)(6) witness on December 11, 2020. On December 15, 2020, the court ruled on both Plaintiffs' Oct. 2020 Motion to Compel and Dec. 2020 Motion to Compel and declined to order Defendants to get data from another database, but ordered Defendants to produce more data and provide a Rule 30(b)(6) witness. Dkt. No. 267. Plaintiffs filed a motion for reconsideration of the court's December 15, 2020 order, Dkt. No. 268, which the court denied on December 16, 2020, Dkt. No. 269. After various scheduling issues, Defendants filed a

motion for sanctions, Dkt. No. 308, and Plaintiffs filed a cross motion in connection with the scheduling of a deposition, Dkt. No. 312.  On February 11, 2021, the court granted both motions in part.  Dkt. No. 315.

After the parties failed to meet the deadlines outlined in the February 2021 order, Defendants moved for an extension of time for the deposition, Dkt. No. 324, and Plaintiffs cross-moved for an order directing Defendants to provide more dates for the deposition of the Rule 30(b)(6) witness, Dkt. No. 325.  On February 19, 2021 the court denied Defendants' extension request and granted Plaintiffs' request.  Dkt. No. 327.  Defendants' counsel sent more Demographic Data on February 2021, which Plaintiffs' counsel contended was inoperable, resulting in Plaintiffs' Motion for Sanctions, Dkt. No. 328.

On March 5, 2021, the court, again, ordered Defendants to provide dates to schedule the deposition of the Rule 30(b)(6) witness and provide the data legend.  Dkt. No. 353.  After Defendants failed to comply with the order, Plaintiffs filed another motion to compel on March 15, 2021 ("Mar. 15, 2021 Motion to Compel"), Dkt. No. 360, resulting in yet another court order on March 16, 2021, Dkt. No. 362.  Finally, on March 26, 2021, the Rule 30(b)(6) Demographic Data witness deposition occurred, Dkt. No. 371, but still, Defendants failed to produce a legend. On March 30, 2021, the Court, once again, ordered Defendants to produce a legend for the Demographic Data codes.  Dkt. No. 372.

In her R&R, Magistrate Judge Cave recommended that the Court reject Plaintiffs' request for an adverse inference as a result of Defendants' "failure to timely produce the legend and Demographic Data," Dkt. No. 373 at 29, but also recommended sanctions in the form of attorneys' fees.  *Id.* at 29.  This Court adopted that recommendation in the July 2021 Order.  Dkt. No. 422.  Judge Cave declined to recommend an adverse inference because it would "absolve

[plaintiffs] of the duty to prove liability" despite Defendants' productions of Demographic Data and would amount to a "disproportional windfall for Plaintiffs." Dkt. No. 373. at 27–8 (internal quotations and citations omitted).

Instead, Judge Cave found that "the prejudice to Plaintiffs is manifest . . . in the extent of motion practice and Court intervention that has been necessary to secure not only the additional productions of Demographic Data, but also conversations with Defendants' representatives to explain the data and, ultimately, to obtain the legend . . . and the Demographic Data Witness's deposition." *Id.* at 28. Therefore, Judge Cave recommended Plaintiffs be awarded their reasonable expenses and attorneys' fees "caused by Defendant's failure to timely produce the legend and the Demographic Data." *Id.* at 29. This includes reimbursement for reasonable attorneys' fees and costs for: (i) the Oct. 2020 Motion to Compel, Dkt. No. 192; (ii) the Dec. 2020 Motion to compel, Dkt. No. 267; (iii) the Mar. 15, 2021 Motion, Dkt. No. 360; and (iv) the Motion for Sanctions, Dkt. No. 328.

It is under this backdrop that the Court determines the reasonable attorneys' fees to award Plaintiffs.

## LEGAL STANDARD

In determining a reasonable fee, "the district court must ascertain whether 'the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058–59 (2d Cir. 1989) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). "The reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Ortiz v. City of New York*, 843 F. App'x 355, 359 (2d Cir. 2021)

5

(alteration in original) (quoting *Lilly v. City of N.Y.*, 934 F.3d 222, 231 (2d Cir. 2019)).  The Court also considers the *Johnson* factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Lilly*, 934 F.3d at 228.  "A district court need not recite and make separate findings as to all twelve *Johnson* factors, provided that it takes each into account in setting the attorneys' fee award."  *C.D. v. Minisink Valley Cent. Sch. Dist.*, 2018 WL 3769972, at *4 (S.D.N.Y. Aug. 9, 2018) (quoting *E.F. ex rel. N.R. v. N.Y. City Dep't of Educ.*, 2014 WL 1092847, at * 3 (S.D.N.Y. Mar. 17, 2014)); *see also C.B. v. N.Y. City Dep't of Educ.*, 2019 WL 3162177, at *5 (S.D.N.Y. July 2, 2019) (same).

After determining a reasonable hourly rate, the Court multiplies "that rate by the number of hours reasonably expended to determine the presumptively reasonable fee."  *Lilly*, 934 F.3d at 230.  "To calculate . . . attorneys' fees, courts apply the lodestar method, whereby an attorney fee award is derived by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate."  *A.R. ex rel. R.V. v. New York City Dep't of Educ.*, 407 F.3d 65, 79 (2d Cir. 2005) (internal quotation marks and alteration omitted) (quoting *G.M. v. New Britain Bd. of Educ.*, 173 F.3d 77, 84 (2d Cir. 1999)).  "[T]here is . . . a strong presumption that the lodestar figure represents a reasonable fee."  *Id.* (alteration in original) (quoting *G.M.*, 173 F.3d at 84); *accord I.B. ex rel. Z.B. v. New York City Dep't of Educ.*, 336 F.3d 79, 80 (2d Cir. 2003).

The Second Circuit has stated:

> In *Arbor Hill* [522 F.3d 182 (2d Cir. 2008)], we attempted to . . . clarify our circuit's fee-setting jurisprudence.  We instructed district courts to calculate a presumptively

6

> reasonable fee by determining the appropriate billable hours expended and setting a reasonable hourly rate, taking account of all case-specific variables. We explained with respect to the latter:
>
> "[T]he district court, in exercising its considerable discretion, [should] bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* [488 F.2d 714 (5th Cir. 1974)] factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the 'presumptively reasonable fee.'"
>
> In the wake of *Arbor Hill*, we have consistently applied this method of determining a reasonable hourly rate by considering all pertinent factors, including the *Johnson* factors, and then multiplying that rate by the number of hours reasonably expended to determine the presumptively reasonable fee. It is only after this initial calculation of the presumptively reasonable fee is performed that a district court may, in extraordinary circumstances, adjust the presumptively reasonable fee when it does not adequately take into account a factor that may properly be considered in determining a reasonable fee.

*Lilly*, 934 F.3d at 229–30 (internal quotation marks and citations omitted) (alteration in original).

The Court's task is to make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). At the same time, however, in reviewing a fee application, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice,* 563 U.S. 826, 838 (2011). "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Id.*

"[T]he fee applicant bears the burden of establishing entitlement to an award, and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also C.D.*, 2018 WL 3769972, at *7. The fee applicant must "establish his hourly rate with satisfactory evidence—in addition to the attorney's own affidavits." *Chambless*,

7

885 F.2d at 1059 (internal quotation marks omitted).  Where the fee applicant presents no evidence to support the timekeeper's relevant qualifications, "courts typically award fees at the bottom of the customary fee range."  *C.D.*, 2018 WL 3769972, at *7 (citing cases).

## DISCUSSION

### I. Reasonable Hourly Rate

The reasonable hourly rate is the "'prevailing market rate,' i.e., the rate 'prevailing in the relevant community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  *Farbotko v. Clinton Cty. of New York*, 433 F.3d 204, 208 (2d Cir. 2005) (alteration adopted) (quoting *Blum*, 465 U.S. at 896 & n.11).  It is not the rate that the particular client subjectively "desires" or is willing or able to pay.  *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 52 (S.D.N.Y. 2015); *see also HomeAway.com, Inc. v. City of New York*, 523 F. Supp. 3d 573, 595 (S.D.N.Y. Mar. 1, 2021) ("[T]he fact that the prevailing party has negotiated, or paid its lawyers based on, a particular billing rate is not the test of the rate's reasonableness.").  An "attorney's customary hourly rate" is only one of the *Johnson* factors.  *Lilly*, 934 F.3d at 228.  At the same time, the reasonable hourly rate "is not ordinarily ascertained simply by reference to rates awarded in prior cases."  *Farbotko*, 433 F.3d at 208.  Instead, "the equation in the caselaw of a 'reasonable hourly fee' with the 'prevailing market rate' contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel," *id.* at 209, and it "requires an evaluation of evidence proffered by the parties," *id.*

The parties dispute the reasonable hourly rate that should be used to calculate the attorneys' fee award in this case.  Plaintiffs' counsel claims that the reasonable rate for attorneys Yetta Kurland and Erica Healey-Kagan should be $695 and $650 per hour, respectively.

8

Defendants contend that Ms. Kurland's hourly rate should be reduced to $600 and Ms. Healey-Kagan's to $400 per hour.

Ms. Kurland graduated from law school in 1997, worked for a law firm for four years, and founded a solo practice in 2002. Dkt. No. 428 ("Kurland Decl.") ¶¶ 2–3. Her firm—today known as the Kurland Group—specializes in civil rights with a large focus on employment law litigation and she has acted as lead attorney in many employment discrimination matters. *Id.* ¶¶ 4, 6. Ms. Healey-Kagan graduated from law school in 2008 and began working at Ms. Kurland's firm in 2009. Dkt. No. 429 ("Healey-Kagan Decl.") ¶ 2. She became Counsel in 2015 and a Junior Partner in 2019. *Id.* She has served as lead counsel in various employment discrimination matters. *Id.* ¶¶ 5, 6.

In recent years, other courts in the Southern District have determined various hourly fees to be reasonable in the civil rights and employment law contexts. *Ravina v. Columbia Univ.*, 2020 WL 1080780 (S.D.N.Y. Mar. 6, 2020) (awarding $780 for chairman, $650 for vice chairman, and approximately $550 for other partners at a "well-known and well-regarded" civil rights firm); *Shnyra v. State St. Bank & Tr. Co.*, 2021 WL 4975637, at *4 (S.D.N.Y. Oct. 25, 2021) (awarding $450 for senior partner and $400 for associate who had been a member of the bar for twelve years at an international law firm); *Feng Chen v. Patel*, 2020 WL 1547457, at *3–4 (S.D.N.Y. Mar. 31, 2020) (noting that a lawyer with about ten years of employment litigation experience would generally receive $350, but decreasing the lawyer's rate to $250 due to his incompetence at trial).

Three previous cases involving an award of attorneys' fees for Ms. Kurland and Ms. Healey-Kagan specifically are instructive, though the Court is not bound by them. *See M.H. v. New York City Dep't of Educ.*, 2021 WL 4804031 (S.D.N.Y. Oct. 13, 2021) (citing *C.B.*, 2019

9

WL 31627177, at *5). In each of these cases, the court determined that a reasonable hourly rate for Ms. Kurland based on her background and experience was $600. *Torres v. City of New York*, 2020 WL 6561599, at *5 (S.D.N.Y. June 3, 2020), report and recommendation adopted, 2020 WL 4883807 (S.D.N.Y. Aug. 20, 2020); *Sanson v. City of New York*, 2020 WL 9256549 (S.D.N.Y. May 19, 2020), report and recommendation adopted in part, rejected in part, 2021 WL 1191566 (S.D.N.Y. Mar. 30, 2021); *Local 1180 Communications Workers of America, AFL-CIO v. City of New York*, 392 F. Supp. 3d 361, 380 (S.D.N.Y. 2019). As for Ms. Healey-Kagan, in *Local 1180*, Magistrate Judge Aaron determined that a reasonable rate for her was $350. *Local 1180*, 392 F. Supp. 3d at 380. In *Sanson*, to account for the fact that Ms. Healey-Kagan had become a partner, Judge Aaron determined that $400 was a reasonable hourly rate, and Judge Torres adopted that recommendation. *Sanson*, 2020 WL 9256549, at *2; 2021 WL 1191566, at *4. In *Torres*, Judge Parker also determined that $400 was a reasonable rate after accounting for Ms. Healey-Kagan's promotion to partner. *Torres*, 2020 WL 6561599, at *5.

In addition to considering the decisions of sister courts, "[t]he Court may consider the passage of time, the increase in fees that may come with such passage of time, and the matriculation of attorneys over that passage of time as junior attorneys gain experience and become more senior." *M.H.*, 2021 WL 4804031, at *12 (citing *C.D.*, 2018 WL 3769972, at *6). Plaintiffs' attorneys also contend that their retainer agreement with their clients demonstrates that their fees are reasonable and customary. However, there is no evidence that their clients have ever paid these fees, and the rate that a particular client subjectively "desires" or is willing or able to pay is not a dispositive factor. *Beastie Boys*, 112 F. Supp. 3d at 52 ("[T]he governing test of reasonableness is objective."). Considering what courts have awarded lawyers in the civil rights context, what courts have awarded Ms. Kurland and Ms. Healey-Kagan in particular, and

10

the passage of time since various courts have awarded Ms. Kurland $600 and Ms. Healey-Kagan $400 in 2020, the Court determines that a reasonable hourly rate is $650 for Ms. Kurland and $425 for Ms. Healey-Kagan.

## II.     Reasonable Hours

After determining the reasonable hourly rates, the Court must determine a reasonable number of hours to be billed.  "The task of determining a fair fee requires a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."  *Lunday*, 42 F.3d at 134.  "If the court finds that the fee applicant's claim is excessive or insufficiently documented, or that time spent was wasteful or redundant, the court may decrease the award, either by eliminating compensation for unreasonable hours or by making across-the-board percentage cuts in the total hours for which reimbursement is sought."  *Wise v. Kelly*, 620 F. Supp. 2d 435, 442 (S.D.N.Y. 2008) (citing *Hensley*, 461 U.S. at 434; then citing *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); and then citing *New York State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)); *A.B. v. New York City Dep't of Educ.*, 2021 WL 951928, at *7 (S.D.N.Y. Mar. 13, 2021) ("A fee award should compensate only those hours that were 'reasonably expended' by the attorneys on this case.  'In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours.'" (internal citation omitted) (first quoting *McDonald ex rel. Prendergast v. Pension Plan of the NYSA–ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006); and then quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).  A court can "use estimates in calculating and allocating an attorney's time," since the "essential goal in shifting fees" is "to do rough justice, not to achieve auditing perfection."  *Fox,* 563 U.S. at 838.

11

Plaintiffs and Defendants differ sharply on their views as to the reasonable number of hours billed and costs incurred in connection with the four motions. Plaintiffs claim that they have spent 238.75 hours of attorney time. Defendants would have Plaintiffs' hours reduced to 143.25 hours of attorney time. Defendants argue that the hours should be reduced for the following reasons: (1) Plaintiffs have included time charged for work unrelated to the Motions to Compel; (2) Plaintiffs have overbilled for the time spent preparing for, taking, and reviewing two Rule 30(b)(6) witnesses and for the drafting of the four letter motions and conducting legal research in connection with the motions; and (3) Plaintiffs have included duplicative entries. The Court addresses each of these arguments in turn.

### A. Work Unrelated to the Motions to Compel

Defendants contend that (1) Plaintiffs billed 56.45 hours for work performed after they filed the last motion to compel on March 15, 2021 and (2) Plaintiffs' fee request includes charges related to activities that would have been performed even without the motions being filed. Plaintiffs contend that the work completed after March 15, 2021 included hours spent reviewing Defendants' opposition to Plaintiffs' motions and drafting replies to the oppositions and was a result of Defendants' continuous failure to properly produce the data, legend, and witnesses, which required additional work.

Judge Cave recommended, and this Court adopted the recommendation, that Plaintiffs be awarded "their reasonable expenses and attorneys' fees caused by Defendants' failure to timely produce the legend and the Demographic Data." Dkt. No. 373 at 27. Judge Cave also stated that she recommended "Plaintiffs be awarded reasonable attorneys' fees and costs for bringing: (i) the Oct. 2020 Motion to Compel (ECF No. 192); (ii) the Dec. 2020 Motion to Compel (ECF No. 267); (iii) the Mar. 15, 2021 Motion (ECF No. 360); and (iv) the current Motion [for

12

sanctions] (ECF No. 328)." Therefore, the Court must analyze whether the hours billed after March 15, 2021, are related to the March 15, 2021 Motion to Compel such that they were intended to be covered by Judge Cave's recommendation to grant attorneys' fees.

While the Court declines to go line-by-line analyzing the hours billed after March 15, 2021, some hours billed after that date are reasonable and others are not. For example, work related to reviewing the Court's order on March 16, 2021, in response to Plaintiffs' March 15, 2021 Motion to Compel is plainly related to the fourth motion to compel and is therefore reasonable. Additionally, Plaintiffs' communications with the Court and Defendants regarding Defendants' failure to comply with the March 16, 2021 court order is also related to the fourth motion to compel. By contrast, hours billed in connection with the second Rule 30(b)(6) witness—whose deposition occurred on March 26, 2021—are not reasonable because this work occurred as a result of Defendants' compliance with the Court's March 16, 2021. These hours are more likely to be of the kind that Plaintiffs would have had to incur even without Defendants' numerous discovery violations.[3]

Defendants contend that some of the hours Plaintiffs billed would have been necessary to perform in the absence of the motions to compel such as the hours spent communicating with their expert witness concerning data production and the results of the data. The Court partially credits this argument. Plaintiffs hired a data management expert—in addition to their expert to establish statistical proof of discriminatory impact—to sort through Defendants' production of data and comprehend whether the data was sufficient. Plaintiffs' consultation with such an

---

[3] Plaintiffs have properly billed for work related to the production and deposition of the first Rule 30(b)(6) witness which were related to the three motions to compel prior to March 15, 2021. Plaintiffs, at some point throughout discovery even without Defendants' numerous discovery violations, would have likely had to incur fees related to a Rule 30(b)(6) witness. Therefore, the hours billed for work related to the second Rule 30(b)(6) witness are unreasonable.

13

expert seemed to be largely the result of Defendants' repeated failure to produce the proper data with a legend.  However, given the volume and complexity of the data, Plaintiffs may have had to hire a data management expert to decipher the data even without Defendants' discovery violations, albeit likely for a lower number of hours.  Therefore, some of the hours spent communicating with an expert witness concerning data production were unreasonable.

Similarly, some of the hours billed in connection with conference calls and discovery conferences with the Court are reasonable, although Plaintiffs would have had to participate in at least some number of conferences even without Defendants' discovery violations.  While these tasks are expected of every litigant, Plaintiffs likely would not have had to participate in such a large number of conferences but for Defendants' repeated violations.  To reflect the fact that these conference calls and discovery conferences may not have solely been related to the Demographic Data, and thus the motions to compel, Plaintiffs have already deducted 75% of their hours related to these conferences in calculating their fee request.  Therefore, Plaintiffs' requested fees for such conferences are reasonable.

Overall, some hours billed after the March 15, 2021 Motion to Compel are reasonable while others relating to the deposition of the second Rule 30(b)(6) witness which occurred after March 15, 2021 and some time spent communicating with a data management expert are not reasonable.  Additionally, hours billed and already reduced by Plaintiffs for conferences with the Court are reasonable.

### B. Overbilling for Rule 30(b)(6) Witnesses and the Four Letter Motions

Defendants argue that hours billed in connection with the Rule 30(b)(6) witnesses and the hours spent preparing the four letter motions are excessive.  First, the time billed for preparing for, taking, and reviewing the Rule 30(b)(6) witnesses is reasonable.  Defendants cite *Marshall v.*

*Randall*, 2013 WL 12347282 (E.D.N.Y. Jan. 24, 2013) in support of their argument that the hours billed in connection with the 30(b)(6) witness are unreasonable. In *Marshall*, the court found that 17.5 hours of time spent preparing for a two-hour deposition and 20.35 hours spent for a three-hour deposition was unreasonable. *Marshall*, 2013 WL 12347282, at *7. Defendants also cite to *Mugavero v. Arms Acres, Inc.*, 2010 WL 451045, at *11 n.10 (S.D.N.Y. Feb. 9, 2010), where the court found that 8 hours spent preparing for a four-hour deposition was reasonable.

Here, according to Plaintiffs, the depositions of both Rule 30(b)(6) witnesses lasted approximately 14 hours in total. Defendants claim that Plaintiffs have billed 57 hours of time spent preparing for, taking, and reviewing two Rule 30(b)(6) witness depositions. As far as the Court can discern, Plaintiffs billed approximately 25 hours[4] of time spent preparing for the depositions that lasted approximately 14 hours. The number of hours spent preparing compared to the length of the deposition here is much lower than what the court found unreasonable in *Marshall*. Additionally, in *Mugavero*, the court found a ratio of 2:1 reasonable; the proportion here is even lower. Other hours billed in relation to the Rule 30(b)(6) witnesses aside from preparing for the depositions and attending and conducting the depositions include "Strategy meeting[s] regarding Defendants' failure to produce 30(b)(6) witness with knowledge of data," drafting internal memorandum regarding the demographic data and 30(b)(6) deposition, drafting letters to the court regarding the same, communicating with opposing counsel regarding the

---

[4] This number is approximate. For the first deposition, Ms. Kurland has a time entry that says: "Prepare for and conduct deposition of 30(b)(6) witness Kamaldeep Deol regarding data issues" for ten hours. Kurland Decl. Additionally, for the second deposition, Ms. Kurland has a time entry that says: "Prepare for an attend 30(b)(6) deposition regarding data" for eight and a half hours. It is unclear how much of this time was spent preparing for the deposition and how much was spent conducting the deposition. *Id.* The Court presumes that three hours from the first deposition were spent preparing and two hours from the second were spent preparing.

15

same, attorney meetings, reviewing court orders regarding the deposition, and reviewing transcripts of the depositions. Kurland Decl. These hours are reasonable in light of the fact that Plaintiffs' counsel had to expend time and effort to discover whether the first 30(b)(6) witness was able to testify regarding the data and how to proceed after discovering the witness was not. Additionally, Plaintiffs had to review the transcripts of the depositions to conduct this work. Given the large volume of data and difficulty in deciphering such data especially without a legend, it is reasonable that Plaintiffs' counsel spent this time communicating with each other, Defendants' counsel, and the court to figure out whether the Rule 30(b)(6) witnesses could properly testify regarding the data, and, if not, how to proceed.

Regarding the letter motions, Defendants contend that Plaintiffs have billed 41.75 hours to draft the four letter motions and 10.5 hours for the legal research conducted in bring the motions. Defendants cite *Rich Products Corp. v. Impress Industries., Inc.*, 2008 WL 203020 (W.D.N.Y. Jan. 23, 2008), in support of their proposition that 10 hours per letter motion is unreasonable. In that case, the court reduced counsel's claim of 7.6 hours for preparing a motion to compel and found that 3 hours were reasonable considering the motion was not unusual or complex. *Id.* at *3. Defendants also cite *Marano v. Aaboe*, 2007 WL 3195156 (S.D.N.Y. Oct. 29, 2007), where the court reduced counsel's claim of 16 hours to write a motion to compel to 3 hours because "attorney's fees [were] only being granted for a small portion of the overall motion." *Id.* at *4. In Defendants' previously cited case, *Mugavero*, 2010 WL451045, the court found that billing 10 hours for each letter related to discovery abuses was reasonable. *Id.* at *11 n.10.

Here, the Court has granted attorneys' fees for the four motions in their entirety, unlike in *Marano*. Additionally, while the motions were not unusual or legally complex, they were

16

factually complex in that they required Plaintiffs' counsel to spend time deciphering the data and reviewing court orders and conferences. Therefore, the Court finds that billing 10 hours for each motion was reasonable. However, given the legal simplicity of the motions, the Court finds that billing the 10.5 hours of legal research in connection with bringing the four motions was unreasonable.

### C. Duplicative Entries

Defendants argue that Plaintiffs have billed time for duplicative tasks and that time should be disregarded. "If a court finds that the fee applicant's claim is excessive, or that time spent was wasteful or duplicative, it may decrease or disallow certain hours or, where the application for fees is voluminous, order an across-the-board percentage reduction in compensable hours." *Santa Fe Nat. Tobacco Co. v. Spitzer*, 2002 WL 498631, at *3 (S.D.N.Y. Mar. 29, 2002) (citing *In re "Agent Orange" Prods. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987)).

In *Landstar Sys. v. Am. Landstar Logistics Corp.*, 2020 LEXIS 21774, at *20–21 (E.D.N.Y. Feb. 6, 2020), the court found that time entries were duplicative where both attorneys billed for reviewing a court order, corresponding with defendants' counsel, reviewing materials from defendants' counsel, and attending a conference call. Here, it was unreasonable for Ms. Kurland and Ms. Healey-Kagan to both bill for attending the same conferences with the court and meetings with experts. Despite Plaintiffs' attorneys' justification that both of their participation was necessary for certain tasks and considering that a "reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," *Ortiz*, 843 F. App'x at 359 (internal citations omitted), one attorney could have easily attended these meetings and conferences.

17

Given that most of Plaintiffs' counsel's time entries were reasonable but some were unreasonable—including certain hours billed after the Motion to Compel was filed on March 15, 2021, some time spent communicating with a data management expert, the hours for legal research in connection with bringing the motions, and various duplicative entries—the Court imposes a 20% reduction in hours billed by both Ms. Kurland and Ms. Healey-Kagan.[5]

### III.   Reasonable Costs

Plaintiffs also seek $10,807.39 in costs which includes costs for transcripts of thirteen discovery conferences with the court, transcripts of the Rule 30(b)(6) witness depositions, and legal research.  Defendants contend that ordering the transcripts for thirteen discovery conferences and requesting reimbursement for fees associated with the Rule 30(b)(6) witnesses were unreasonable.

In Judge Cave's R&R, she recommended, and the Court adopted her recommendation, that Plaintiffs be awarded their reasonable expenses in addition to attorneys' fees caused by "Defendants' failure to timely produce the legend and the Demographic Data."  Dkt. No. 373 at 29.  The numerous discovery conferences and motions that Plaintiffs had to file were a result of Defendants' repeated inability to produce the proper data and legend.  In order to competently draft the various motions and letters to the Court and opposing counsel and to determine whether Defendants had complied with the orders, it was reasonable for Plaintiffs' counsel to order the transcripts of the discovery conferences and the depositions.

---

[5] The 20% reduction in hours billed is to be taken from the total hours billed for each attorney after certain hours for work not solely related to the production of demographic data are reduced by 75%, as Plaintiffs have already included in their calculations.  *See* Kurland Decl.

## CONCLUSION

For the foregoing reasons, the motion for attorneys' fees is GRANTED IN PART and DENIED IN PART. It awards attorneys' fees and costs as follows:

| Attorney | Adjusted Hourly Rate | Adjusted Hours | | Total Lodestar |
|---|---|---|---|---|
| Ms. Kurland | $650 | Reduced[6] | 2.13 | $56,894.50 |
| | | Other hours | 85.4 | |
| | | **Total:** | 87.53 | |
| Ms. Healey-Kagan | $425 | Reduced | 2.44 | $38,148.00 |
| | | Other hours | 87.32 | |
| | | **Total:** | 89.76 | |
| | | | **Total Attorneys' Fees** | $95,042.50 |
| | | | **Total Costs** | $10,807.39 |

The Court ORDERS that judgment be entered against Defendants in that amount. The Clerk of Court is respectfully directed to close Dkt. No. 426.

SO ORDERED.

Dated: March 21, 2022
      New York, New York

                                             LEWIS J. LIMAN
                                           United States District Judge

---

[6] "Reduced" hours reflect the hours billed for work not solely related to the production of demographic data which was reduced by Plaintiffs by 75% and then further reduced by this Court by 20%.

19