**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
LOCAL 3621, EMS OFFICERS
UNION, DC-37, AFSCME,
AFL-CIO, *et al.*,

                                        Plaintiffs,                          **ORDER**

                    -against-
                                                                        **18-cv-4476 (LJL) (JW)**

THE CITY OF NEW YORK, *et al.*,
                                        Defendants.
------------------------------------------------------------------X
**JENNIFER E. WILLIS, United States Magistrate Judge:**

        In late September, the Parties filed dueling letters detailing their positions on

several discovery disputes. Dkt. Nos. 485, 486. In November, the Plaintiffs sought a

Local Rule 37.2 conference to discuss "Defendants' refusal….to produce demographic

data." Dkt. No. 490 *citing* Dkt. No. 465. Defendants countered that they have

"produced the dataset that Plaintiffs demanded." Dkt. No. 493. Then in December,

the Plaintiffs filed a letter advising of an additional dispute, "that Defendants refuse

to produce a witness…with knowledge…of the promotional process." Dkt. No. 500.

        On December 13, 2023, the Court held a Local Rule 37.2 discovery conference

to resolve the disputes. The issues are discussed point by point below.

        Plaintiffs' request is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiffs, a union (Local 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO ("Local 3621")) and two employees of the New York City Fire Department ("FDNY"), brought a putative class action against the City of New York (the "City"), the FDNY, the Department of Citywide Administrative Services ("DCAS"), and several John and Jane Does (collectively, "Defendants"), alleging that in the FDNY's Emergency Medical Services Bureau ("EMS"), those who "seek promotions above the rank of lieutenant are subject to disparate treatment and disparate impact based on impermissible considerations." See Complaint, Dkt. No. 1. Plaintiffs assert claims under 42 U.S.C. §§ 1981 and 1983, and the New York State and New York City Human Rights Laws. Id. ¶¶ 1, 4, 26, and 78.

As detailed in Judge Cave's March 2021 Report and Recommendation, the Parties have been embroiled in numerous discovery conflicts: there have been at least "five motions to compel by Plaintiffs, three previous sanctions motions (two by Plaintiffs, one by Defendants), 24 conferences, and more than 20 orders." See Dkt. No. 373 at 2 recounting disputes citing Local 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York, No. 18 Civ. 4476 (LJL) (SLC), 2021 WL 134566 (S.D.N.Y. Jan. 14, 2021) (denying Plaintiffs' prior motion for sanction of adverse inference); Local 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York, No. 18 Civ. 4476 (LJL) (SLC), 2020 WL 7260805 (S.D.N.Y. Dec. 10, 2020) (resolving dispute over sealed document and Plaintiffs' motion for reconsideration); Local 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City

<u>of New York</u>, No. 18 Civ. 4476 (LJL) (SLC), 2020 WL 7239615 (S.D.N.Y. Dec. 9, 2020) (resolving Defendants' motion to compel and Plaintiffs' cross-motion for a protective order); <u>Local 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York</u>, No. 18 Civ. 4476 (LJL) (SLC), 2020 WL 6742754 (S.D.N.Y. Nov. 11, 2020) (resolving Plaintiffs' motion to quash Defendants' subpoena to non-party; <u>Local 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York</u>, No. 18 Civ. 4476 (LJL) (SLC), 2020 WL 3271687 (S.D.N.Y. June 17, 2020) (resolving Plaintiffs' motion for reconsideration of Court's June 12, 2020 discovery order); <u>Local 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York</u>, No. 18 Civ. 4476 (LJL) (SLC), 2020 WL 3120382 (S.D.N.Y. June 12, 2020) (resolving Plaintiffs' motion to compel with respect to Defendants' Fed. R. Civ. P. 30(b)(6) affidavit).

In March 2022, Judge Liman adopted Magistrate Judge Cave's Report recommending that Defendants be sanctioned and directed to pay attorneys' fees totaling $148,971.73 and expenses and costs of $10,807.38 due to "Defendants' failure to produce outstanding demographic data along with the legend in the course of class certification discovery." Dkt. No. 446.

In November 2022, Judge Liman denied Plaintiffs' Motion for Class Certification. Dkt. No. 453 at 32 ("the Court holds that Plaintiffs have not offered significant proof of a pattern or practice of unlawful discrimination. Plaintiffs therefore have not met Rule 23(a)'s commonality requirement, and their proposed classes cannot be certified.").

The case has been referred to this Court for general pretrial. Dkt. No. 460.

**Discovery Disputes Before This Court**

In the Spring of 2023, the Plaintiffs requested a discovery conference. The Court held the conference on May 30th. This Court ruled that despite the denial of the Motion for Class Certification, "Defendants must produce 'information regarding applicants, postings, demographic data, and other relevant information regarding the SEMSS positions... requested in Plaintiffs' Document Requests #2, #3, #9, #11, and #12.' See Dkt. No. 459. However, Defendants need only produce information going back to 2004." Dkt. No. 465.

In September 2023, the Parties each filed letters detailing their positions on additional discovery disputes. Dkt. Nos. 485, 486. The Plaintiffs requested that **1)** the Defendants provide the six noticed witnesses identified by the Plaintiffs, including the employee "responsible for the negotiation, drafting, execution, and/or implementation of the Stipulation and Agreement dated October 30, 2014 between the Fire Department of the City of New York and Plaintiff Renae Mascol," **2)** produce a 30(b)(6) witness with knowledge of twelve topics identified by Plaintiffs, **3)** make expert Dr. Christopher Erath available for deposition, and **4)** deliver discovery pursuant to requested ESI protocols. Dkt. No. 486.

Defendants objected to Plaintiffs' requests, asserting that **1)** Defendants have produced or attempted to contact all noticed witnesses, **2)** Plaintiffs' 30(b)(6) notice is "vague, ambiguous, and not reasonably particularized," **3)** the deposition of Dr. Erath "is premature," and **4)** that Defendants should not be required to reproduce documents in Plaintiffs' preferred format. Dkt. No. 477, 485. Defendants further seek

**5)** an Order compelling the deposition of Plaintiffs Mascol, Rodriguez, and Variale. Dkt. No. 485.

On November 29th, the Plaintiffs sought a Local Rule 37.2 conference regarding their "intent to seek relief pursuant to FRCP 37 given Defendants' refusal to… produce the demographic data…Your Honor ordered must be produced." Dkt. No. 490 *citing* Dkt. No. 465. The Plaintiffs claimed that "the data produced in response to Document Request Number 3 does not provide the required information…[it] is also produced with column headings that neither Plaintiffs' counsel nor Defendants' counsel could understand. The data also contains information on titles such as police, firefighters, and sanitation that indicate the data set is incorrect. Most concerning is that Defendants have omitted the rank of these employees." Dkt. No. 490.

On December 4th, Defendants countered that they have "produced the dataset that Plaintiffs demanded…Plaintiffs demanded that Defendants 'submit a service request to NYCAPS…Defendants counsel submitted a data request to DCAS which maintains the NYCAPS database…DCAS informed Defendants' counsel that NYCAPS does not maintain data regarding EMS ranks…" Dkt. No. 493.

On December 11th, the Plaintiffs filed a letter advising of a new dispute, that Defendants refused to produce a witness "with knowledge…regarding recent changes to the promotional processes that are at issue in this action." Dkt. No. 500. That same day, Defendants submitted a letter arguing that "any proposed change to the …promotional process….[is a] subsequent remedial measure …this is impermissible under Federal Rule of Evidence 407." Dkt. No. 501.

Each issue will be addressed in turn.

## DISCUSSION

### 1) Noticed Witnesses

The Plaintiffs noticed for deposition Robert Wallace, Don Nguyen, Robert Colon, Belinda Delgado, James Booth, and expert Dr. Christopher Erath (to be addressed in Section 3).

In their most recent filings, the Defendants updated the Court that "Robert Wallace has been deposed. Don Nguyen was scheduled for a deposition but Plaintiffs adjourned it. Belinda Delgado and James Booth have agreed to appear for depositions, but [as of the date of the letter] have not been scheduled. Defendants provided dates for Robert Colon's deposition, but Plaintiffs never responded." Dkt. No. 485.

Beginning with Mr. Wallace, at the May 30, 2023 conference, the Court and the Parties engaged in a colloquy regarding Plaintiffs' request that Defendants identify the employee responsible for the negotiation and execution of the Agreement between the Fire Department and Plaintiff Renae Mascol. At that conference, Counsel for the City explained her "understanding is that the individuals who are responsible for the documents, the settlement, the charges and specifications, et cetera, are listed at the bottom of the document." See Transcript, Dkt. No. 466 at 58-59.

Plaintiffs detailed that in an August deposition, Mr. Wallace testified that he "didn't investigate, draft, or issue" any disciplinary charges, and was only responsible for executing the document. Dkt. No. 486-3 at 7.

Between the two litigants, the City has the greater capacity to determine which of its supervisors was responsible for making substantive decisions related to disciplinary charges. If, as he has testified, it was not Mr. Wallace that was "responsible for the negotiation, drafting, execution, and/or implementation of the Stipulation and Agreement dated October 30, 2014 between the Fire Department of the City of New York and Plaintiff Renae Mascol," the City must identify which employee was responsible for the "negotiation, drafting, execution, and/or implementation" of the October 2014 Agreement. The City has **until January 15th** to identify the employee in question. If the individual is no longer employed by the City, the Defendants have until the same deadline to provide the last-known contact information for the witness. If the individual remains employed by the City, they must be produced for a deposition.

Next, at the conference on December 13, 2023, the Parties informed the Court that there remained a dispute as to the scope of the subject matters to be covered in the proposed depositions. The Parties requested leave to submit additional briefing on this question.

Therefore, by **January 15th**, the Parties are directed to submit no more than **eight pages** (double-spaced) on the justification for and proposed scope of any deposition of Don Nguyen, Robert Colon, Belinda Delgado, James Booth, and the

7

individuals Defendants seek to depose: Plaintiffs Mascol, Rodriguez, and Variale. **No responses, replies, or sur-replies will be permitted**.

### 2) 30(b)(6) Topics

Defendants assert that Plaintiffs' 30(b)(6) notice is "vague, ambiguous, and not reasonably particularized." Dkt. No. 477, 485. "Without greater specificity," Defendants claim they "cannot appropriately identify witnesses responsive to Plaintiffs' 30(b)(6) notice."

It is "well settled that a witness appearing pursuant to a Rule 30(b)(6) notice has a unique status and testifies as the entity, not as an individual." Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc., No. 01-CV-3016(AGS)(HB), 2002 WL 1835439, at *2 (S.D.N.Y. Aug. 8, 2002). A 30(b)(6) witness testifies to the "corporation's position on the matters set forth in the deposition, not his personal opinion." See 8A Charles A. Wright, Arthur R. Miller, Richard L. Marcus, *Federal Practice & Procedure* § 2103 (3d ed.). Thus, a deposition pursuant to Rule 30(b)(6) is "substantially different from a witness's deposition as an individual." Id. A 30(b)(6) witness "testifies as a representative of the entity, his answers bind the entity, and he is responsible for providing all the relevant information known or reasonably available to the entity." Sabre v. First Dominion Capital, LLC, 01 Civ. 2145(BSJ)(HBP), 2001 WL 1590544 at *1 (S.D.N.Y. Dec. 12, 2001). "Unlike all other depositions, there is an implicit obligation to prepare the witness." See *Federal Practice & Procedure* § 2103, *supra*. The deponent "need not have personal knowledge concerning the matters set out in the deposition notice," but when a deponent lacks

such knowledge, "the corporation is obligated to prepare them so that they may give knowledgeable answers." Starr Indem. & Liab. Co. v. Water Quality Ins. Syndicate, 320 F. Supp. 3d 549, 563 (S.D.N.Y. 2018)(Engelmayer, J.). For this reason, "notices of 30(b)(6) depositions must describe the topics on which testimony is sought with reasonable particularity." Winfield v. City of New York, No. 15 Civ. 5236 (LTS) (KHP), 2018 WL 840085, at *4 (S.D.N.Y. Feb. 12, 2018).

Courts have "considerable discretion in assessing whether topics have been noticed with *reasonable particularity*." Seliger v. Breitbart News Network, LLC, No. 20 CIV. 2860 (ER), 2021 WL 707063, at *1 (S.D.N.Y. Feb. 22, 2021). The factors courts consider include, "(1) the nature of the topics; (2) whether the descriptions of the topics include examples of questions and clarifying information such as references to specific named policies, documents, incidents, and the like; and (3) whether a reasonable person reading the notice would understand how to prepare for the deposition." Id.

Here, the deposition notice references paragraphs in the Complaint. Plaintiffs point to Twentieth Century Fox, *supra*, and Wiwa for the proposition that "Courts have made clear" that a request for a witness to testify to the extent it has knowledge regarding specific allegations in the Complaint "is not overly broad." Dkt. No. 486 at 2 *citing* Wiwa v. Royal Dutch Petroleum Co., No. 01-CV-1909(KMW)(HBP), 2006 WL 2637836 (S.D.N.Y. Sept. 12, 2006). But both of those cases involved corporations that were plaintiffs. It makes sense that a corporate plaintiff would be able to appoint a 30(b)(6) representative who could detail the corporation's position on allegations in a

lawsuit the corporation initiated. The same is not true for a corporate defendant. Corporate plaintiffs have detailed knowledge of their allegations and corporate defendants have information on their own corporate processes. Here, Defendants cannot be expected to have knowledge of Plaintiffs' allegations in a symmetrical way. Therefore, the cases the Plaintiffs cited are not on point.

Plaintiffs' 30(b)(6) request is granted in part and denied in part, but without prejudice to submit a new request. The Court has detailed below which aspects of the request lack the requisite particularity as written. Plaintiffs must resubmit these requests by **January 15th**.

The 30(b)(6) notice seeks a representative of the Defendants with knowledge regarding twelve partially overlapping topics.

- **30(b)(6) Topic 1**

The first is, "[t]he subject matter described in Paragraphs 22-25 of Plaintiffs' Complaint." Dkt. No. 486-1. Paragraphs 22 and 23 are general statements of the civil service system:

> 22. The City of New York utilizes and prioritizes a Civil Service System for the hiring and promotion of its civil servants, as it is required. This System and the processes it employs are "in place to help ensure that the hiring process is competitive and fair."

> 23. Indeed, the City's civil service structure is derived from the New York Constitution's mandate that employment decisions for civil servants are to be based on the merit and fitness of candidates. The bedrock of this system is the Civil Service Examination which is used to measure "a potential candidate's merit and fitness for a particular title." As applied to promotional decisions, the New York

Constitution requires that they too be made ". . . according to merit and fitness to be ascertained, as far as practicable, by examination ... " <u>Matter of Shafer v. Regan</u>, 171 A.D.2d 311, 313, 576 N.Y.S.2d 381 (1991), aff'd, 80 N.Y.2d 1006, 592 N.YS.2d 656, 607 N.E.2d 803 (1992)." <u>See</u> Dkt. No. 1 at 7-8.

Paragraphs 24 and 25 are conclusory statements of Plaintiffs' position in the case:

24. While Plaintiff believes that civil service examinations are practicable for EMS officer promotions above the rank of Lieutenant as a matter of state law, and therefore required, this is not at issue before the Court in this action. Rather Defendants' affirmative decision to abandon objective promotional criteria, even those constitutionally mandated such as New York's civil service requirements and specifically civil service examinations, in favor of subjective promotional processes left to the discretion of mostly white and male decisionmakers, is further evidence of Defendants' discriminatory actions.

25. Any applicant for an EMS officer promotion above the rank of Lieutenant is ostensibly evaluated on, among other things, their ability to satisfy the Tasks and Standards of each officer position. Exhibit D Tasks and Standards. Upon information and belief, many of these tasks and standards are objectively testable; Defendants' decision to instead test these qualifications through subjective methods is knowingly designed to lack transparency and allow for the promotion of lesser qualified white and male applicants in violation of Plaintiffs' and class member's statutory rights.

If Plaintiffs sought to depose a representative from the City that could answer questions related to the City's Civil Service process or even a representative to answer questions about changes in Civil Service policy, that would likely be sufficiently reasonably particular. But no representative of the City could possibly prepare to

11

answer questions on the generalizations here. Topic 1 of the 30(b)(6) notice therefore lacks the requisite particularity.

- **30(b)(6) Topic 2**

Topic 2 seeks testimony on "the subject matter described in Paragraphs 27 and 29-31 of Plaintiffs' Complaint." Dkt. No. 486-1.

Paragraphs 27, 29-31 also contain conclusions that restate Plaintiffs' position:

> 27. Most, if not all, emergency workforces regularly utilize these Civil Service Exams for most of their promotions. Most notably, the Fire-side of the FDNY maintains their entire officer promotional structure through Civil Service Exams for each of its five (5) officer promotional opportunities. Despite the stated promise of Fire-side and EMS as "one Department," FDNY applies an entirely different promotional process in the EMS, where a Civil Service Exam is utilized for only one (1) promotional opportunity, from Paramedic to Lieutenant.
> …
>
> 29. Indeed, the Fire-side of the FDNY uses Civil Service Exams for three (3) additional promotions beyond the rank of Captain.
>
> 30. Despite the FDNY's use and maintenance of a Civil Service Exam promotional structure before the merger, and the Fire-side's continued use of this promotional policy, Defendants drastically departed from these policies as applied to the EMS Bureau.
>
> 31. Currently, once a member of the EMS reaches the rank of Lieutenant, the remainder of their promotions will be determined based on a discretionary application and interview process. Conversely, on the Fire-side, Civil Service Exams are utilized for the promotions to (1) Lieutenant, (2) Captain, (3) Battalion Chief, (4) Deputy Chief, and (5) Fire Marshall. This promotional structure is the same for most, if not all, of the promotions in the emergency workforces in the City, except in the EMS.

While some lines in the request indeed do contain Plaintiffs' positions, unlike the request in Topic 1, the request here does identify the specific policies and policy changes the City's representative would need to be prepared to explain. A "reasonable person reading the notice would understand how to prepare for the deposition." See Seliger, *supra* at *1 (S.D.N.Y. Feb. 22, 2021). Therefore, the City shall produce a 30(b)(6) representative that can answer questions on the policies identified in paragraphs 27, 29-31.

- **30(b)(6) Topic 3**

Topic 3 is the "subject matter described in Paragraphs 41 and 49 of Plaintiffs' Complaint." Dkt. No. 486-1. Paragraphs 41 and 49 are clearly conclusory statements and arguments advanced by Plaintiffs. No representative of the City could be expected to know how to prepare to explain how "Defendants have failed to remedy and/or take the necessary steps to avoid this subjectivity and implicit bias despite knowing about it," or that "nothing or not enough has been done to respond to and/or correct these problems and they have been allowed to continue." See Dkt. No. 1 at 12-14. Topic 3 thus lacks the requisite "reasonable particularity" of Rule 30(b)(6).

- **30(b)(6) Topic 4**

Topic 4 seeks testimony on the "subject matter described in Paragraphs 44-46 of Plaintiffs' Complaint, including Defendants' policies and practices regarding leaves of absence including FMLA, LODI, military service, pregnancy, child care and/or caregiver time, and the implications and/or impact of such leave on performance

13

evaluations and/or promotions." Paragraphs 44-46 similarly reiterate Plaintiffs' allegations, such as, "applicants who were required to take leave pursuant to FMLA for issues related to their service on and around September 11, 2001 have been penalized and denied a promotion for which they were qualified because of their leave." As phrased, this request lacks the requisite specificity and particularity. No representative could prepare to answer such questions. While it would likely be sufficiently particular to seek the City's policy positions on "FMLA, LODI, military service, pregnancy, child care and/or caregiver time, and the implications and/or impact of such leave on performance evaluations and/or promotions," in the EMS hiring and promotional process, as currently written, Topic 4 is unduly broad.

- **30(b)(6) Topic 5**

Topic 5 seeks to depose a representative on the "subject matter described in Paragraph 47 of Plaintiffs' Complaint."

Paragraph 47 says, "Plaintiffs have found that there continue to be problems associated with the announcement of promotional opportunities, which are supposed to reach all eligible employees, but rarely do. This has allowed for further subjectivity in the promotional process when the applicant pool is already hand-picked by their superiors." Dkt. No. 1 at 14. This is plainly too subjective and vague for a representative to adequately prepare for. Topic 5 is thus similarly not sufficiently particular.

- **30(b)(6) Topic 6**

Topic 6 seeks testimony on the "subject matter described in Paragraph 48 of Plaintiffs' Complaint." Dkt. No. 486-1. Topic 48 alleges, "Plaintiffs have observed discrepancies in the annual evaluation process, in which members of the EMS are either not receiving their evaluations at all or their evaluations are being affected by impermissible and discriminatory considerations or biases. Because these evaluations weigh heavily in the EMS's discretionary promotional process, these discrepancies in evaluations have resulted in further discriminatory results in promotions." This too seeks testimony merely on opinions and Plaintiffs' allegations, not the City's policies and official positions. Topic 6 thus lacks the particularity required of 30(b)(6).

- **30(b)(6) Topic 7**

Topic 7 requests testimony on "the subject matter described in Paragraph 50 of Plaintiffs' Complaint." That paragraph claims, "[t]he City is aware of these concerns and has even litigated these issues multiple times before, including but not limited to the cases of Good, *et al.* v. City of New York, *et al.*, Case No. 05-CV-06006 (JSR), in the U.S. District Court of the Southern District of New York and Monroe, *et al.* v. City of the New York, Case No. 113822/2006, in the Supreme Court of the State of New York, New York County." The Plaintiffs' reference to "these issues" is unduly vague, and to the extent the Plaintiffs desire a representative to answer questions on the existence of the Good and Monroe lawsuits, the complaints in those settled lawsuits speak for themselves. No 30(b)(6) witness is required to testify on Topic 7.

- **30(b)(6) Topic 8**

15

Topic 8 seeks a 30(b)(6) witness to discuss the "subject matter described in Paragraph 64 of Plaintiffs' Complaint." That paragraph states, "Lt. Rodriguez has suffered several injuries in the line of duty that have forced him to take Line of Duty Injury ("LODI") medical leave." The City can fairly easily select a representative who can prepare to explain its positions regarding any line-of-duty injuries suffered by Lt. Rodriguez. The 30(b)(6) witness must give testimony on Topic 8.

- **30(b)(6) Topic 9**

Topic 9 is "Defendants' positions regarding Civil Service Law §59-b and implementation of same." It is not sufficiently particular to seek the City's general position on a provision of NY State law. Undoubtedly, the City's position is that Civil Service Law §59-b is a valid State law, and the City is in compliance with the law. Without further particularization, Topic 9 too is unduly broad.

- **30(b)(6) Topic 10**

Topic 10 attempts to attain testimony on the **"**Creation and implementation of the position of Supervising Emergency Medical Service Specialist Assignment Level I (Sergeant-EMT) and the information in the notice attached hereto as Exhibit 1." This is a specific position with an application period in May 2023 and a test administered this past August. The City's representative should be able to adequately prepare to state the City's official positions on the creation and implementation of this specific position. Topic 10 is thus sufficiently reasonably particular.

- **30(b)(6) Topic 11**

16

Topic 11 is "Chapter 68 of the New York Charter (Conflicts of Interest Law), Defendants' guidelines for compliance therewith, and how said law applies to members of the FDNY." Dkt. No. 486-1. Similar to Topic 9, the City cannot be expected to have a representative prepare to answer questions on New York City's conflict of interest laws generally. However, to the extent that the City has issued specific guidelines on how Chapter 68 should apply to the FDNY, such a topic would be sufficiently particularized for a 30(b)(6) deposition. The City objects that "Topic 11 is improper because it seeks to ascertain how Defendants will support their defenses involving employees' conflicts of interest." <u>See</u> Dkt. No. 485 *citing* <u>Bat LLC v. TD Bank, N.A</u>. No. 15-CV-5839 (RRM) (CLP) (E.D.N.Y. Sept. 23, 2019) at *12-13.

However, it is not improper for the Plaintiffs to have an opportunity to examine a representative of the City and seek clarification on the City's specific guidelines as to how conflict of interest policies are generally applied in the FDNY. The extent to which either Party is able to use those guidelines to advance their claims or defenses remains to be seen. Seeking clarification on issued guidelines does not amount to investigating the Defendants' litigation strategy. Therefore, the City shall produce a 30(b)(6) representative to give testimony on any guidelines the City issued on how conflict of interest policies are to be applied to the FDNY.

- **30(b)(6) Topic 12**

Topic 12 is the "FDNY's Absence Control and Tardiness Policies." Dkt. No. 486-1. The City can certainly produce a representative who can prepare to answer questions on the City's official positions on absence and tardiness policies in the

17

FDNY. The City has already proposed a construction it feels is "particularized enough for a deposition." Nevertheless, as written, Topic 12 is already sufficiently particularized under Rule 30(b)(6).

### 3) Deposition of Dr. Christopher Erath

Plaintiffs seek to depose Defendants' expert Dr. Christopher Erath. Dkt. No. 486 at 2. Defendants object, asserting that "Dr. Erath…produced a rebuttal report used by the Defendants to oppose class certification. Plaintiffs failed to depose Dr. Erath during class certification discovery, and now seek a premature second bite at the apple." Indeed, Plaintiffs will have the opportunity to depose Dr. Erath during expert discovery…" Dkt. No. 485 at 2.

Defendants may be correct that *if* "Defendants use Dr. Erath to produce a rebuttal report in the merits portion of the case, producing him a second time during expert discovery will be needlessly duplicative." Dkt. No. 485 at 2. But there is no guarantee that Defendants will use Dr. Erath for a second rebuttal report. Moreover, there is no guarantee that the discovery to be sought from the Plaintiffs will be needlessly duplicative. Whether it would be duplicative is a question that can only be evaluated at a future date. While Plaintiffs may have had an opportunity to depose Dr. Erath during class certification discovery, they nevertheless retain the right to depose any expert who has produced a report. Under Rule 26(b)(4)(A), "the discovering party is afforded the opportunity, as a matter of right, to depose the other side's expert." Lava Trading, Inc. v. Hartford Fire Ins. Co., No. 03 CIV. 7037 (PKC), 2005 WL 4684238 (S.D.N.Y. Apr. 11, 2005) at 7.

However, Defendants' objection that a deposition of Dr. Erath now will not prevent a second deposition during expert discovery is reasonable. Yet Plaintiffs' response that a deposition of Dr. Erath now will permit them to more efficiently plan the next steps in the discovery process is also reasonable.

To balance the two concerns, the Court directs Dr. Erath to sit for a deposition, but regardless of whether a second deposition occurs, Plaintiffs will be limited to seven total hours of deposition time with Dr. Erath. See Fed. R. Civ. P. 30(d). If Plaintiffs use three hours in their first deposition of Dr. Erath, the second deposition will be limited to four hours. If Plaintiffs use all seven hours in the first deposition, they must seek leave from the Court to depose Dr. Erath a second time during expert discovery. As the Court expects that newly discovered information during merits and expert discovery will necessitate a second deposition of Dr. Erath, should the Plaintiffs seek an extension of the seven hours, the Plaintiffs must be prepared to demonstrate good cause beyond merely the evidence expected to be uncovered during the next stages of discovery. Absent dilatory tactics by the Defendants' counsel or Dr. Erath, an extension of deposition time is unlikely to be granted. The Plaintiffs are strongly encouraged to use their limited time with Dr. Erath wisely.

## 4) ESI Protocols

Plaintiffs' letter motion originally moved to compel the Defendants to "produce documents in the format requested by the Plaintiff." Dkt. No. 486 at 4. At the conference, the Plaintiffs informed the Court that they had since decided to pay to

have the documents converted into their preferred format. Therefore, the issue is now moot.

Nevertheless, the Court finds that the benefits of an agreed-upon ESI protocol are obvious. The Parties are directed to confer on an ESI Protocol for producing the documents.  In the event the Parties cannot agree on an ESI Protocol, the Parties shall each propose an ESI protocol to the Court, and the Court will select between the two protocols, considering (among other factors) the costs and useability of proposed protocols. The Court will not pick and choose aspects of the proposals to adopt – the Court will adopt either Plaintiffs' entire proposal or Defendants' entire proposal. The Parties have **until January 15th** to submit a joint letter to the Court detailing their agreement to an ESI protocol or their respective ESI proposals.

## 6) Demographic Information

On November 29th, the Plaintiffs sought a Local Rule 37.2 conference regarding their "intent to seek relief pursuant to FRCP 37 given Defendants' refusal to comply with Your Honor's Order dated May 31, 2023." Dkt. No. 490 *citing* Dkt. No. 465. The Plaintiffs claimed that "the data produced in response to Document Request Number 3 does not provide the required information…[it] is also produced with column headings that neither Plaintiffs' counsel nor Defendants' counsel could understand. The data also contains information on titles such as police, firefighters, and sanitation that indicate the data set is incorrect. Most concerning is that Defendants have omitted the rank of these employees." Dkt. No. 490.

On December 4th, Defendants countered that they have "produced the dataset that Plaintiffs demanded…" Dkt. No 493.

This fight over the demographic data has lasted years.

Over three years ago, in December 2020, Judge Cave credited Defendants' argument "[t]hat the Demographic Data is not organized in precisely the format that Plaintiffs would desire is not a basis for imposing an additional burden on Defendants or an additional delay in this case." No. 267 at 5. Hoping to avoid additional delays, Judge Cave ordered Defendants to "make inquiries about the Data Questions, meet-and-confer with Plaintiffs to provide answers…and provide a Rule 30(b)(6) witness who must be prepared to testify with knowledge on behalf of Defendants about the Data Questions during a deposition." No. 267 at 6; Dkt. No. 373 at 13-14.

Nevertheless, months later, in March 2021, Plaintiffs claimed, "Demographic Data was 'still missing,' Defendants had not produced a complete legend ahead of the deposition, and the witness was unable to testify as to the codes and abbreviations in the Demographic Data…" Dkt. No. 373 at 20-21.

In March 2021, Judge Cave ordered Defendants, "to produce a complete legend for the Demographic Data codes, as previously required by the Mar. 5, 2021 and Mar. 16, 2021 Orders, and warned Defendants that failure to comply may result in sanctions." Dkt. No. 372.

At the end of March 2021, Judge Cave concluded, "[a]t this point, however, the Demographic Data appears to have come from at least six different data sources…none of which the Court, and apparently Plaintiffs, can yet be sure is

complete and correct…Whether due to resource constraints or lack of attention to the issue of Demographic Data…this subject has certainly consumed an inordinate amount of both the Parties' and the Court's time…" Dkt. No. 373 at 25.

Judge Cave noted that "Defendants fail[ed] to explain why they could not have produced the FISA/OPA data in the first instance, or at least some point earlier in 2020," and thus concluded that "Defendants failed to take reasonable steps to comply with their discovery obligations." Dkt. No. 373 at 26-27.

Therefore, Judge Cave, in a Report and Recommendation adopted by Judge Liman, sanctioned the Defendants for the "failure to produce outstanding demographic data along with the legend in the course of class certification discovery." Dkt. No. 446; Dkt. No. 373.

Here we are almost three years later, and Defendants still have not produced a reasonably useable form of the demographic data.

In May 2023, this Court issued a Discovery Order directing the Defendants to produce "information regarding applicants, postings, demographic data, and other relevant information regarding the SEMSS positions… requested in Plaintiffs' Document Requests #2, #3, #9, #11, and #12." The Order specifically referenced Plaintiffs' request in "Dkt. No. 459." The Order further clarified that "Defendants need only produce information going back to 2004." See Dkt. No. 465.

In the request referenced by the Order, Plaintiffs sought the following:

> 2. For each job posting or requisition: (1) relating to an EMS position at the rank of Lieutenant, Captain, Deputy Chief, or Division Commander and; (2) where one or more

applicants were offered a promotion to any such position in any year from 1996 to present, please produce a complete list of the name, race and gender of 1) all employees who submitted an application for such job posting or requisition regardless of whether such applicant ultimately completed any further steps in such Promotional Process along with the dates they submitted those applications for each time they applied, 2) all employees who were disqualified from completing the application process at any point in the process either before or after interviewing, and the reason for such disqualification for each time they were disqualified, 3) all employees who were promoted with the date of promotion and title promoted to for each time they were promoted.

3. Please submit a service request to NYCAPS, through the procedure testified to by Defendants' FRCP 30(b)(6) Witness Aurora Perez (ECF No. 245-2), to produce Annual Snapshots for each year from 1996 to 2023 of all EMS employees active at any time each year, which includes: a. employee name; b. Employee ID#; c. gender; d. race; e. date(s) of hire, f. termination & rehire (if applicable); g. rank; h. title; i. all changes in rank or title that year (with effective dates); j. salary at start date; k. total salary (base, special, overtime, and total) that year; l. base salary before and after each change in rank or title (if applicable); and m. start date(s) and end date(s) of any leave that year (e.g. FMLA, etc.) and reason(s) for such leave.

See Dkt. No. 459-1.

Defendants claim that they have complied with the request because "Plaintiffs demanded that Defendants 'submit a service request to NYCAPS…Defendants counsel submitted a data request to DCAS which maintains the NYCAPS database…DCAS informed Defendants' counsel that NYCAPS does not maintain data regarding EMS ranks…" Dkt. No 493.

Plaintiffs counter that at the 30(b)(6) deposition of Aurora Perez, Ms. Perez indicated that the information sought could be obtained via a "service request to a specific unit called NYCAPS central." See Dkt. No. 494. The transcript of the deposition does demonstrate that Ms. Perez indicated a service request to NYCAPS would be the proper route to obtain the requested information. See Dkt. No. 245-2 ("If we request for anything to be done in NYCAPS, usually it's done through what's called a service request… I mean, NYCAPS has everything for an employee. I don't -- the only thing that I know would not be there is time and leave."). Thus, the specific phrasing of that request was the result of the depositions directed by Judge Cave that were intended to shed light on how the Plaintiffs could obtain the demographic data they needed.

By now, Defendants have been ordered by Judge Cave, Judge Liman, and this Court to produce "demographic data along with the legend in the course of class certification discovery," (Dkt. No. 446) and "information regarding applicants, postings, demographic data, and other relevant information regarding the SEMSS positions." Dkt. No. 465. Judge Cave even specifically defined the term "demographic data."[1] Dkt. No. 373 at 4.

---

[1] Judge Cave defined "demographic data" to mean: "Employee name; ID#; gender; race; salary; dates of hire, rehire, termination (if applicable); rank or title when first observed; all changes in rank or title with date of change; annual performance evaluation rating for each year; date acquired EMT-B or EMT-Paramedic certification." Dkt. No. 373 at 3-4.

At this point in the litigation, after years of acrimony, dozens of conferences, and hundreds of thousands of dollars in sanctions, enough is enough. The demographic data must be turned over for this case to move forward.

Defendants claim "NYCAPS does not maintain data regarding EMS ranks" or that "it is not DCAS's practice to maintain information regarding internal agency titles." Dkt. No. 493.

However, the City is under an obligation to produce responsive documents and information possessed by entities under its control. The City cannot shrug off discovery requests claiming that the requested information is not at this or that specific department, not at NYCAPS, not at DCAS, not at FDNY – simply put, if the demographic data exists and is within the City's "possession, custody, or control" it must be produced. See Fed. R. Civ. P. 34(a)(1).

A party is deemed to have "control over material that it has the practical ability to obtain" or "that it has a legal right to obtain." See In re Liverpool Ltd. Partnership, No. 21-MC-392 (AJN), 2021 WL 5605044 (S.D.N.Y. Nov. 24, 2021) *citing* Sec. & Exch. Comm'n v. Strauss, No. 09 Civ. 4150 (RMB) (HBP), 2009 WL 3459204, at *7 (S.D.N.Y. Oct. 28, 2009) and Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 138 (2d Cir. 2007) (holding that "control" connotes "access and the practical ability" to obtain requested documents). Courts have found control "by a parent corporation over documents held by its subsidiary…" See S.E.C. v. Credit Bancorp, Ltd., 194 F.R.D. 469, 472 (S.D.N.Y. 2000)(Sweet, J.) *citing* Cooper Indus. v. British Aerospace Inc., 102 F.R.D. 918, 919 (S.D.N.Y. 1984). Whether the data is at NYCAPS, DCAS, the

FDNY, or any other City department or agency, the information is within the "possession, custody, or control" of the City of New York.

On the one hand, "Rule 34 cannot be used to compel a party to create a document solely for its production." Deng v. New York State Off. of Mental Health, No. 13-CV-6801(ALC)(RLE), 2016 WL 11699675, at *3 (S.D.N.Y. Feb. 23, 2016); A & R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co., No. 3:07-CV-929 (WWE), 2014 WL 4437684, at *3 (D. Conn. Sept. 9, 2014)("A party cannot be compelled to create, or cause to be prepared, new documents solely for their production. Rule 34 only requires a party to produce documents that are already in existence." *citing* MOORE'S FEDERAL PRACTICE § 30.12[2] (3d ed. 2014).

But on the other hand, "where such information is deemed relevant for the purposes of discovery but does not appear to exist in a format readily providable to the plaintiff, requiring creation of such a document or compilation is proper." Ford v. Rensselaer Polytechnic Inst., No. 1:20-CV-470(DNH)(CFH), 2022 WL 715779, at *6 (N.D.N.Y. Mar. 10, 2022).

For example, the Court in the multidistrict Domestic Airline Travel Antitrust Litigation, held that the defendant there was "the only entity capable of deciphering [the data] with sufficient accuracy…these facts are what separate this case from the ones where courts have routinely declined ordering one party to create a document that otherwise does not exist." In re Domestic Airline Travel Antitrust Litig., No. MC 15-1404 (CKK), 2018 WL 6619855, at *5 (D.D.C. Nov. 27, 2018).

So too here. Defendant is not "being asked to create a document but, rather, to provide Plaintiffs with the rudimentary information essential for Plaintiffs to undertake work necessary to their efforts to build a case." Id.

As explained in the Advisory Committee Notes to Rule 34, an amendment made in 1970 "makes clear that Rule 34 applies to electronics data compilations from which information can be obtained only with the use of detection devices, and that when the data can as a practical matter be made usable by the discovering party only through respondent's devices, respondent may be required to use his devices to translate the data into usable form." See Humphrey v. LeBlanc, No. CV 20-233-JWD-SDJ, 2021 WL 3560842, at *3 (M.D. La. Aug. 11, 2021).

Case law "makes clear that simply searching a database and providing the results therefrom" in a report, "does not require creation of a new document beyond the scope of Rule 34." Id. *citing* Apple Inc. v. Samsung Elecs. Co. Ltd., No. 12-630, 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013) ("While this court has held that a party should not [be] required to create completely new documents, that is not the same as requiring a party to query an existing dynamic database for relevant information. Courts regularly require parties to produce reports from dynamic databases ..."); Bean v. John Wiley & Sons Inc., No. 11-8028, 2012 WL 129809, at *1 (D. Ariz. Jan. 17, 2012) (finding that with regard to production of ESI, Rule 34 "explicitly places the burden of translating the data on the responding party" and that "spreadsheets are generally a useable form"); In re eBay Seller Antitrust Litigation, No. 07-1882, 2009 WL 3613511, at *2 (N.D. Cal. Oct. 28, 2009) (finding

27

that the magistrate judge did not clearly err in compelling production of new dataset of records from database, noting "[t]he Federal Rules of Civil Procedure clearly contemplate the production of information from dynamic databases.").

Moreover, Rule 34 not only requires data to be produced in a "reasonably useable form," but the data must also be verifiably accurate. See Chen-Oster v. Goldman, Sachs & Co., 285 F.R.D. 294, 302 (S.D.N.Y. 2012) *citing* THE SEDONA CONFERENCE DATABASE PRINCIPLES: ADDRESSING THE PRESERVATION AND PRODUCTION OF DATABASES AND DATABASE INFORMATION IN CIVIL LITIGATION, March 2011 Public Comment Version, at 32 ("[a] responding party must use reasonable measures to validate ESI collected from database systems to ensure completeness and accuracy of the data acquisition.").

Having reviewed the data, the Court concludes that the information Defendant produced cannot possibly be accurate. The Court estimates that over a third of the entries leave unspecified the race of the individual listed – a key issue in this case.

After years of litigation, the City is well aware of the demographic data and rank information the Plaintiffs seek, the purpose for which it is sought, and the form the information must be in for it to be useable. Plaintiffs seek data on a small subset of City employees (those in the FDNY's Emergency Medical Services Bureau) focusing on attributes such as rank, race, and gender. This data should not be so difficult for the City of New York to provide.

The Court is aware that extracting and producing this data in a useable form imposes a cost on the City and its attorneys, but here, "the importance of this

litigation is not measured in dollars alone; the plaintiffs seek to vindicate…civil rights…and thus further an important public interest." Chen-Oster v. Goldman, Sachs & Co., 285 F.R.D. 294, 306 (S.D.N.Y. 2012).

Therefore, **by January 15th**, the City is directed to submit a letter to the Court proposing a timeline and process for providing the Plaintiffs with the "demographic data" as defined by Judge Cave as well as all the rank and other "relevant information" this Court directed Defendants to produce in the May 31, 2023 Order.

Whether the demographic information is stored at FDNY, DCAS, NYCAPS, or any other agency or vendor within the City's control, the City must produce the demographic data in a "reasonably useable form." See generally Chen-Oster, *supra* (directing the defendant to "extract the requested information" from each of its separate divisions and compile the data into a useable form).  In their letter to the Court, the Defendants shall detail how the Plaintiffs can determine the rank, race, gender, and other demographic data for each individual listed.

If the Court is dissatisfied with the instructions Defendants provide for determining the demographic and rank information for each individual listed, the Court will consider directing the Defendants to extract and compile the data into a readily useable form proposed by the Plaintiffs, or alternatively, **sanctions**. See Fed. R. Civ. P. 37.

**7) December Request for 30(b)(6) Witness to Testify on Changes in the Promotional Process**

On December 11th, the Plaintiffs submitted a letter asking this Court to compel the Defendants to "produce a witness with knowledge of the policy changes related to the SEMSS titles at issue in this litigation." Dkt. No. 500.

Defendants object to the request on the basis that "Local 3621 does not have standing in this action" and that "the testimony Plaintiffs seek is irrelevant to the remaining individual claims. Neither Mascol nor Rodriguez is eligible for promotion to Captain because both currently hold the rank of Deputy Chief." Dkt. No. 500-1.

The remaining Plaintiffs allege that the City has employed a promotional process that was discriminatory. Even though the case is no longer a putative class action, changes made to the allegedly discriminatory practice are relevant to this action. As Plaintiffs argue, depending on the outcome of the 30(b)(6) witness's deposition, perhaps the "recent changes…establish that the policy employed when Plaintiff Mascol and Rodriguez were considered for these positions was discriminatory" or at the very least that the City continues to use an allegedly discriminatory "discretionary promotional process." Dkt. No. 500.

The City argues that "any proposed change to the …promotional process….[is a] subsequent remedial measure…this is impermissible under Federal Rule of Evidence 407." Dkt. No. 501. But "Rule 407 governs admissibility and not discoverability." See Trzeciak v. Apple Computers, Inc., No. 94 CIV. 1251 (LAK), 1995 WL 20329, at *8 (S.D.N.Y. Jan. 19, 1995); see also Miner By & Through Miner v. Kendall, No. 96-1126-MLB, 1996 WL 740566, at *1 (D. Kan. Sept. 27, 1996)("Rule 407 is a rule of admissibility at trial, it is not a rule governing pretrial discovery.")

*citing* 2 WEINSTEIN'S EVIDENCE ¶ 407[07] at 407-44 (1996). Therefore, while the change in the promotional process may perhaps be inadmissible at a future trial, "such measures could nonetheless be relevant to the issues in this case, or could lead to other matter that might be relevant to this case, or might be admissible to prove a consequential material fact other than…culpable conduct." Id. at 2.

Therefore, the City shall produce a 30(b)(6) witness with knowledge of the new policy changes related to the SEMSS titles in this litigation.

## CONCLUSION

Plaintiffs' request is GRANTED in part and DENIED in part. In addition to the deadlines above, **by January 15th**, the Parties shall submit a joint letter updating the Court on their progress and proposing a timeline for completing discovery.

**The Clerk of Court is respectfully requested to close Dkt. Nos. 476, 485, 486.**

SO ORDERED.

DATED:     New York, New York
           December 20, 2023

_Jennifer E. Willis_
JENNIFER E. WILLIS
United States Magistrate Judge

31