**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
LOCAL 3621, EMS OFFICERS UNION, DC-37,
AFSCME, AFL-CIO *et al.*,
                             Plaintiffs,

-against-

THE CITY OF NEW YORK *et al.*,
                             Defendants.
------------------------------------------------------------------X

**ORDER**

**18-cv-4476 (LJL) (JW)**

**JENNIFER E. WILLIS, United States Magistrate Judge:**

The Parties filed several letters discussing various discovery disputes. Dkt. Nos. 567–570, 576, 578–580. In an August 13th letter, the Plaintiffs sought an expedited Order 1) asking for an expedited discovery deadline, 2) granting Plaintiff's request to move pursuant to Rule 37 for sanctions for any discovery failures not cured by the deadline and 3) scheduling a conference to set deadlines for expert discovery. Dkt. No. 576. Defendants 1) did not oppose a deadline for fact discovery, 2) opposed any Rule 37 sanctions, and 3) took "no position regarding an extension of time to complete expert discovery" but noted approaching deadlines. Dkt. No. 578. In sum, the Plaintiffs sought expedited resolution of the pending discovery motions, and assuming the Court rules in their favor, an Order directing all such discovery be completed in time to meet Judge Liman's October 11 deadline.

On the eve of the August 28th conference, Plaintiffs submitted a letter dealing distinct issues they deemed "most critical" for their class certification and summary judgment motions. Dkt. No. 588-4.

The Court grants in part and denies in part the Plaintiffs' request.

# I. BACKGROUND

In June 2023, this Court ruled that Plaintiffs' discovery requests were relevant and ordered Defendants to comply with Plaintiffs' request. Dkt. No. 465.

In December of 2023 and February of 2024, this Court admonished the parties for not completing discovery and warned the Defendants it would consider sanctions if the Defendants did not complete the demographic data production that had been ordered years before. Dkt. No. 505, 528 (citing Dkt. No. 372).

In March of 2023, while the Parties noted progress, the Plaintiffs identified various data deficiencies and alleged discovery failures. Dkt. No. 529. In April, the Court held a conference and then granted Plaintiff's request for meetings between the Parties' experts to resolve data discrepancies. Dkt. Nos. 540, 553.

On April 23rd, Judge Liman held a conference in which the Parties represented that discovery would be concluded within twelve weeks. Dkt. No. 557 at 38, 44, 46. Following that conference, this Court emphasized to the Parties that "Judge Liman held a conference on April 23rd in which he reiterated that this case has been pending for a long time and that the Parties should figure out ways to prioritize the discovery that is truly necessary and bring this case to a head." Dkt. No. 553 (citing 557 at 48).

In May, the Parties again noted some progress but disputed the structure of the expert meetings and the specific subjects to be covered, necessitating Court intervention again. Dkt. Nos. 555–56, 559. In June, again noting progress, the Plaintiffs sought another conference noting missing items in Defendants' production. The Court denied the request for a conference and ordered the Parties to confer to complete the production. Dkt. No 565. In that Order, the Court reminded the Parties that the previous Order stated, "while the experts are not limited to the Court's

verbatim language in that Order, they are restricted to the specific issues identified in the Order. Those issues, as indicated in the last Order, **are only: 1) leave data and 2) promotional data**." Dkt. No. 565 (citing 559 (citing Dkt. No. 553 at 11–12)(emphasis in all three Orders).

Then, in the Parties' joint status letter submitted on July 19th, the Parties noted progress but again disagreed on whether the demographic data production was complete. Dkt. No. 566. In the joint letter, Defendants promised to complete several sets of production by certain dates while Plaintiffs pointed to several requests that remained incomplete, proposed a tiered approach to completing discovery by December 2024, and identified several witnesses that still needed to be deposed. Dkt. No. 566.

On July 26th, the City sought "relief from the Court's Order dated May 31, 2023 (ECF Dkt. 465) on the grounds that compliance with the Order will place an undue burden on the FDNY's operations." Dkt. No. 567. The Defendant rightly noted that at that conference, the Court specifically gave Defendants leave to return to argue that the discovery requests would place an undue burden on the City. Dkt. No. 466 at 67–68 ("to the extent that in attempting to produce this you find that a subset is actually stored in a way where production might be truly burdensome, I certainly give you leave to raise that issue if it comes up with the Court again.").

On July 29th, Plaintiffs opposed the sought-after relief but asked for time to negotiate a resolution. Dkt. No. 568. On August 5th, the Plaintiffs again asked for more time to resolve the annual performance evaluation issue and Defendants asked that their motion be held in abeyance. The Parties were given until August 16th to

3

resolve the issue and a short deadline to brief the dispute should no settlement be reached. Dkt. No. 573.

This Court reminded the Parties of the need to move expeditiously several times. Dkt. Nos. 553 at 16; 565 at 2; 571 at 1; 573 at 1.

On August 7, 2024, Judge Liman issued an Order that "summary judgment motions and renewed motions for class certification shall be filed no later than September 20, 2024. The Parties shall work with Judge Willis to ensure that discovery is completed well within the time frame necessary for such motions to be made." Dkt. No. 574.

On August 13th, Plaintiffs asked this Court for an "expedited ruling" on pending discovery disputes. Dkt. No. 576. In the letter, the Plaintiffs identified Dkt. Nos. 476, 529, and 536 as in need of resolution.

On August 15th, Judge Liman granted the Parties' request to extend the deadline for class certification and summary judgment motions to October 11, 2024. Dkt. No. 577.

On August 16th, the Parties submitted a joint letter stating that they failed to resolve the issue of the annual performance evaluations. Dkt. No. 579. On August 21st the Parties each submitted letters detailing their positions.

On August 27th, Plaintiffs filed a letter identifying "discrete items most critical to Plaintiffs' case" along with a proposed timeline for depositions that Plaintiffs assert "could easily be achieved in the next three (3) weeks."

On August 28th, the Court held a lengthy conference.

4

## II. ITEMS PLAINTIFFS IDENTIFIED AS "MOST CRITICAL"

In a letter filed prior to the conference, the Plaintiffs identified a list of items it labeled as "most critical." Dkt. No. 588. The Court will briefly discuss each item.

### 1. Outstanding Demographic Data

#### A. Production of the remaining 4,928 annual performance ratings of EMS Officers

Initially, the Plaintiffs sought the full annual evaluations from the years 1996–2024. At the May 2023 conference, this Court said that only the evaluations from 2004-2024 had to be provided. Dkt. No. 465. On July 26th, the City sought to be relieved of the obligation to produce the full evaluations in paper form from 2004 through 2020. Dkt. No. 567.

Defendants are correct that at the May 2023 conference, the Court specifically gave Defendants leave to return to argue that producing paper evaluations would place an undue burden on the City. Dkt. No. 466 at 67–68 ("to the extent that in attempting to produce this you find that a subset is actually stored in a way where production might be truly burdensome, I certainly give you leave to raise that issue if it comes up with the Court again.").

In an affidavit filed by the City's Records Management Officer, he estimated "it would require one full-time employee 2,250 hours (approximately 321 workdays) to take the initial step of digitizing the EMS performance evaluations from years 2004–2019." Dkt. No. 567-1. Relatively, this is a significant burden. Given the high cost of production and the limited benefit, the Court finds that producing the paper evaluations from 2004–2019 would be disproportionate to the needs of the case. Fed R. Civ. P. 26(b)(1); Maher v. Johnson, 22-CV-6506(LJL), 2023 WL 4847163, at *2 (S.D.N.Y., 2023).Therefore, Defendants need not produce paper evaluations.

5

At the conference yesterday, the Parties represented that the annual evaluations from 2020 to 2022 have already been provided. The City represented that it was not aware of any electronic records for the years 2004 to 2020.

During the conference, the Plaintiffs narrowed their request for the pre-2020 requests. Rather than seeking the full evaluations, they are seeking only the evaluation *ratings*. Contrary to the City's assertion that the rating information is not preserved electronically, Plaintiffs believe that it is. Plaintiffs claimed that a City 30(b)(6) witness identified Benny Thottam as the person who would know the location of this data. As will be discussed below, the Plaintiffs will have an opportunity to depose Thottam and verify whether this is the case.

During the conference, Plaintiffs also narrowed their requests regarding the outstanding 2023 evaluations. Plaintiffs agreed that in the interest of speed, they would seek only the evaluation *ratings* from 2023. Therefore, **by September 6th**, the City shall provide the evaluation ratings from 2023, and if the Thottam deposition reveals that electronic evaluation ratings exist for the years 2004–2020, the City shall propose a timeline for providing those records as well.

**B. Cessation Dates for EMS employees**

The City represented that this production was completed the morning of the conference. Plaintiffs will review and provide a status update **by September 6th**.

**C. A list of any EMS Officers from 2004 to present who did not hold either an EMT or Paramedic certification**

The Parties discussed this issue in detail and came to the conclusion that the updated "BITs data" to be provided by next week is likely to remedy any issues with this data. The Parties shall provide a status update **by Friday, September 6th.**

6

**D. Correction for missing information in DEMODATA_000023 which contains annual snapshots for 2004 through 2023 for each employee.**

The Parties discussed this issue in detail and determined that Defendants shall provide additional snapshots, if available, for employees not employed as of December 31 of each year. The City shall complete this production **by Friday, September 6th.**

**E. Stipulation on Data & Discovery**[1]

The Parties discussed this issue as well. As discussed in previous Orders, it is the Court's hope the Parties can agree on a single data set that its experts can run regressions on and make arguments for class certification or summary judgment. Given the collaborative process of securing and compiling the data, the Court does not want the Parties to come in on the back end and assert problems with the data merely because the data does not support their argument.

While the City believes it can consent to a useable dataset, it was hesitant to do so until its experts ensured the stitched-together dataset reflects the underlying data the City provided. The City shall confer with its experts, and the Parties shall provide a status update **by Friday, September 6th.** The Parties shall also discuss whether they can agree on language regarding Defendants' claim that they have produced everything in their possession.

**F. FDNY's quarterly Civilian Workforce Analysis from 2004 to Present**

This shall be produced by September 6th.

**2. Outstanding Eligibility Data**

---

[1] Plaintiffs asked for a written statement from Defendant's custodian "that after a diligent search they have produced everything in Defendants' custody and control responsive to Plaintiffs' Requests for Production." Dkt. No. 588-4 at 5.

The Plaintiffs identified three issues with the outstanding eligibility data. The Parties believe the BITs data will remedy these issues as well. A status update is due **September 6th**.

**3. Internal memoranda prepared by Chief John Peruggia describing the EMS Promotional Processes**.

The City agreed to produce this by September 6th. The Parties shall confirm they have done so in their status update.

**4–5. All complaints formal and informal regarding Roberto Colon and James Booth from 1996 to present alleging discrimination.**

Formal and informal complaints alleging discrimination by the direct supervisors of the named Plaintiffs are clearly relevant. These must be produced by September 6th. However, the City need only produce documents going back to 2004, not 1996.

**6. Copy of Plaintiff Mascol's Grievance No. A1440-113**

The City believes this was already provided, if it has not been provided, it shall be produced by September 6th.

**7. Any documents that contain a definition or explanation of the elements for charging or finding guilty a member under EMS OGP 101-01, 4.2.46, falsify official statements, records, or reports.**

The City believes this, too, was already provided. They shall confirm in their status letter.

**8. The Workmen's Compensation Package for Luis Rodriguez Chief Lloyd brought to her deposition.**

The Parties discussed this and the City shall provide the specific workmen's compensation package Chief Lloyd brought to the deposition by September 6th.

**9. 2004 Job Analysis for the SEMSS title referred to in Robert Alexander's deposition testimony.**

8

This shall be produced by September 6th.

**10. Any documents showing job specifications not already produced for any SEMSS position, Sergeant, Lieutenant, Captain, Deputy Chief or Division Chief.**

The City agreed to produce this by next week. They shall confirm they have done so in the status update.

### III. CRITICAL WITNESSES

Plaintiffs sought the Court's leave to depose several witnesses. The Parties discussed that there were some witnesses that the City would agree to produce, but asked that the length of the deposition be limited. These include:

1. Roberto Colon – 5 hours
2. Joseph Sanders – 2 hours
3. Vanessa Brady – 4 hours
4. Robert Alexander – 2 hours
5. Michael Fields – 2 hours
6. Don Nguyen – 2 hours

The following are witnesses that Defendants objected to based on relevance and proportionality. Defendants' proportionality objection was that the total number of depositions and the extensive number of hours made deposing these additional witnesses unduly burdensome.

1. James Booth – 6 hours
2. Barbara Dannenberg – 2 hours
3. Rebecca Mason – 2 hours
4. Kamaldeep Deol – 2 hours
5. Benny Thottam – 2 hours
6. Remaining witnesses to testify on 30(b)(6) topics

The Court rules that the Plaintiffs may depose both the unobjected to and objected to witnesses. However, Plaintiffs shall have only **25 (twenty-five) total hours** to conduct all the depositions. This shall include the 30(b)(6) witnesses.

Should they spend all their time with one or two witnesses, they will have no time left for the others. Therefore, the Plaintiffs are strongly encouraged to prioritize the discovery they need. Regardless of how Plaintiff structures the depositions, in no event should the depositions be longer than the number of hours listed above.

## IV. REMAINING DISCOVERY DISPUTES

The Parties raised the following issues in their previous letters. Several of the issues have since been resolved.

### 1. FISA-OPA Pay Data

In June, Plaintiffs pointed to errors in the FISA-OPA data. Dkt. No. 564. Defendants said they would "produce corrected pay data beginning January 1, 2004, and superseding DEMODATA_000004 and DEMODATA_000005, on or before July 12, 2024." Dkt. No. 564. At the time of the July 19th status letter, this production was not yet complete. Dkt. No. 566. Defendants promised to produce this data "on or before Monday, July 22, 2024." **This should be resolved when the Parties agree on a single data set and in any event must be produced by September 6th.**

### 2. Privilege Log

The City represented that it has not asserted privilege since the last production of its privilege log. Plaintiffs argued that the log was deficient and needed to be resubmitted. The City shall provide an up-to-date privilege log by September 6th.

### 3. Expert Discovery

The Parties discussed that they would agree to submit expert reports concurrently with the class certification and summary judgment motions due on October 11th. The Parties will reserve their right to depose opposing experts after filing those motions.

If the City's expert is Dr. Erath, the total deposition time shall be limited in accordance with this Court's previous order. Dkt. No. 505 at 19.("the Court directs Dr. Erath to sit for a deposition, but regardless of whether a second deposition occurs, Plaintiffs will be limited to seven total hours of deposition time with Dr. Erath…If Plaintiffs use three hours in their first deposition of Dr. Erath, the second deposition will be limited to four hours… The Plaintiffs are strongly encouraged to use their limited time with Dr. Erath wisely.").

## V. 30(b)(6) TOPICS

Courts have "considerable discretion in assessing whether topics have been noticed with reasonable particularity." <u>Seliger v. Breitbart News Network, LLC</u>, No. 20 CIV. 2860 (ER), 2021 WL 707063, at *1 (S.D.N.Y. Feb. 22, 2021). The factors courts consider include, "(1) the nature of the topics; (2) whether the descriptions of the topics include examples of questions and clarifying information such as references to specific named policies, documents, incidents, and the like; and (3) whether a reasonable person reading the notice would understand how to prepare for the deposition." <u>Id.</u> In the interest of expediency, the Court makes the following findings regarding the Supplemental Notice of 30(b)(6) Deposition. Dkt. No. 529-6.

- *Topic 3. The creation and implementation of Defendants' process to determine which members of the Fire Bureau of the FDNY will be promoted from 2004 to present*

This topic is identical to Topic 2 but relates to the Fire Bureau of FDNY instead of the EMS Bureau of FDNY. Dkt. No. 529-6 at 3. Defendants have offered no reason why this topic is vaguer than Topic 2 and evidently were able to provide a witness to discuss Topic 2. Topic 3 is sufficiently particular.

- *Topic 4 . Steps Defendants have taken, if any, to remedy implicit bias and/or subjectivity in the complained of promotional process*

11

This proposed topic is too vague. The phrase "steps Defendants have taken" can encompass far too many actions for an individual to ever be prepared to testify on. If this topic had requested specific policies the City issued that were designed to remedy implicit bias the result may have been different, but as written, it is insufficiently particularized.

- *Topic 5 Any and all complaints EMS employees have made from 2004 to present regarding discriminatory treatment, including but not limited to complaints regarding the FDNY's promotional process and evaluation process, and including complaints filed with the FDNY Equal Employment Opportunity (EEO) Office and/or elsewhere, and what, if anything, has been done to investigate and/or remedy such complaints, including those complaints that have been substantiated*

Similarly, this proposed topic is also too vague. It would be impossible to prepare to answer on behalf of the City how every complaint from 2004 to the present was responded to.

- *Topic 9 Defendants' implementation of the terms of settlement in the matters of <u>Good, et al. v. City of New York, et al.</u>, Case No. 05-CV-06006 (JSR), in the U.S. District Court of the Southern District of New York and <u>Monroe, et al. v. City of the New York</u>, Case No. 113822/2006, in the Supreme Court of the State of New York, New York County as well any reformative or remedial steps Defendants implemented as a result of those suits*

While specific policies and actions taken in response to specific settlement agreements is sufficiently particularized, because this request includes the phrase "any reformative or remedial steps Defendants implemented as a result of those suits" it is too broad as written.

- *Topic 10 Defendants' Position on S.6935/A.9441, the Bill that was Introduced to Amend Civil Service Law §59-b*

This, too, is unduly vague. It is unclear whether the request is asking a witness to explain the City's position on the proposal, the FDNY's, or the individual Defendants' position on the bill. As written, it is insufficiently particularized.

- *Topic 11 Defendants' efforts to implement Civil Service Law §59-b as amended by S.6935/A.9441. To the extent Defendants are not in compliance with Civil Service Law §59-b, the reasons that Defendants is not in compliance with Civil Service Law §59-b and/or if Defendants believe they are in compliance, the knowledge on the implementation of Civil Service Law §59-b.*

No one could prepare to testify to "the reasons that Defendants are not in compliance with Civil Service Law §59-b." This request does not seek a knowledgeable witness to testify as to whether there are any specific policies or initiatives done to respond to Civil Service law 59-b, only the vague phrase "efforts". This is insufficient.

- *Topic 12 Defendants' position as to the reasons it either supports or opposes integration of Civil Service Law §59-b into its promotional process.*

For the same reasons that Topic 10 is vague, Topic 12 is also unduly vague. The "reasons it either supports or opposes integration of Civil Service Law §59-b" is subjective and would depend on the individual. 30(b)(6) depositions are for attaining knowledge only a corporation as a whole could have. See generally Starr Indem. & Liab. Co. v. Water Quality Ins. Syndicate, 320 F. Supp. 3d 549, 563 (S.D.N.Y. 2018)(Engelmayer, J.).

- *Topic 14 Any instances of discipline in the FDNY for violation(s) of Chapter 68 of the New York City Charter (Conflicts of Interest Law) and/or any other conflict of interest policies from 2004 to present*

13

This request seeks specific policies and instances of formal discipline for violations of the conflict of interest law. There is no reason Defendant cannot identify the individual responsible for managing such records. Topic 14 is not unduly vague.

- *Topic 15 For each promotional opportunity relating to an EMS position at the rank of Captain, Deputy Chief and/or Division Commander from 2004 to present: ▪ Date each promotional opportunity was announced and Promotional Order Number associated with each announcement; ▪ Names of all individuals who submitted an application for each promotional opportunity regardless of whether they completed the application process for promotion or not; ▪ Names of all individuals who applied for each promotional process and were found to be ineligible. ▪ Names of all individuals promoted for each promotional opportunity and the Promotional Order Number associated with the announcement for promotion if different from than application Promotional Order Number.*

This request is more appropriately submitted as a request for existing documents containing such information. If documents containing this information (whether in a dynamic database or in paper form) do not exist, there would be no way for the 30(b)(6) witness to prepare to answer this question.

## VI. CONCLUSION

The Parties shall provide another update by **September 6th**. That update shall detail the schedule for all remaining depositions. If the Parties cannot agree on such a schedule, by that same date, the Parties shall each submit a proposed schedule for completing any remaining fact and expert discovery. All discovery must be completed in time to meet Judge Liman's October 11 deadline for summary judgment and class certification motions. **No extensions are guaranteed**.

SO ORDERED.

DATED:   New York, New York
         August 29, 2024

_____
JENNIFER E. WILLIS
United States Magistrate Judge