> This request is **DENIED**. The
> Clerk of Court is respectfully requested to
> close Dkt. No. 583.
>
> *Jennifer E. Willis*
> JENNIFER E. WILLIS
> UNITED STATES MAGISTRATE JUDGE
> January 31, 2025

| | | |
|---|---|---|
| **MURIEL GOODE-TRUFANT**<br>*Acting Corporation Counsel* | T<small>HE</small> C<small>ITY OF</small> N<small>EW</small> Y<small>ORK</small><br>**LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK, NY 10007 | **Bryan Carr Olert**<br>Assistant Corporation Counsel<br>Phone: (212) 356-2203<br>E-mail: bolert@law.nyc.gov<br>*E-mail Not For Service* |



August 21, 2024

**Via ECF**
Hon. Jennifer E. Willis
United States Magistrate Judge
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

     Re: *Local 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*
       No. 18-cv-4476 (LJL) (JW)

Dear Judge Willis:

    I write seeking relief from the Court's Order dated May 31, 2023 (the "Order") (*see* ECF Dkt. 465) on the grounds that compliance with the Order will place an undue burden on the FDNY's operations and is disproportionate to the needs of this case. Specifically, Defendants seek relief from that portion of the Order directing Defendants to produce documents responsive to Request No. 9 of Plaintiffs' Supplemental Requests for Production dated March 3, 2023. Request No. 9 is as follows:

> For each EMS employee who has been active at any time from 1996 to present in the EMS positions at the rank of Lieutenant, Captain, Deputy Chief, or Division Commander, please produce copies of such employee's annual performance evaluation for each year they worked in such positions. If any such employee did not receive an annual performance evaluation for any year or years, please identify by providing their name, the year such evaluation or evaluations were not completed and the reason such evaluation was not given.

ECF Dkt. No. 459-1. The Court specified that Defendants "need only produce information going back to 2004." ECF Dkt. 465, at 1. Notably, the Court gave Defendants leave to make this motion at the May 30, 2023 conference. *See* ECF Dkt. 466 at 67:24-68:5.

    Pursuant to Paragraph II.A of Your Honor's Individual Practices and the Court's Order dated July 31, 2024, *see* ECF Dkt. 571, the parties met and conferred several times

concerning production of EMS performance evaluations, most recently on August 13, 2024. For the reasons described herein, producing additional documents responsive to Request No. 9 is unduly burdensome and disproportionate to the needs of the case.

### A. Legal Standard

Rule 26(b)(1) "require[s] that discovery be proportional to the needs of the case." *Robertson v. People Magazine*, No. 14 Civ. 6759 (PAC), 2015 U.S. Dist. LEXIS 168525, at *4-5 (S.D.N.Y. Dec. 16, 2015) (emphasis added). Rule 26 "is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of relevant information." *Morocho v. Stars Jewelry by the A Jeweler Corp.*, No. 23-CV-3836, 2024 U.S. Dist. LEXIS 21653, at *6 (S.D.N.Y. Feb. 7, 2024) (quotation omitted). The Court must, on motion or *sua sponte*, limit the frequency or extent based on the circumstances, including whether: "the discovery sought is unreasonably cumulative or duplicative … [or] the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." *Winfield v. City of New York*, No. 15-cv-05236 (LTS) (KHP), 2018 U.S. Dist. LEXIS 22996, at *13 (S.D.N.Y. Feb. 12, 2018) (quotation omitted).

Importantly, this Court has broad authority to manage discovery, including to revisit its prior discovery decisions on motion or *sua sponte*. *See Sea Trade Mar. Corp. v. Coutsodontis*, No. 9-CV-488, 2020 U.S. Dist. LEXIS 92725, at *5 (S.D.N.Y. May 27, 2020) ("It was well within [the Magistrate Judge's] authority to determine that additional discovery was unnecessary to ensure the fair and efficient resolution of [the] matter."); *Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 (KMW) (HBP), 2009 U.S. Dist. LEXIS 55185 (S.D.N.Y. June 25, 2009) ("Plaintiffs do not state on what basis they request that the Court strike Defendants' second set of interrogatories, nor do Plaintiffs actually move the Court to strike these interrogatories. However, the Court can order the requested relief notwithstanding the fact that Plaintiffs did not so move. As discussed above, pursuant to Rule 26(b)(2)(C), a court must limit discovery *sua sponte* if the court determines that the discovery meets any of the Rule 26(b)(2)(C) criteria."); *Taveras v. Semple*, No. 3:15-CV-531 (VAB), 2020 U.S. Dist. LEXIS 112910, at *20 (D. Conn. June 27, 2020) (granting relief from discovery order upon motion by the defendants).

### B. Defendants' Productions of Annual Performance Evaluations[1] and Related Data

First, Defendants have produced all evaluations submitted in support of applications for relevant promotion opportunities since 2004. It is FDNY's practice to maintain documents related to promotion opportunities for the relevant ranks in paper files ("Promotion Files") at FDNY headquarters. Pursuant to the Order and in response to Requests Nos. 2 and 11, *see* ECF Dkt. No. 459-1, Defendants have already produced all Promotion Files for promotion opportunities to the relevant ranks since 2004 that they were able to locate after a reasonable

---

[1] Defendants differentiate between annual performance evaluations, which are considered as a part of applications for promotions, and non-annual performance evaluations, which generally are not. Non-annual performance evaluations are primarily those evaluations given to probationary employees who are ineligible for promotion due to their probationary status.

search. Thus, Defendants have already produced all performance evaluations that have probative value and are relevant to Plaintiff's claims. Defendants completed this production, which includes approximately 1,000 performance evaluations, in summer 2023.

Second, Defendants have produced all electronically-stored evaluations for 2020, the year in which EMS began systematically digitizing evaluations. *See* Declaration of Corina Leske ("Leske Decl."), ¶¶6-7. It was not EMS practice to maintain electronic files of evaluations prior to 2020, and thus there are no electronically stored evaluations from 2004 to 2019, *see id.* ¶¶8-11, with the exception of scattered "one-off" emails containing one or a small number of evaluations. Defendants redacted personal identifiable information contained in the 2020 evaluations prior to production, a step which took significant time. Defendants initially intended to similarly redact electronic evaluations from 2021 to 2023. However, in the interest of expediency, and in a good faith effort to complete discovery in this case, Defendants will produce the 2021 and 2023 evaluations in their unredacted form on or before August 26, 2024, pursuant to the protective order so-ordered by the Court on May 8, 2019. *See* ECF Dkt. 54.

Third, Defendants have produced spreadsheets containing all annual evaluation scores for the years 2020 to 2023. EMS began systematically maintaining all EMS evaluation scores in spreadsheets in 2020. *See* Leske Decl. ¶ 6.

Fourth, Defendants have produced data from a standalone legacy database, PerfEval, which contains incomplete EMS performance evaluation data from 2004 to 2019. Defendants estimate that PerfEval contains data for approximately 28,000 out of approximately 57,000 annual performance evaluations during that period. *See id.* ¶¶ 21-22. Accordingly, Defendants have already expended substantial time and resources to comply with Your Honor's order. As set forth more fully below, the burden of further efforts would indisputably outweigh any value that these materials have to this case because the materials have no probative value and their production is extremely burdensome.

### C. Producing Additional Evaluations is Unduly Burdensome and Disproportionate to the Needs of the Case Given the Evaluations' Minimal Probative Value.

#### i. Additional Production of Paper Evaluations is Unduly Burdensome.

The production of all paper evaluations from 2004 to 2019 is unduly burdensome because evaluations from that period are maintained in paper form[2] in numerous locations. Before Defendants could produce these paper documents, they must locate and procure them. Personnel files containing annual performance evaluations of active EMS employees are maintained at EMS Human Resources ("HR"). *See* Leske Decl. ¶10. A smaller number of evaluations for active EMS employees are maintained in paper "station files" located across the 40 EMS station houses. *See id.* ¶11. Evaluations for EMS employees who separated from EMS from 2017 to present are also maintained in paper personnel files, maintained separately for each EMS employee, at either EMS Human Resources or at the 40 EMS station houses. *See* Declaration of Jason Morrison, ECF Dkt. 567-2, ¶¶4, 7, 9. Evaluations for employees who separated from EMS prior to 2017, however, are

---

[2] Plaintiffs insist that since 2004 it has been FDNY EMS' practice to digitize all evaluations and maintain them in a centralized database. This is incorrect. Despite a diligent search, Defendants are unable to locate a digital repository containing historical EMS performance evaluations.

archived at multiple off-site locations, including with third-party vendors. *See id.* ¶¶6-8, 23. FDNY would need to make arrangements for delivery of these files from their off-site locations at its own cost. *See* Leske Decl. ¶15. Defendants will then need to locate the evaluations within the personnel files and separate them out.

It is difficult to approximate the time and resources it would take to locate and procure all annual performance evaluations from 2004 to 2019. However, coordinating the retrieval of these documents from their various storage locations, as well as the retrieval itself, would require the efforts several FDNY employees with different roles and responsibilities and who are stationed at different locations. Defendants conservatively estimate that retrieval of these documents would require approximately 100 total work hours.

After Defendants locate the paper annual performance evaluations for all EMS employees from 2004 to 2019, they will have to digitize these paper performance evaluations approximately 8,500 EMS employees. Defendants estimate the number of evaluations for these approximately 8,500 employees at over 57,000 evaluations. *See id.* ¶22. Defendants estimate that it would take one full-time employee ("FTE") working for approximately 14,250 hours, or 2,035 workdays, to digitize these files. *See id.* ¶12. In arriving at this estimate, Defendants considered the following: there are more than 57,000 paper EMS evaluations from 2004 to 2019; it would take approximately 15 minutes to locate, prepare, scan, and index each evaluation; the FTE works 35 hours a week; and the FTE has no other responsibilities other than digitizing and indexing the personnel files. *See id.* ¶13. This estimate does not account for the time it would take to perform a quality assurance review.

Even if, as Plaintiffs have proposed, Defendants were to narrow the scope of this request to evaluations for *only* EMS employees holding the relevant ranks of Lieutenant and above going back to 2004, Defendants estimate that they will still have to locate and digitize performance evaluations for approximately 950 employees going back 15 years. Defendants estimate the number of evaluations for these 950 officers at over 8,000 evaluations. *See id.* ¶17. Even only considering officers, based on the presumptions above, Defendants estimate that it would take one FTE working for 2,000 hours, or approximately 285 workdays, to digitize and index these files. *See id.* ¶¶16-17. Again, this estimate does not account for the time it would take to perform a quality assurance review *See id.* ¶18.

Plaintiffs have proposed that Defendants, using the 28,000 annual performance evaluation scores from 2004 to 2019 contained in PerfEval, simply fill in the gaps by providing those evaluations for the relevant ranks (Lieutenant and above) which are not accounted for in PerfEval. However, producing the approximately 4,000 evaluations unaccounted for from that period for the relevant ranks, *see* Leske Decl. ¶23, would still impose an undue burden on Defendants for several reasons. Defendants would still be required to sift through thousands of personnel files maintained in numerous locations, including FDNY HR, station houses, and off-site storage, to locate 4,000 evaluations. Then, Defendants must take all the steps outlined above, including digitization and indexing, which would take approximately 1,000 hours, or 142 workdays. *See id.* ¶24. Defendants maintain that this endeavor would be unduly burdensome and disproportionate to the needs of the case given the minimal probative value of evaluations which were not submitted in support of any relevant promotional opportunities.

ii. **Additional Production of Electronic Evaluations is Unduly Burdensome.**

Plaintiffs have proposed that Defendants could locate electronic evaluations by conducting an search of all FDNY EMS emails from 2004 to present containing the words "evaluation" or "eval." This would also impose an undue burden because it would require searching hundreds of thousands—potentially millions—of emails maintained by approximately 8,500 custodians and still would not yield a complete production of evaluations from 2004 to present. Further, the City did not begin using Microsoft 365 until 2012, and thus it is impossible to conduct this search of pre-2012 emails.

D. **Evaluations That Were Not Considered with an Application for Promotion Are of No Probative Value.**

Evaluations that were not submitted with, and therefore were not considered in connection with, any application for any relevant promotional opportunity (promotions to captain and above) are not relevant to Plaintiffs' claims. To the extent that Plaintiffs theorize that non-white and female employees receive lower evaluation scores than white and male employees, Plaintiffs can test this theory using the more than 1,000 evaluations from 2004 to 2022 contained in Promotion Files and approximately 12,000 electronically-stored evaluations from 2020 to 2023 which Defendants are in the process of producing.

E. **Defendants Are Not Required to Create Documents Responsive to Request No. 9.**

Defendants are not required to create a document responsive to that portion of Request No. 9 which demands that "[i]f any such employee did not receive an annual performance evaluation for any year or years, please identify by providing their name, the year such evaluation or evaluations were not completed and the reason such evaluation was not given." *See* ECF Dkt. No. 459-1. "Rule 34 cannot be used to compel a party to create a document solely for its production." *Deng v. New York State Off. of Mental Health*, No. 13-CV-6801(ALC)(RLE), 2016 WL 11699675, at *3 (S.D.N.Y. Feb. 23, 2016). Defendants have explained during several previous meet and confers with Plaintiffs' counsel that, in years that an employee does not receive an evaluation, EMS generates an evaluation form on which that employee's supervisor indicates that the employee is "unratable." Defendants seek relief from the Order to the extent it requires them to create a document responsive to Request No. 9.

Thus, Defendants seek relief from the Order. Thank you for considering this request.

Respectfully Submitted,

/s/

Bryan Carr Olert
Assistant Corporation Counsel

cc:   All parties via ECF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

LOCAL 3621, EMS OFFICERS UNION, DC-37,
AFSCME, AFL-CIO, Individually and on behalf of
its members, Renae Mascol, and Luis Rodriguez, on
behalf of themselves and all other similarly-situated
individuals,

                       Plaintiffs,

                 -against-

CITY OF NEW YORK, NEW YORK CITY
FIRE DEPARTMENT, and DEPARTMENT OF
CITYWIDE ADMINISTRATIVE SERVICES,
John and Jane Does ##1-20, the identity
of such persons being unknown to Plaintiffs but
intended to describe those persons responsible for
the promotional policies of the City of New York,

                       Defendants.
------------------------------------------------------------------------ x

**DECLARATION OF CORINA LESKE**

No. 1:18-CV-04476 (LJL) (JW)

      CORINA LESKE, under penalty of perjury, declares pursuant to 28 U.S.C. § 1746, that the following statements are true and correct:

      1.    I am the Deputy General Counsel and Director of General Law for the New York City Fire Department ("FDNY") Bureau of Legal Affairs.

      2.    I became employed with FDNY as the Director of Court and Regulatory Compliance at FDNY in December 2015. I have held the position of Deputy General Counsel and Director of General Law since in or around May 2023. Accordingly, I am familiar with the facts herein.

      3.    I base this declaration on personal knowledge, a review of City records, conversations and communications with Daniel Burke, Records Management Officer for the FDNY Bureau of Legal Affairs, and conversations with other FDNY and City employees.

1

4. The Bureau of Legal Affairs is the agency's legal office, providing legal counsel to agency executives and staff; drafting and reviewing agreements, policies, procedures, affidavits and other legal and policy documents; defending discrimination claims filed with outside human rights agencies; reviewing conflicts of interest issues; assisting the NYC Law Department in connection with agency litigation; and performing code revision, legal and administrative code enforcement, litigation support, and records access functions.

**Bureau of Emergency Medical Services (EMS) Performance Evaluations**

5. I have been asked by attorneys for the City of New York to advise on the location of yearly performance evaluations maintained by the FDNY for employees of the FDNY's EMS Bureau from 2004 to present.

**Electronic Performance Evaluations for The Years 2020 Through 2023**

6. Performance evaluations for EMS Employees for years 2020 through 2023 are maintained by the FDNY electronically, as digitized copies of paper documents captured via scanning. In 2020, EMS also began maintaining spreadsheets organized by year containing annual EMS performance evaluations.

7. The FDNY maintains approximately 4,000 scanned records of EMS performance evaluations for year 2020; approximately 3,700 scanned records of EMS performance evaluations for year 2021; and approximately 4,400 scanned records of EMS performance evaluations for year 2022.

**Paper Performance Evaluations for The Years 2004 Through 2019**

8. After a reasonable search, Defendants have determined that performance evaluations for EMS employees for the years 2004 through 2019 are maintained only in paper form.

9. Specifically, performance evaluations for EMS employees for the years 2004 through 2019 are primarily maintained in each EMS employee's paper personnel file.

10. The paper personnel files for active EMS employees, and therefore the paper performance evaluations, are primarily maintained by FDNY Human Resources, located at FDNY headquarters at 9 MetroTech Center, Brooklyn, NY 11201.

11. Otherwise, employee "station files" are maintained at EMS station houses across the five boroughs of New York City. It is unknown to what extent performance evaluations are maintained at EMS station houses.

**Efforts Required to Digitize All Paper EMS Performance Evaluations from 2004 through 2019**

12. I estimate that it would require one full-time employee ("FTE") 14,250 hours, or 2,035 workdays, to locate, digitize, and index all EMS performance evaluations from years 2004 to 2019.

13. I base this estimate on the following estimates and assumptions:

   a. There are an estimated 57,000 paper EMS performance evaluations from 2004 to 2019;

   b. It would require, on average, approximately 15 minutes to locate, prepare, scan, and index each performance evaluation in an employee's personnel file;

   c. The FTE would work 35 hours per week; and

   d. The FTE would have no responsibilities other than digitizing the performance evaluations.

14. In addition, personnel files for EMS employees who separated from the FDNY prior to 2017 – and, thus, the performance evaluations for those separated employees – are archived

in offsite storage at the Municipal Records Center, which is operated by the New York City Department of Records and Information Services.

15. To obtain the archived personnel files, the FDNY would need to make its own arrangements for delivery at its own cost, as the Municipal Records Center does not currently provide records delivery.

**Efforts Required to Digitize Paper EMS Performance Evaluations for Lieutenant and Higher Ranks from 2004 through 2019**

16. I estimate that it would require one full-time employee ("FTE") 2,000 hours (approximately 285 workdays) to take the initial step of digitizing the EMS performance evaluations for the ranks of Lieutenant and above from years 2004 through 2019.

17. I base this estimate on the following estimates and assumptions:

   a. There are an estimated 8,000 paper performance evaluations for the relevant ranks alone (i.e., the ranks of EMS Lieutenant and above) for years 2004 to 2019;

   b. It would require, on average, approximately 15 minutes to locate, prepare, scan, and index each performance evaluation in an employee's personnel file;

   c. The FTE would work 35 hours per week; and

   d. The FTE would have no responsibilities other than digitizing the performance evaluations.

18. The estimated amount of time does not account for the time it would require to complete a quality assurance review.

**Performance Evaluation Scores Maintained in PerfEval**

19. PerfEval is a legacy database maintained in an outdated version of Microsoft Access which is not interconnected with any other FDNY or City systems.

20. PerfEval contains an incomplete accounting of pre-2020 EMS evaluation scores.

4

21. PerfEval contains approximately 28,000 EMS annual performance evaluation scores. PerfEval also contains non-annual performance evaluations such as one-month, three-month, and six-month evaluations for probationary employees.

22. Based on the number of active EMS employees each year from 2004 to 2023, there would be approximately 57,000 annual EMS performance evaluations for that period, including approximately 8,000 annual elevations for the relevant ranks of Lieutenant and above.

23. Thus, approximately 29,000 annual evaluation scores from 2004 to 2023 are not accounted for in PerfEval, including approximately 4,000 annual evaluations for the relevant ranks of Lieutenant and above.

24. Based on the parameters described above in paragraphs 16 and 17, I believe it would take approximately 1,000 hours, or 142 workdays, to locate, digitize, and index the 4,000 annual evaluations for the relevant ranks of Lieutenant and above which are unaccounted for in PerfEval.

**Corina Leske**