USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 09/10/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOCAL 3621, EMS OFFICERS UNION, DC-37, AFSCME, AFL-CIO, *individually and on behalf of its members*, RENAE MASCOL, and LUIS RODRIGUEZ,

Plaintiffs,

-v-

CITY OF NEW YORK, NEW YORK CITY FIRE DEPARTMENT, and DEPARTMENT OF CITYWIDE ADMINISTRATIVE SERVICES,

Defendants.

18-cv-4476 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Defendant the City of New York ("Defendant" or the "City") moves, pursuant to Federal Rule of Civil Procedure 56, for an order granting it summary judgment and dismissing Plaintiffs' claim for disparate impact discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 *et seq.*; the New York State Human Rights Law, N.Y. Exec. L. §§ 296 *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107 *et seq.* ("NYCHRL"). Dkt. No. 728.

Plaintiffs Rene Mascol ("Mascol") and Luis Rodriguez ("Rodriguez" and with Mascol, "Plaintiffs") oppose and cross-move for partial summary judgment. Dkt. Nos. 731, 736. Mascol moves, pursuant to Federal Rule of Civil Procedure 54 and Local Rule 6.3, for partial reconsideration of the Court's September 30, 2025 Opinion and Order, Dkt. No. 713, specifically as to the Court's ruling on her disparate impact claim. Dkt. No. 732. Plaintiffs also filed a renewed motion for class certification pursuant to Federal Rule of Civil Procedure 23. Dkt. No. 737.

For the reasons that follow, the City's motion for summary judgment is granted, Plaintiffs' cross-motion is denied, Mascol's motion for reconsideration is denied, and Plaintiffs' motion for class certification is denied as moot.

**BACKGROUND**

Familiarity with the prior proceedings in this matter is presumed. *See generally Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*, 2025 WL 2781280 (S.D.N.Y. Sept. 30, 2025). The following facts are undisputed for purposes of these motions except where otherwise indicated.

The Emergency Medical Services Bureau ("EMS"), housed within the New York City Fire Department ("FDNY"), provides "general ambulance services, emergency medical services and other response services necessary to preserve public health, safety and welfare." N.Y.C. Charter § 487(f); *see* Dkt. No. 651-5 at 52:12–24. EMS has four class titles in ascending order of responsibility: (1) Emergency Medical Specialist Trainee; (2) Emergency Medical Specialist—EMT ("EMT"); (3) Emergency Medical Specialist—Paramedic ("Paramedic"); and (4) Supervising Emergency Medical Service Specialist ("SEMSS"). *See* Dkt. No. 355 at 4; Dkt. No. 651-5 at 38:22–39:2. To become an EMT, Paramedic, or SEMSS, an individual must take and pass a civil service examination. *See* Dkt. No. 753 ¶ 1. At issue in this case is the SEMSS civil service title, which covers four ranked positions of increasing levels of responsibility: lieutenant, captain, deputy chief, and division chief / commander. Dkt. No. 653 at 3; Dkt. No. 689 at 4; Dkt. No. 683-1 at 19:4–25. Once an EMS Lieutenant, a person does not need to pass an additional civil service examination for promotion to a higher rank within the SEMSS title. Dkt. No. 653 at 4.; Dkt No. 689 at 5. To be eligible to become an EMS Captain, an individual must have (1) four years in title as a lieutenant, (2) an annual performance evaluation of at least "Very Good" (or "Good" for the years following 2017), and (3) a clean disciplinary history in the

preceding two years. Dkt. No. 689 at 6, 14. Interested applicants who meet these criteria must then apply with a cover letter and resume. *See, e.g.*, Dkt. No. 730-7 at 1, Dkt. No. 730-8 at 1, Dkt. No. 730-9 at 1. Those candidates who apply are vetted to determine if they meet all eligibility requirements. *See* Dkt. No. 730-12 at 18–20. Eligible candidates are then invited to interview with the three-person panel which then scores the candidates based on their performance. *Id.* At the end of the process, the Commissioner of the FDNY is sent a list with the top-ranking candidates corresponding to the number of open positions. Dkt. No. 651-41 at 56:14–16.

Mascol and Rodriguez are EMS members who applied for and ultimately were given promotions within SEMSS. Dkt. No. 651-36; Dkt. No. 651-59. Mascol and Rodriguez are members of Local 3621, EMS Officers Union, DC-37, AFSCME, ALF-CIO ("Local 3621"), which represents members of EMS holding the ranks of lieutenant and captain. Dkt. No. 1 ¶ 8.

Mascol identifies as an African American female. Dkt. No. 739 ¶ 1. She was promoted to the rank of EMS Lieutenant in June or July 2010 after completing a civil-service exam. Dkt. No. 651-2 at 66:3–13. On October 30, 2014, Mascol entered into an agreement (the "Stipulation and Agreement") resolving a disciplinary matter from March 2013 that would otherwise have made her ineligible to be promoted.[1] She applied for promotion to the position of captain on six

[1] Details of the disciplinary matter and the resolution reached by Mascol and the New York City Fire Department are discussed at length in the Court's September 25, 2025 Opinion and Order. *See Loc. 3621*, 2025 WL 2781280, at *4–5. The underlying charges stemmed from allegations that she had influenced two male EMS subordinates to file a false report in April 2012. *Id.* In response to the charges, Mascol filed a grievance through her union representatives. *Id.* As part of the Stipulation and Agreement resolving the matter, Mascol waived a number of rights and withdrew her grievance. *Id.* at *5. In return, the Fire Department agreed "that upon execution of the Stipulation and Agreement, Lt. Mascol will be afforded consideration, in accordance with the applicable rules, regulations and policies, to apply for promotion within the EMS civil service title specifications and that the Department makes no other promises, assurances or guarantees as to the Respondent's promotion." *Id.* at *5 (quoting Dkt. No. 683-11 at 3).

occasions from October 2014 to October 2019. Dkt. No. 730-1 at 137:8–19. She was denied promotion on each occasion until the end of 2019, and she was ultimately promoted to captain in 2020. Dkt. No. 651-36; Dkt. No. 653 at 10–11; Dkt. No. 730-1 at 137:10–12. Mascol was subsequently promoted from captain to deputy chief. Dkt. No. 651-62.

Rodriguez identifies as a Hispanic male. Dkt. No. 739 ¶ 2. Rodriguez was promoted to the rank of EMS Lieutenant on or about October 12, 2010, after completing a civil-service exam. Dkt. No. 651-3 at 49:15–24. Rodriguez applied for promotion on four occasions from June 2015 to September 2018. Dkt. Nos. 651-29, 651-31, 651-32, 651-55. He was denied promotion on the first three occasions. Dkt. Nos. 651-46, 651-50, 651-51. He was promoted to captain towards the end of 2018, with the rank change effective in mid-January 2019. Dkt. No. 651-55. Rodriguez was subsequently promoted from captain to deputy chief in the second half of 2021. Dkt. No. 651-59.

## PROCEDURAL HISTORY

On June 27, 2016, Local 3621 filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), individually and on behalf of its members and similarly situated individuals, alleging violations of federal, state, and local law, including Title VII, NYSHRL, and NYCHRL. Dkt. No. 1-1. Local 3621 claimed that the absence of civil service examinations for almost all positions within EMS "created a discriminatory environment in the EMS, which adversely impacts . . . the female and non-white members." *Id.* ¶ 26. On March 27, 2018, the EEOC issued a right-to-sue letter, stating that a "suit must be filed in the appropriate Court within 90 days of . . . receipt" of the notice. Dkt. No. 1-2.

On May 21, 2018, Mascol, Rodriguez, and Local 3621, individually and, in the case of Local 3621, on behalf of its members, filed the instant lawsuit as a putative class action against the City, the New York City Fire Department, and the Department of Citywide Administrative

Services (collectively, "Defendants"). Dkt. No. 1. Plaintiffs alleged that women and persons who were non-white were underrepresented in the EMS workforce of lieutenants and captains and claimed that Defendants' "use of a subjective promotional process for EMS applicants where more objective processes exist . . . has resulted in disparate and discriminatory promotional practices." *Id.* ¶¶ 3, 19–21. In particular, Plaintiffs alleged that Defendants' process to determine promotions within SEMSS, which included only "the submission of application packets and subsequent interviews, [wa]s merely a pretext, used to allow mostly white and male supervisors to exert excessive discretion in ultimately being able to select who they want to promote, not based on merit but on impermissible factors," and that "the absence of standardized, valid or reliable promotional criteria, allow[ed] and amplifie[d] implicit bias." *Id.* ¶ 36; *see also id.* ¶¶ 24, 32, 34. Plaintiffs sought to represent a damages class comprised of "all non-white members and all female members" within the SEMSS category "who applied and been denied promotions to the positions of Captain or Deputy Chief from 1998 through 2017." *Id.* ¶ 69 (internal quotation marks omitted). Plaintiffs alleged violations of Title VII, NYSHRL, NYCHRL, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. *Id.* ¶¶ 87–124.

A lengthy period of discovery followed supervised by the magistrate judges of this Court.

On January 18, 2021, Plaintiffs moved for an order certifying classes pursuant to Federal Rule of Civil Procedure 23.[2] Dkt. Nos. 300–07. On November 22, 2022, the Court issued an opinion and order denying class certification on the grounds that Plaintiffs had failed to sufficiently demonstrate commonality under Rule 23(a)(2). Dkt. No. 453; *Loc. 3621, EMS*

---

[2] Following discovery, Plaintiffs sought to certify three classes: (1) the "Equitable Class" estimated to be 2,178 members; (2) the "Race/Sex/Gender Class" estimated to be 1,007 members; and (3) the "Non-Fully Duty Status Class" estimated to also be 1,007 members. Dkt. No. 301 at 10. Certification was sought pursuant to Rule 23(b)(2) for the first class and pursuant to Rule 23(b)(3) for the other two. *Id.* at 10–11.

*Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*, 2022 WL 17175798 (S.D.N.Y. Nov. 22, 2022). With respect to disparate impact claims, the Court held that Plaintiffs failed to establish, either through anecdotal or statistical evidence, that the specific employment practices identified—the interview processes and the eligibility criteria—were responsible for the alleged discriminatory impact on non-white and female applicants. 2022 WL 17175798, at *9–11. Plaintiffs' anecdotal evidence did not indicate how the alleged "discrimination manifested itself in . . . promotion practices *in the same general fashion*," *id.* at *10 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 353 (2011)), because various declarants ascribed Defendants' failure to promote them to differing reasons, ranging from allegedly discriminatory annual performance evaluations and disciplinary actions that preventing eligibility to subjective interviews after becoming eligible, *id.* Although Plaintiffs did proffer statistical evidence, it was similarly unhelpful. *Id.* at *10–11. The expert's analysis showed that the lower ranks within SEMSS had a greater proportion of non-white and female members relative to the higher ranks of captain, deputy chief, and division chief, but the analysis did not control for eligibility or applicant status, and it could not identify what part of the promotion process accounted for that statistical difference. *Id.* at *3–4, *10. Plaintiffs' evidence failed to draw a causal connection between their identified employment processes and the race and gender disparities. *Id.* at *11. Likewise with respect to their disparate treatment or pattern-and-practice claims, the Court denied Plaintiffs' motion for class certification because there was no "significant proof of a general policy of discrimination." *Id.* at *12. Plaintiffs' expert analysis did not show any evidence of discrimination on the basis of sex since white males and white females were shown to have nearly identical likelihoods of having a leadership position and non-white females, in fact, were shown to have a higher likelihood relative to non-white males. *Id.* ("[T]hese analyses offer

virtually no support for the proposition that Defendants had a pattern and practice of gender-based discrimination"). As for race-based discrimination, the statistical evidence was of "questionable" validity since the expert did not look at promotion rates from the baseline of "all who [were] actually eligible or applied for promotion and then, of those individuals, who was promoted in a given year." *Id.* Instead, the expert looked at the current snapshot of EMS officers, by race and gender, in leadership positions versus the EMS population as a whole. *Id.* But the differences that were observed did not necessarily mean that Defendants' policies had discriminated; rather, the evidence was consistent with the story that, notwithstanding policies that tended to favor non-white applicants, fewer such applicants were promoted than white applicants because Defendants had improved their hiring of persons of color such that "historically there were fewer non-white persons to select" from for leadership positions. *Id.* Once statistical analyses were adjusted to account for the appropriate comparators, both Plaintiffs' expert and Defendants' expert reported not only smaller disparities but also that the likelihoods for a female applicant to be promoted relative to a male applicant, or a non-white applicant to be promoted relative to a white one, were nearly equal if not greater. *Id.* at *13.

On December 4, 2023, Defendants filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Dkt. No. 491. They argued that Local 3621 did not have representational standing and that Plaintiffs failed to state a claim for relief. Dkt. No. 492. Defendants withdrew that motion on February 23, 2024, without prejudice to renew the arguments raised in their Rule 12(c) motion in their anticipated motion for summary judgment. Dkt. No. 526.

On November 18, 2024, Defendants filed a motion for summary judgment. Dkt. No. 649. Defendants argued that Local 3621 lacked representational standing, that neither FDNY nor

DCAS was a suable entity, and that they were entitled to summary judgment on the disparate treatment, disparate impact, and pattern-or-practice claims of Mascol and Rodriguez. Dkt. No. 653.

By Opinion and Order of September 30, 2025, the Court granted in part and denied in part Defendants' motion for summary judgment. Dkt. No. 713. The Court first determined that the following claims were either waived, withdrawn, or abandoned: (1) all claims against FDNY and DCAS; (2) all claims of disparate treatment on the basis of race; (3) Rodriguez's claims of disparate treatment on the basis of disability under Title VII and NYSHRL; (4) all constitutional due process claims brought under 42 U.S.C. § 1983; (5) all claims brought under 42 U.S.C. § 1981; and (6) all claims brought by Local 3621, except for its claim seeking injunctive relief under Section 1983 for alleged Equal Protection Clause violations. *Loc. 3621*, 2025 WL 2781280, at *1. Those claims thus are dismissed and may not be asserted in this action. The Court also granted the motion for summary judgment with respect to Mascol's claims of disparate treatment on the basis of gender under Title VII, NYSHRL, and NYCHRL.[3] *Id.* at *23–26. Finally, the Court dismissed Plaintiffs' claims (including those of Local 3621 that were not waived, withdrawn, or abandoned) predicated on violations of the Equal Protection Clause. *Id.* at *28–29.

With respect to Plaintiffs' claims that Defendants' promotional policies and practices disparately impacted non-white and female lieutenants in violation of Title VII, NYSHRL, and NYCHRL, the Court concluded that, unlike at the class certification stage, Mascol and Rodriguez had identified an employment policy or practice that arguably had a disparate impact:

[3] The Court dismissed Rodriguez's disability discrimination claim under the NYCHRL, declining to exercise supplemental jurisdiction, without prejudice to him filing the claim in the state courts. *Id.* at *26, *28.

the eligibility criteria. *Id.*, at *16, *18–19. Drawing inferences in favor of the non-movant at summary judgment, the Court held that Plaintiffs had submitted more than *de minimis* evidence that the eligibility criteria had a disparate impact to make out a prima facie case. *Id.* at *19. Plaintiffs' expert submitted an updated report that addressed many of the gaps that the Court found critical at the class certification stage. *Id.* at *18–19. Keeping in mind Plaintiffs' focus on the eligibility criteria as disparately impactful policies, Plaintiffs' expert controlled for some non-discriminatory explanations that could have led to uneven outcomes by race and gender. First, the expert found that eligible non-white lieutenants applied at "statistically significantly higher rates than their white peers" and eligible female lieutenants also applied at higher rates, suggesting "at least similar levels of promotional interest," concluding that self-selection could not explain observations. *Id.* at *18. Second, Plaintiffs' expert provided evidence that the demographics of entry-level EMS employees had been consistent across race and gender lines—in fact, since at least 2004, "entry-level EMS employees have been predominantly non-white." *Id.* at *19. The Court found that Defendants did not undermine Plaintiffs' expert's statistical analysis and instead unpersuasively argued that it was inapposite, "fail[ing] to establish the absence of a genuine issue of material fact" since Plaintiffs had provided some evidence probative of causation and a statistically significant disparity at the summary judgment stage. *Id.*

Nonetheless, the Court held that Mascol and Rodriguez could not bring individual cases because they could not establish that they were harmed by Defendants' eligibility criteria in 2014 or 2015 "or thereafter." *Id.* at *21. The Court left open the possibility that they might "be able to recover damages for periods of prior ineligibility if they could establish "that, but for the relevant promotional requirements, they would have applied for the EMS Captain position." *Id.* The Court reasoned that the fact that Plaintiffs had not applied for the position of captain prior to

2014 did not necessarily foreclose them from claiming that they were discriminatorily denied the position. If Plaintiffs showed that they would have applied for the position absent the allegedly discriminatory conduct, they could bring an employment discrimination claim based on that conduct. *Id.* at *20. The Court noted that Plaintiffs' burden would not be "easy," *id.* (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 367–68 (1977)), and that it could be met only "with evidence of a desire to apply such as an 'informal inquiry, expression of interest, or even unexpressed desire [that is] credible and convincing,'" *id.* (quoting *Int'l Bhd.*, 431 U.S. at 371 n.58). The Court also reasoned that Plaintiffs had not lost standing by virtue of the fact that they were later promoted. If, in fact, they were discriminatorily denied a promotion at a time when they would have applied for a promotion, they might be able to recover damages for the time they were excluded from eligibility. *Id.* at *21. Because the parties had not briefed the question of whether Plaintiffs had a triable claim with respect to promotional opportunities prior to 2014, the Court denied the motion for summary judgment but did so without prejudice to a renewed motion. *Id.*

On November 7, 2025, the remaining Defendant, the City, filed its second motion for summary judgment. Dkt. No. 728. Defendant also filed a memorandum of law in support of the motion, a Rule 56.1 statement, and the declaration of Robyn L. Rothman in support of the motion. Dkt. Nos. 729–31. On December 12, 2025, Plaintiff filed a memorandum of law in opposition to the motion, a counterstatement to the City's Rule 56.1 statement, a Rule 56.1 statement, and the declaration of Yetta G. Kurland. Dkt. Nos. 738–41. Plaintiffs also filed a cross-motion for summary judgment on the issue of liability. Dkt. No. 736. On January 26, 2026, Defendant filed a memorandum of law in reply to Plaintiffs' opposition to Defendant's motion for summary judgment and in opposition to Plaintiff's cross-motion for summary

judgment. Dkt. No. 754.

On November 7, 2025, Plaintiffs filed a motion for reconsideration supported by a memorandum of law. Dkt. Nos. 732–33. On December 12, 2025, Defendant filed its memorandum of law in opposition to the motion for reconsideration. Dkt. No. 735. Plaintiff filed a reply memorandum in further support of their motion for reconsideration on January 26, 2026. Dkt. No. 752.

On December 12, 2026, Plaintiffs filed a renewed motion for class certification and an accompanying memorandum of law the next day. Dkt. Nos. 737, 743. The Court adjourned briefing on the motion *sine die* pending resolution of the City's motion for summary judgment, Plaintiffs' cross-motion, and Mascol's motion for reconsideration. Dkt. No. 746.

**LEGAL STANDARD**

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate when the "movant shows that that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To satisfactorily make such a showing, the movant must either provide evidentiary support that a material fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Alternatively, if the burden of the proof will fall on the nonmoving party at trial, the movant must "show[] that . . . an adverse party cannot produce admissible evidence to support [a material] fact." Fed. R. Civ. P. 56(c)(1)(B). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *WWBITV, Inc. v. Village of Rouses Point*, 589 F.3d

46, 49 (2d Cir. 2009) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). In determining whether there are any genuine issues of material fact, the Court must view all facts "in the light most favorable to plaintiff's case." *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

"[T]he nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). The nonmoving party may not rely on "mere speculation or conjecture as to the true nature of the facts," *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)), or "on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible," *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted). Rather, to survive a motion for summary judgment, the nonmoving party must establish a genuine issue of fact by "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), and demonstrating more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). *See also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). If "the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment shall be denied. *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9–10 (2d Cir. 1983).

"Local Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York prescribes the manner and method in which a party is to present undisputed issues of fact to the Court." *Mangahas v. Eight Oranges Inc.*, 754 F. Supp. 3d 468, 483 (S.D.N.Y. 2024). The rule requires a moving party to include with its motion

for summary judgment "a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." L. Civ. R. 56.1(a). The party in opposition must also "include a correspondingly numbered paragraph admitting or denying, and otherwise responding to, each numbered paragraph in the statement of the moving party." L. Civ. R. 56.1(b). For both submissions, the statements "must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." L. Civ. R. 56.1(d). If the party served the Rule 56.1 statement does not "specifically den[y] and controvert[]" facts stated therein, those uncontested facts "will be deemed to be admitted for the purposes of the motion." L. Civ. R. 56.1(c). Any opposition must be supported with admissible evidence, or "the Court is instructed to disregard those portions and deem the factual statements in the original Local Rule 56.1 statements admitted." *Mangahas*, 754 F. Supp. 3d at 483.

**DISCUSSION**

The Court addresses first Plaintiff's motion for reconsideration before turning to Defendant's motion for summary judgment.

**I. Plaintiff's Motion for Reconsideration**

Mascol asks the Court to reconsider its decision that she cannot pursue failure-to-promote claims for 2014 and thereafter. Dkt. No. 733 at 1. Although Mascol does not challenge the Court's holding that she cannot pursue a claim of disparate treatment for failures to promote in 2014, 2015, or 2016, she claims that the Court should have permitted her to advance an alternative claim of disparate impact. Dkt. No. 733 at 7–8.

"A motion for reconsideration should be granted only if the movant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Spin Master Ltd. v. 158*, 2020 WL 5350541, at *1

(S.D.N.Y. Sept. 4, 2020) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)). "The standard for granting a motion for reconsideration 'is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the Court.'" *Justice v. City of New York*, 2015 WL 4523154, at *1 (E.D.N.Y. July 27, 2015) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). Reconsideration of a court's previous order is an "extraordinary remedy that is to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Hines v. BMG Rts. Mgmt. (US) LLC*, 711 F. Supp. 3d 200, 205 (S.D.N.Y. 2024) (citation modified). It is not a "vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). "Summary judgment briefing is not an iterative process," and a motion for reconsideration therefore "cannot be based on arguments not previously raised." *Corwin v. NYS Bike Share, LLC*, 2017 WL 1318010, at *2, *6 (S.D.N.Y. Apr. 7, 2017).

Mascol premises her argument on a footnote in the Court's summary judgment opinion. Dkt. No. 733 at 3–4. In that opinion, the Court held that Plaintiff had offered sufficient evidence to withstand summary judgment on two of the three elements of a prima facie case of disparate impact. Plaintiffs had identified a specific employment practice or policy and put forward evidence that a disparity existed. Dkt. No. 713 at 32 (elements of disparate impact test); *Loc. 3621*, 2025 WL 2781280, at *15. Plaintiffs contended that the eligibility criteria for promotion to EMS Captain, including time in title, an annual performance evaluation of at least "Very

Good," and a clean disciplinary history had a disparate impact. *Loc. 3621*, 2025 WL 2781280, at *17. The Court accepted that contention, *id.* at *19, but rejected the claim that Mascol had shown that she was injured by the eligibility requirements. *Id.* at *19–21. Defendants had argued that Mascol and Rodriguez lacked standing because they could not show that the criteria ever prevented them from being promoted. *Id.* at *19 (citing Dkt. No. 695 at 3). The Court rejected Plaintiffs' response to that argument that they "need not show" how they were treated under the policies, Dkt. No. 689 at 11, reasoning that "[w]hether framed as a matter of standing or as an element of Plaintiff's case, . . . in order to bring a disparate impact claim, an individual plaintiff must demonstrate that he or she was adversely affected by the relevant policy," *Loc. 3621*, 2025 WL 2781280, at *19. The Court concluded that because Mascol and Rodriguez met the relevant eligibility criteria each time they applied, they were considered for promotion and could not show that such criteria adversely impacted them. *Id.* at *21. In the course of reaching that conclusion, the Court noted that "Mascol arguably did not meet the clean-disciplinary-record requirement" because she was disciplined in 2014 but the Court stated that she could not premise a disparate impact claim on that criterion because she maintained that the Stipulation and Agreement signed by Defendants preserved her right to be considered for promotion. *Id.* at *21 n.8.

Mascol argues that the Court's footnote constitutes clear error. Dkt. No. 733 at 3. She contends that, even if she believed that she was eligible for promotion, Defendants did not treat her as eligible for promotion, notwithstanding the Stipulation and Agreement, and thus she is permitted to bring a disparate impact claim on that basis. Dkt. No. 733 at 5.

Mascol asks for an unwarranted do-over. In Plaintiffs' opposition to Defendants' motion for summary judgment, Plaintiffs took the position that they did not have to show a policy or

practice that impacted them personally. Dkt. No. 689 at 11 ("Plaintiffs need not show individual examples of how they were personally treated under this policy, such as a specific instance of when they were denied an opportunity to apply, as Defendants seem to imply."). Rather, with respect to the Stipulation and Agreement and its potential impact on Mascol's promotion prospects, Plaintiffs argued only a disparate treatment theory–that Defendants treated her differently on the basis of her gender by "concocting false charges on her" that they did not impose on similarly situated male colleagues. *Id.* at 19. In other words, she argued that, regardless of any policy, she was subjected to intentional and "targeted" discrimination because she "was disciplined because of her gender when two males were not," and that "Chief Booth purposefully withdrew her from consideration from promotion." *Id.* at 20. The Court rejected that argument at both steps. First, Mascol had waived any argument that her discipline was in and of itself discriminatory, in part because she had consistently claimed that the discipline imposed on her was not a proper part of the case. *Loc. 3621*, 2025 WL 2781280, at *23. Second, Mascol failed to point to evidence in the record sufficient to establish a genuine issue of material fact that Chief Booth "knew" that Mascol was eligible to be promoted, yet "nonetheless withdrew her application from consideration using her disciplinary history as a pretense." *Id.* at *24. There was no evidence that Chief Booth withdrew Mascol's application from consideration. All that Plaintiff offered was her own unsupported and self-serving declaration asserting that Chief Booth "secretly" did so, without offering any direct or circumstantial evidence to support that charge. *Id.* at *24–25.

To be sure, Plaintiff is correct that disparate impact and disparate treatment are separate theories, that a plaintiff can plead them in the alternative, and that the failure of a disparate treatment claim does not necessarily doom a disparate impact claim. *Gordon v. City of New*

*York*, 2016 WL 4618969, at *5 (S.D.N.Y. Sept. 2, 2016) (explaining that "[t]he same conduct can form the basis of a disparate treatment claim and a disparate impact claim, as the two theories 'are simply alternative doctrinal premises for a statutory violation,'" and Federal Rule of Civil Procedure 8(e)(2) allows a litigant to plead causes of action in the alternative (quoting *Maresco v. Evans Chemetics Div. of W.R. Grace & Co.*, 964 F.2d 106, 115 (2d Cir. 1992)); *see also Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 328 n.16 (S.D.N.Y. 2015) ("A plaintiff can assert a Title VII claim under two different legal theories—disparate impact or disparate treatment."); *cf. Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208–10 & 209 n.3 (2d Cir. 2020) (discussing differing elements of disparate treatment and disparate impact claims to evaluate each theory appropriately). But in order to have pursued a disparate impact theory, Mascol would have needed to present evidence at summary judgment establishing that there was a triable issue of fact to support that theory. What Plaintiff cannot do is argue that it is irrelevant whether a policy impacted her because she was a victim of disparate treatment and then, having lost on that claim, reverse course and argue for reconsideration (without evidence) on the theory that she was in fact the victim of a policy with a disparate impact. *See, e.g.*, *Murray v. Dutcavich*, 2020 WL 3318212, at *2 (S.D.N.Y. June 18, 2020) (in the context of a Title VII disparate treatment claim, denying a motion for reconsideration and rejecting Plaintiff's attempts to "reframe his earlier argument and/or advance new arguments to supplant his failed arguments"); *Hejmej v. Peconic Bay Med. Ctr.,* 2023 WL 4373628, at *3 (E.D.N.Y. July 6, 2023) (denying a motion for reconsideration where "Plaintiffs urge the Court to reconsider its rejection of their argument that they can prevail by showing that they were otherwise treated differently" to support their discrimination claim because, *inter alia*, plaintiffs failed to raise the argument until their reply brief and had "cited no evidence that supports their contention" (internal quotation marks

omitted)). The motion for reconsideration therefore is denied.

## II. Defendant's Motion for Summary Judgment

Because the Court denies reconsidering its earlier ruling, only Plaintiffs' disparate impact claims for the "periods of prior ineligibility" remain live. The City moves for summary judgment on those claims, asserting that (1) any claim that the eligibility criteria had a disparate impact on Plaintiffs prior to August 21, 2013 is time-barred; (2) Plaintiffs failed to provide any notice—let alone sufficient notice—that their claims of disparate impact were based upon eligibility criteria for the pre-eligibility period for Mascol and Rodriguez; (3) assuming sufficient notice, Plaintiffs' statistical analysis is flawed and does not satisfy Plaintiffs' prima facie burden of demonstrating that the eligibility criteria has a causal connection to any disparate impact on them; and (4) the FDNY has a legitimate business interest for determining eligibility to the rank of Captain. Dkt. No. 731 at 8–15, 16–24, 27–28. The City also argues that Plaintiffs were never harmed by the eligibility criteria and were not deterred from applying for promotions by virtue of the eligibility criteria. *Id.* at 15–16, 24–27.

Plaintiffs present a number of arguments in opposition to the motion. Plaintiffs contend that (1) the claims of Mascol, Rodriguez, and Local 3621 are not time-barred because of the continuing violations doctrine; (2) the Court's September 30, 2025 Opinion and Order resolved that Defendants had sufficient notice of the eligibility criteria so the City cannot now argue that pleadings or the course of conduct were insufficient to put the City on notice, or that the City has suffered any prejudice; (3) Plaintiffs' expert's analysis establishes disparate impact and the statistics are not disputed by the City, which improperly takes aim at the underlying analysis through legal argument rather than through scientific methods via a competing expert; and (4) the City misapprehends what is required to meet the standard of job-related business necessity. Dkt. No. 741 at 6–19, 21–26, 30–31. Plaintiffs also counter that they never conceded that they

were unharmed by the eligibility criteria in the pre-eligibility period, that Mascol and Rodriguez will be able to "establish at a remedial hearing that they had the requisite intent to entitle them to damages," and that Local 3621 members who "had the requisite intent to seek promotion but couldn't are also [among the] harmed." *Id.* at 20, 26–30. In other words, Plaintiffs contend that the fact that Mascol and Rodriguez were ineligible for those promotional opportunities for captain is, in and of itself, sufficient to satisfy their burden of showing harm at the summary judgment stage. *Id.* at 29–30. Separately, Plaintiffs cross-move for summary judgment on the disparate impact claim. *Id.* at 32–35.

Most of Plaintiffs' arguments are barred by the doctrine of law of the case. The complaint did not challenge the eligibility criteria for promotion within SEMSS. Rather it, and Plaintiffs' EEOC charge, were focused exclusively on the subjective criteria and discretion that applied to promotion decisions after an applicant was deemed eligible for promotion. Dkt. No. 1 ¶¶ 32–35 (alleging that Defendants' use of "solely subjective criteria . . . allowed the consideration of impermissible factors to affect promotions within EMS"); Dkt. No. 1-1 ¶¶ 23–24 ("[O]nce a member of the EMS reaches the rank of Lieutenant, the remainder of their promotions will be determined based on a discretionary application and interview process," which "permit[s] an environment in which discrimination has flourished and resulted in women and non-white members being underpromoted."). The Court nevertheless construed the record generously in favor of Plaintiffs and concluded that, even though Plaintiffs did not challenge the eligibility criteria in their complaint, the complaint should be deemed to be amended to include a challenge to the criteria because they had become a focus of the litigation.[4] The Court still granted summary judgment for Defendants on virtually all of Plaintiffs' claims. As notable here,

[4] The Court did not address the EEOC charge because it was not raised by the parties.

it granted summary judgment on (1) all of Local 3621's claims; (2) the disparate treatment claims of Mascol and Rodriguez; and (3) the disparate impact claims of Mascol and Rodriguez for the year 2014 and thereafter. *Loc. 3621*, 2025 WL 2781280, at *15–30. Plaintiffs asked for reconsideration only of Mascol's disparate impact claim, which the Court denies for the reasons explained above.

The law of the case doctrine "holds 'that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case' . . . unless 'cogent' and 'compelling' reasons militate otherwise." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (first quoting *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991); and then quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)). Cogent and compelling reasons include "an intervening change in law, availability of new evidence, or 'the need to correct a clear error or prevent manifest injustice.'" *Johnson v. Holder*, 564 F.3d 95, 99–100 (2d Cir. 2009) (quoting *Quintieri*, 306 F.3d at 1230). "Where a party presents the same allegations or factual record previously deemed deficient by a court, the law of the case doctrine forecloses reconsideration of the court's conclusion." *Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.*, 2021 WL 535485, at *4 (S.D.N.Y. Feb. 12, 2021).

The Court need only address two issues.

**A. Timeliness**

Plaintiffs argue initially that they should be permitted to go forward with this case on a disparate impact theory because Local 3621's claims are not time-barred. Dkt. No. 741 at 10–11. At the summary judgment stage, however, Plaintiffs waived or abandoned all claims brought by Local 3621, except for those seeking injunctive relief under Section 1983 for equal protection violations. *Loc. 3621,* 2025 WL 2781280, at *1. Plaintiffs have not sought reconsideration or

identified any error in that ruling. The Court also dismissed Local 3621's claims for equal protection violations (the only claim not abandoned or waived) on the merits. *Id.* at *29. Plaintiffs do not seek reconsideration or identify error in that ruling either. Because those rulings are law of the case and Local 3621 has been dismissed, Plaintiffs cannot now belatedly proceed to trial on disparate impact claims by Local 3621. The only claims that remain in this case are Mascol's and Rodriguez's Title VII, NYSHRL, and NYCHRL claims arising from the pre-eligibility period. Defendant contends that these remaining claims are untimely, either wholly or in part. Dkt. No. 731 at 8–13.

Plaintiffs asserting claims under Title VII must first file a complaint with the EEOC "or an equivalent state agency within 300 days of the allegedly discriminatory action." *Gindi v. N.Y.C. Dep't of Educ.*, 786 F. App'x 280, 282 (2d Cir. 2019) (summary order); *see also* 42 U.S.C. § 2000e-5(e)(1) (Title VII); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78–79 (2d Cir. 2015) ("Title VII requires that individuals aggrieved by acts of discrimination file a charge with the EEOC within 180 or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days after the alleged unlawful employment practice occurred." (internal quotation marks omitted)); *see Bernstein v. N.Y.C. Dep't of Educ.*, 2021 WL 4429318 at *5 (S.D.N.Y. Sep. 27, 2021) ("Plaintiff [may] not assert a federal age discrimination claim based on acts that occurred more than 300 days before his filing of the NYSDHR/EEOC notice"). "[O]nly incidents that took place within the timely filing period are actionable." *Richards v. N.Y.C. Dep't of Educ.*, 2022 WL 329226 at *6 (S.D.N.Y. Feb. 2, 2022) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). "The 300-day look-back period is triggered by the filing of an administrative complaint addressing the specific type of discrimination at issue." *See, e.g.*, *McSweeney v. Cohen*, 776 F. Supp. 3d 200, 263 (S.D.N.Y.

2025); *Bowen v. MTA N.Y.C. Transit Auth.*, 2011 WL 7940367, at *7 (E.D.N.Y. Dec. 29, 2011); *Bailey v. Colgate-Palmolive Co.*, 2003 WL 21108325, at *11–14 (S.D.N.Y. May 14, 2003), *aff'd*, 93 F. App'x 321 (2d Cir. 2004) (summary order).

Under NYSHRL and NYCHRL, the statute of limitations is three years. *See* N.Y. Exec. Law § 297(5); N.Y.C. Admin. Code § 8-502(d). The limitations period for both statutes ordinarily is tolled during the pendency of an administrative complaint. *See* N.Y.C. Admin. Code § 8-502(d) ("Upon the filing of a complaint with . . . the state division of human rights and during the pendency of such complaint and any court proceeding for review of the dismissal of such complaint, such three-year limitations period shall be tolled."); *Banks v. General Motors, LLC*, 81 F.4th 242, 260 (2d. Cir. 2023) ("[NYSHRL's] three-year statute of limitations is tolled during the period in which a complaint is pending before the New York State Department of Human Rights or with the EEOC.").

Plaintiffs filed their EEOC complaint on June 27, 2016, Dkt. No. 1-1, and filed this lawsuit on May 21, 2018, Dkt. No. 1. The EEOC complaint alleged violations of Title VII, NYSHRL, and NYCHRL, among others. Dkt. No. 1-1. The EEOC issued a right-to-sue letter on March 27, 2018. Dkt. No. 1-2. It follows that, absent application of the continuing violations theory, the only Title VII claims of Plaintiffs that would be timely are those based on acts that occurred on September 1, 2015, or after (*i.e.*, 300 days before June 27, 2016). As for NYSHRL and NYCHRL claims, the date that is three years prior to May 21, 2018 is May 21, 2015, but 638 days expired between the filing of the EEOC complaint and the issuance of the right-to-sue letter. Giving effect to those 638 days, Plaintiff's claims accruing on or after August 21, 2013 would be timely.[5]

---

[5] Plaintiffs argue that only claims prior to June 24, 2013, but not claims prior to August 21, 2013

The Title VII statute of limitations bars any remaining federal claims that Mascol or Rodriguez would have based on failure to promote. As indicated, the Court previously held that Plaintiffs could not assert disparate impact claims for conduct occurring on or after October 2014, because the eligibility criteria about which they complained did not cause any harm to them. *Loc. 3621*, 2025 WL 2781280, at *21. The Court left open only potential claims for the failure to promote on earlier dates. *Id.* But, absent application of the continuing violation doctrine, any earlier dates would fall outside the Title VII statute of limitations.

The same conclusion applies to Plaintiffs' State and City claims for promotions prior to August 21, 2013. Plaintiffs argue that Rodriguez was ineligible to apply for promotion for the February 18, 2011, June 1, 2011, March 14, 2013, October 18, 2013, April 24, 2014, and October 1, 2014 promotions to captain and was unable to apply for deputy chief until January of 2021. Dkt. No. 741 at 9. Plaintiffs also claim that Mascol's non-promotion claims under the NYSHRL and NYCHRL that accrued after June 27, 2013 are timely, *id.* at 8, and that she was deemed ineligible for six promotions during that period, *id.* Mascol and Rodriguez have timely NYSHRL and NYCHRL claims only with respect to the October 2013, April 2014, and October 2014 promotions. *Id.* at 10; *see also* Dkt. No. 731 at 9 ("There are three timely promotional opportunities to EMS Captain arising in October 2013, April 2014, and October 2014.").

Plaintiffs argue, however, that all their claims arising from each promotion opportunity that existed after Mascol's and Rodriguez's promotions to EMS Lieutenant since July 2010 and October 2010, respectively, are ripe based on the continuing violations doctrine. Dkt. No. 741 at 6–13. That doctrine does not render actionable their Title VII claims or any NYSHRL and

are time-barred, Dkt. No. 741 at 8, but they do not challenge Defendant's calculation. The difference is immaterial. Plaintiffs do not identify any promotional opportunities between June 27, 2013, and August 21, 2013.

NYCHRL claims predicated on promotional opportunities before August 21, 2013.

The continuing violations doctrine, "where applicable, provides an exception to the normal knew-or-should-have-known accrual date" relevant to a statute of limitations. *K.W. ex rel. K.A. v. City of New York*, 177 F.4th 127, 150 (2d Cir. 2026) (quoting *Lucente v. County of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020)). "It applies to claims 'composed of a series of separate acts that collectively constitute one unlawful practice.'" *Lucente*, 980 F.3d at 309 (alteration adopted) (quoting *Washington v. County of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004)). "Where a continuing violation can be shown, the plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period." *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994). The continuing violations doctrine is applicable to Title VII, NYSHRL, and NYCHRL claims. *See Donahue v. Metro. Life Ins. Co.*, 2025 WL 1194738, at *5 (S.D.N.Y. Mar. 5, 2025), *report and recommendation adopted*, 2025 WL 1194390 (S.D.N.Y. Apr. 22, 2025); *see also Bermudez v. City of New York*, 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011) ("The continuing-violation exception is most often invoked by plaintiffs alleging claims under Title VII, but it is also applied by courts in employment discrimination cases brought under Sections 1981 and 1983, and under New York state and city law."). "[T]he doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances." *Doe v. State Univ. of N.Y. Purchase Coll.*, 2022 WL 2972200, at *9 (S.D.N.Y. July 27, 2022) (internal quotation marks omitted). Moreover, "[a] claim will be timely, however, only if the plaintiff alleges some non-time-barred acts contributing to the alleged violation." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (citation modified).

The Supreme Court has "established that an employer's failure to promote is by its very

nature a discrete act" such that "every failure to promote . . . gives rise to a freestanding . . . claim with its own filing deadline." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 157 (2d Cir. 2012) (discussing *Morgan*, 536 U.S. at 107–14). The Second Circuit has established two corollaries to that proposition. First, "discrete acts," such as the failure to promote, "which fall outside the limitations period, cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." *Id.* Second, the continuing violations doctrine cannot be applied "merely because the claimant continues to feel the effects of a time-barred discriminatory act." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999).[6]

Taken together, these principles foreclose Plaintiffs' arguments in opposition to summary judgment as they assert only discrete instances of non-promotions.[7] *See Mehrotra v. U.S. Dep't*

---

[6] The Second Circuit has held that a failure to promote claim may be timely when the plaintiff applies for a promotion outside the limitations period and the defendant for discriminatory reasons "continuously fail[s] to act [on the request for promotion] (including some discriminatory decision arrived at within the statute of limitations)." *Harris*, 186 F.3d at 250. But here each promotional opportunity was a discrete event, begun with an EMS Operations Order announcing the opportunity and concluded with an announcement of the promoted lieutenants. *Loc. 3621*, 2025 WL 2781280, at *5–8. Accordingly, Plaintiffs complain at best of "completed act[s] of discrimination" that have continuing effects. *Harris*, 186 F.3d at 250.

[7] The analysis differs for the NYCHRL claim. "New York state courts have, however, held that the prior, more generous continuing violations doctrine continues to apply under the NYCHRL than that adopted by the Supreme Court in *Morgan*." *Taylor v. City of New York*, 207 F. Supp. 3d 293, 302 (S.D.N.Y. 2016) (citation modified). Under the NYCHRL, "otherwise time-barred acts [are] timely where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Id.* at 302–03 (citation modified). In *Taylor*, for example, the plaintiff applied for the position of apprentice construction laborer fourteen times over 12 years and had been denied each time, allegedly on account of her sex, race, color, and national origin. *Id.* at 303. In this case, by contrast, Mascol and Rodríguez admittedly did not apply for a promotion with respect to the remaining promotional opportunities. The Court need not consider, however, whether any of the NYCHRL claims remain timely. Assuming *arguendo* that Plaintiffs' NYCHRL claims may reach back to include all promotional opportunities to which the eligibility requirements would apply after promotion to EMS Lieutenant even absent any application by Plaintiffs for those promotions, Plaintiffs' claims fail on the merits.

*of Lab*., 2026 WL 2317736, at *3 (2d Cir. Aug. 11, 2026) ("[T]he *Morgan* Court unanimously rejected the view that a series or pattern of related discrete acts could constitute one continuous unlawful employment practice for purposes of the statute of limitations. Indeed, we have cabined the doctrine *exclusively* to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." (emphasis in original) (citation modified)).

**B. Standing**

Defendant also argues that Plaintiffs have not proffered evidence that they were injured by application of the eligibility criteria prior to 2014. Dkt. No. 731 at 15–16, 24–27. In its initial summary judgment decision, the Court held that the fact that Plaintiffs were considered eligible to apply for promotion after they satisfied the eligibility criteria did not, as a matter of law, preclude them from challenging the impact of those criteria on them prior to the date they were eligible to apply. *Loc. 3621,* 2025 WL 2781280, at *21. A sign that says "do not apply" can cause as grievous harm to the person who—based on that sign—does not apply as to a person who applies and is denied. That said, however, the injury is not prosecutable by the world. In order for a nonapplicant to show that he or she was the victim of unlawful discrimination, the plaintiff must show that he would have applied for the position, absent the allegedly discriminatory conduct. *Id.* at *20. Such a showing may be made by evidence of "informal inquiry, expression of interest, or even an unexpressed desire that is credible and convincing." *Id.* (alteration adopted) (quoting *Int'l Bhd.*, 431 U.S. at 371 n.58); *see also* 1 Larson on Employment Discrimination § 8.02[3][c] (2026).[8] The Court left open the question whether

[8] Neither party disputes that the inquiry from *International Brother of Teamsters* applies to discrimination claims brought pursuant to the NYSHRL and NYCHRL, and courts in this District have assumed that it does. *See Dowdy v. N.Y.C. Dep't of Sanitation*, 2023 WL 6258536, at *7 (S.D.N.Y. Sept. 26, 2023).

Plaintiffs had offered sufficient evidence to satisfy that burden and to justify trial because the issue had not been briefed. *Id.* at *21.

Plaintiffs respond that there exists a triable issue whether the eligibility criteria injured them by deterring them from applying for promotion by pointing to the fact that they applied for promotion as soon as they were eligible. Dkt. No. 741 at 26–28. They also argue that whether they were harmed by the existence of the eligibility criteria prior to 2014 "is a question of intent that cannot be resolved through summary judgment," *id.* at 20, but rather that should be resolved through a remedial hearing at which they will demonstrate "that they had the requisite intent to entitle them to damages," *id.* at 27 (citing *Int'l Bhd.*, 431 U.S. at 371 n.58).

Plaintiffs' citation to the remedial hearing contemplated in *International Brotherhood of Teamsters* reflects a fundamental misunderstanding of the procedural posture of this case. *Teamsters* was a pattern-and-practice case brought by the Attorney General of the United States pursuant to Section 707 of Title VII. *See Int'l Bhd.*, 431 U.S. at 336 & n.16. Pattern-and-practice lawsuits may be brought by the United States or by a class. *See generally Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867 (1984) (class action); *Franks v. Bowman Transp. Co.*, 424 U.S. 747 (1976) (class action); *United States v. City of New York*, 717 F.3d 72 (2d Cir. 2013) (government action); *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2001) (class action); *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123 (2d Cir. 2001) (government action). Under Section 707, where the Government seeks individual relief for the victims of the discriminatory practice or in a class action pattern or practice case, the court proceeds in two stages. 42 U.S.C. § 2000e-6. First, the Court conducts a liability phase to determine whether the defendant has engaged in a pattern or practice of discrimination. *Int'l Bhd.*, 431 U.S. at 361. Then after having proven the existence of a pattern or practice, the court engages in a second

remedial stage to determine the scope and form of equitable relief. *Id.* at 361–62; *see also Cooper*, 467 U.S. at 876; 1 Larson on Employment Discrimination § 8.10 (2026) (discussing cases involving "class-wide discrimination or a 'pattern or practice'" that "usually involved a bifurcated proceeding—a liability phase and a remedial phase"). The remedial stage, to which Plaintiffs refer, is a stage in a pattern or practice case.

This case, as currently configured, is dramatically different. Plaintiffs no longer have an actionable pattern-or-practice lawsuit. The Court has denied Plaintiffs' motion for class certification, and it has dismissed Local 3621 from the case. What remains are the individual claims of Mascol and Rodriguez. "The crucial difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination is manifest." *Cooper*, 467 U.S. at 876. "[A]t the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decisionmaking." *Id.* (quoting *Int'l Bhd.*, 431 U.S. at 876). In this case, by contrast, Plaintiffs must prove their individual cases. *Id.* at 876–77. Evidence of a pattern or practice may be relevant to Plaintiffs' individual case, *see, e.g.*, *Malzberg v. N.Y. Univ.*, 2020 WL 3618962, at *2 (S.D.N.Y. July 2, 2020) (citing *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 204 (2d Cir. 2014)), but it is not a substitute for proof of the individual claim.

In order for Plaintiffs to proceed with their case and to put Defendant to the burden of challenging Plaintiffs' prima facie case or addressing whether it is liable for employment discrimination, Plaintiffs—like any litigant before the Court—must show that they have standing and can establish each element of their case. *Waisome v. Port Auth. of N.Y. & N.J.*, 948 F.2d 1370, 1375 (2d Cir. 1991) ("To prove disparate impact, a plaintiff must first identify the specific employment practice he is challenging, and then show that the practice *excluded him or her*, as a

member of a protected group, from a job or promotion opportunity." (emphasis added)); *see also Nathe v. Weight Watchers Int'l, Inc.*, 2010 WL 3000175, at *5 (S.D.N.Y. July 26, 2010). At the summary judgment stage, if they cannot proffer evidence that would permit the factfinder to find in their favor on every element of their claim, they are not permitted to go forward on any element of their claim. *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 346 F. Supp. 3d 473, 481 (S.D.N.Y. 2018) ("Where the nonmoving party will bear the burden of proof at trial, the moving party may establish the propriety of summary judgment by pointing to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." (citation modified)). There is no second chance to offer evidence at a "remedial hearing." Unless there is evidence that would entitle the plaintiff to a judgment, there is no hearing that the Court would have on relief. Defendant would be entitled to summary judgment.

Defendant has proffered evidence that Plaintiffs were not injured by the eligibility criteria. It has challenged whether Plaintiffs would have applied for a promotion at any earlier date than the dates when they applied, at which point the eligibility criteria did not prevent them from being considered. At that point, it was incumbent on Plaintiffs as the non-moving party, to "come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo*, 536 F.3d at 145. To survive the motion for summary judgment, they must establish a genuine issue of fact by "citing to particular parts of the materials in the record," Fed. R. Civ. P. 56(c)(1)(A), and demonstrating more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. That is the opportunity the Court afforded Plaintiffs. *Loc. 3621*, 2025 WL 2781280, at *21.

Plaintiffs have failed to offer evidence sufficient to show that there is a triable issue of fact. Mascol and Rodriguez each submitted a declaration, dated December 12, 2025, stating that

"I was also directly harmed because I was deemed ineligible to apply due to the heightened eligibility requirements" and that "intent is further demonstrated by the fact that I have literally applied to every promotion I could." Dkt. No. 738-2 ¶¶ 4, 11; Dkt. No. 738-3 ¶¶ 4, 12. Plaintiffs offer no evidence that they asked about the eligibility requirements or promotional opportunities before they were eligible, that they made any informal inquiries, or that they ever expressed an interest in promotion before they were eligible. They do not even aver that they were interested at a particular earlier date before the date upon which they became eligible. *See Int'l Bhd.*, 431 U.S. at 370–71 (finding that the "assumption" that "a nonapplicant's current willingness to transfer into a . . . position confirms his past desire for the job" did not satisfy "the appropriate burden of proof," thus requiring some proof of "what choice an employee would have made had he previously been given the opportunity to freely choose"). While counsel states that Plaintiffs would offer testimony at a remedial hearing that they intended to seek a promotion, Dkt. No. 741 at 28, Plaintiffs tellingly submit no admissible evidence on this motion (even through a sworn declaration) regarding what that testimony would be. Instead, Plaintiffs ask the Court to withhold summary judgment and to permit them to go to trial solely on the basis of the say-so from counsel that there would be evidence to support their claim. The parties are no longer at the pleading stage, however. Summary judgment is the moment for the Court to determine whether the evidence, if credited, would permit the jury to return a verdict for the non-moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."). Plaintiffs' argument, if accepted, would eviscerate the requirement set forth by the Supreme Court in *Teamsters* that the party claiming a discriminatory practice deprived her of an employment opportunity put forward some evidence to support that claim. Plaintiffs offer

none. Plaintiffs' failure to offer evidence provides sufficient grounds for the dismissal of their Title VII and NYCHRL and NYSHRL claims, whether or not such claims are timely.

**CONCLUSION**

For the reasons set forth above, Plaintiffs' motion for reconsideration is DENIED. Defendant's motion for summary judgment is GRANTED. Consequently, Plaintiffs' cross-motion for summary judgment is DENIED; Plaintiffs' motion for class certification is DENIED AS MOOT. As a result, there are no longer any live claims.

The Clerk of Court is respectfully directed to close Dkt. Nos. 728, 732, 736, and 737. The parties are directed to meet and confer and to propose a form of final judgment to be entered in this case.

SO ORDERED.

Dated: September 10, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge